**UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT**
_____

NANCY ANAYA-SMITH,

*Plaintiff-Appellant*,

v.

FEDERATED MUTUAL INSURANCE COMPANY,

*Defendant-Appellee.*
_____

On Appeal from the United State District Court, Western District of Oklahoma,
Case No. CIV-20-565-D, Honorable Timothy DeGiusti, Presiding
_____

**APPELLANT'S APPENDIX**
_____

REX TRAVIS, OBA #9081
info@travislawoffice.com
12220 N. MacArthur Blvd., Suite F #220
Oklahoma City, OK 73162-1851
Telephone: (405) 236-5400
Facsimile: (405) 236-5499
**Attorney for Plaintiff-Appellant**

# JOINT APPENDIX — TABLE OF CONTENTS

1.  District Court Docket Entries ............................................................. A-0001

2.  Anaya-Smith's Complaint .................................................................. A-0007

3.  Federated's Answer and Counterclaim for Declaratory Relief............ A-0009

4.  Anaya-Smith's Motion for Partial Summary Judgment....................... A-0020

5.  Anaya-Smith's Answer to Federated's Counterclaim.......................... A-0037

6.  Federated's Response to Anaya-Smith's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment.......................... A-0040

7.  Anaya-Smith's Reply to Federated's Response to Anaya-Smith's Motion for Partial Summary Judgment.................................................. A-0196

8.  Federated's Reply in Support of Cross-Motion for Summary Judgment .... A-0206

9.  Anaya-Smith's Suggestion of Additional Authority ........................... A-0217

10. Federated's Response to Anaya-Smith's Suggestion of Additional Authority in Connection with Federated's Motion for Summary Judgment ........ A-0235

11. Order Denying Anaya-Smith's Motion for Partial Summary Judgment in Part and Granting in Part and Denying in Part Federated's Motion for Summary Judgment ............................................................................ A-0239

12. Judgment in Favor of Defendant Federated ........................................ A-0257

13. Notice of Appeal.................................................................................. A-0258

# U.S. District Court
# Western District of Oklahoma[LIVE] (Oklahoma City)
## CIVIL DOCKET FOR CASE #: 5:20-cv-00565-D

Anaya-Smith v. Federated Mutual Insurance Company
Assigned to: Honorable Timothy D. DeGiusti
Demand: $75,000
Case in other court:  Tenth Circuit, 21-06113
Cause: 28:1332 Diversity-Insurance Contract

Date Filed: 06/15/2020
Date Terminated: 09/16/2021
Jury Demand: Plaintiff
Nature of Suit: 110 Insurance
Jurisdiction: Diversity

## **Plaintiff**

**Nancy Anaya-Smith**
*Next of kin of Michael Brian Smith,*
*deceased*

represented by **Casey R Lawson**
Travis Law Office
500 Colcord Dr
Oklahoma City, OK 73102-2279
405-236-5400
Fax: 405-236-5499
Email: caseylawson@travislawoffice.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Margaret E Travis**
Margaret E. Travis, Attorney at Law
PO Box 352
Pauls Valley, OK 73075-0352
405-231-1013
Email: margarettravis@travislawoffice.com
*TERMINATED: 07/08/2021*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Rex Travis**
Rex K. Travis
PO Box 1336
Oklahoma City, OK 73101-1336
405-236-5400
Fax: 405-236-5499
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Daniel B Graves**
Graves McLain PLLC
1437 S Boulder Ave
Suite 1010
Tulsa, OK 74119
918-359-6600
Fax: 918-359-6605
Email: dan@gravesmclain.com
*ATTORNEY TO BE NOTICED*

A-0001

**Rachel E Gusman**
Graves McLain PLLC
1437 S Boulder Ave
Suite 1010
Tulsa, OK 74119
918-359-6600
Fax: 918-359-6605
Email: rachel@gravesmclain.com
*ATTORNEY TO BE NOTICED*

**Rex K Travis**
Travis Law Office
500 Colcord Dr
Oklahoma City, OK 73102-2279
405-236-5400
Fax: 405-236-5499
Email: RexTravis@Travislawoffice.com
*ATTORNEY TO BE NOTICED*

**William C McLain**
Graves McLain PLLC
1437 S Boulder Ave
Suite 1010
Tulsa, OK 74119
918-359-6600
Fax: 918-359-6605
Email: chad@gravesmclain.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Federated Mutual Insurance Company**          represented by   **Bart J Robey**
Chubbuck Duncan & Robey PC
1329 N Classen Dr
Oklahoma City, OK 73103
405-236-8282
Fax: 405-236-2828
Email: bjrobey@chubbucklaw.com
*ATTORNEY TO BE NOTICED*

**Eric A Moen**
Chubbuck Duncan & Robey PC
1329 N Classen Dr
Oklahoma City, OK 73103
405-236-8282
Fax: 405-236-2828
Email: eamoen@chubbucklaw.com
*ATTORNEY TO BE NOTICED*

**Counter Claimant**

**Federated Mutual Insurance Company**          represented by   **Bart J Robey**
(See above for address)

A-0002

*ATTORNEY TO BE NOTICED*

**Eric A Moen**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Federated Mutual Insurance Company**      represented by  **Bart J Robey**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Eric A Moen**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 06/15/2020 | 1 | COMPLAINT against Federated Mutual Insurance Company filed by Nancy Anaya-Smith. (Attachments: # 1 Civil Cover Sheet)(kmt) (Entered: 06/16/2020) |
| 06/16/2020 | 2 | Summons Issued Electronically as to Federated Mutual Insurance Company. (kmt) (Entered: 06/16/2020) |
| 06/16/2020 | | PAYMENT FOR A CIVIL CASE Filing fee $ 400, receipt number 1087-3174172. (Travis, Rex) (Entered: 06/16/2020) |
| 06/26/2020 | 3 | ENTRY of Appearance by Rex K Travis on behalf of Nancy Anaya-Smith (Travis, Rex) (Entered: 06/26/2020) |
| 06/26/2020 | 4 | ENTRY of Appearance by Casey R Lawson on behalf of Nancy Anaya-Smith (Lawson, Casey) (Entered: 06/26/2020) |
| 06/26/2020 | 5 | ENTRY of Appearance by Margaret E Travis on behalf of Nancy Anaya-Smith (Travis, Margaret) (Entered: 06/26/2020) |
| 07/13/2020 | 6 | ENTRY of Appearance by Daniel B Graves on behalf of All Plaintiffs (Graves, Daniel) (Entered: 07/13/2020) |
| 07/13/2020 | 7 | ENTRY of Appearance by William C McLain on behalf of All Plaintiffs (McLain, William) (Entered: 07/13/2020) |
| 07/13/2020 | 8 | ENTRY of Appearance by Rachel E Gusman on behalf of All Plaintiffs (Gusman, Rachel) (Entered: 07/13/2020) |
| 07/15/2020 | 9 | SUMMONS Returned Executed by Nancy Anaya-Smith. Federated Mutual Insurance Company served on 7/14/2020. (Travis, Rex) (Entered: 07/15/2020) |
| 07/21/2020 | | **IMPORTANT NOTICE:** The United States District Court for the Western District of Oklahoma (OKWD) is upgrading its current CM/ECF system to the Next Generation of CM/ECF (NextGen CM/ECF) on Monday, August 3, 2020. Complete information regarding the OKWD NextGen CM/ECF implementation is available at http://www.okwd.uscourts.gov/nextgen-information.****Currently, you may share a single PACER account with other attorneys in your firm. With the new OKWD NextGen CM/ECF system, sharing of individual PACER accounts is prohibited. You must have an individual upgraded PACER account linked to your e-filing account. Once again, shared PACER accounts cannot be used by OKWD e-filing attorneys. ****Preparing for NextGen CM/ECF is a two-step process. Step one is to upgrade your PACER account and step two |

| | | |
|---|---|---|
| | | is to link your upgraded PACER account to the OKWD e-filing account in the upgraded NextGen CM/ECF system. This notice only addresses the first step because the second step cannot be completed until on or after August 3, 2020. ****Many PACER accounts have already been upgraded. The first step is to determine whether you have an "Upgraded" PACER account. If any of the following is true, you have an upgraded PACER account and no action is required until after the OKWD NextGen CM/ECF upgrade on August 3, 2020: 1) You have an upgraded PACER account for another NextGen court or 2) Your PACER account was created after August 10, 2014. If neither of these is true, you must upgrade your legacy PACER account before you can link your PACER account to your new NextGen CM/ECF account. ****OKWDs current CM/ECF system will NOT be available from 11:00 AM on 07/31/20 until 8:00 AM on 08/03/20 due to the upgrade. ****Additional notices will be sent at a later date regarding the second step of this process. If you have questions, please contact the PACER Service Center at 800-676-6856 or the OKWD Clerk's Office CM/ECF Help Desk at 405-609-5555. (Pigott, William) (ADI) (Entered: 07/21/2020) |
| 08/18/2020 | 10 | ENTRY of Appearance by Eric A Moen on behalf of Federated Mutual Insurance Company (Moen, Eric) (Entered: 08/18/2020) |
| 08/18/2020 | 11 | ENTRY of Appearance by Bart J Robey on behalf of Federated Mutual Insurance Company (Robey, Bart) (Entered: 08/18/2020) |
| 08/18/2020 | 12 | ANSWER to Complaint , COUNTERCLAIM against Federated Mutual Insurance Company by Federated Mutual Insurance Company.(Moen, Eric) (Entered: 08/18/2020) |
| 08/18/2020 | 13 | MOTION for Partial Summary Judgment by Nancy Anaya-Smith. (Travis, Rex) (Entered: 08/18/2020) |
| 08/24/2020 | 14 | DISCLOSURE STATEMENT - CORPORATE by Federated Mutual Insurance Company . (Moen, Eric) (Entered: 08/24/2020) |
| 09/03/2020 | 15 | UNOPPOSED MOTION for Extension of Time to File Response/Reply as to 13 MOTION for Partial Summary Judgment by Federated Mutual Insurance Company. (Moen, Eric) (Entered: 09/03/2020) |
| 09/04/2020 | 16 | ORDER granting 15 Motion for Extension of Time to File Response re 13 MOTION for Partial Summary Judgment Response due by 9/22/2020. Signed by Honorable Timothy D. DeGiusti on 9/4/2020. (mb) (Entered: 09/04/2020) |
| 09/08/2020 | 17 | ANSWER to 12 Answer to Complaint / Disclaimer, Counterclaim by Nancy Anaya-Smith. (Travis, Rex) (Entered: 09/08/2020) |
| 09/22/2020 | 18 | RESPONSE in Opposition re 13 MOTION for Partial Summary Judgment *and Cross Motion for Summary Judgment* filed by All Defendants. (Attachments: # 1 Exhibit Exhibit 1 - Powers Declaration, # 2 Exhibit Exhibit A to Powers Declaration, # 3 Exhibit Exhibit B to Powers Declaration, # 4 Exhibit Exhibit C to Powers Declaration, # 5 Exhibit Exhibit D to Powers Declaration)(Moen, Eric) (Entered: 09/22/2020) |
| 09/29/2020 | 19 | FIRST MOTION for Extension of Time to File Response/Reply as to 18 Response in Opposition to Motion, by Nancy Anaya-Smith. (Travis, Rex) (Entered: 09/29/2020) |
| 09/30/2020 | 20 | ORDER granting 19 Plaintiff's Unopposed Motion for Extension of Time to File Response re 13 MOTION for Partial Summary Judgment Response due by 10/6/2020. Signed by Honorable Timothy D. DeGiusti on 9/30/2020. (mb) (Entered: 09/30/2020) |
| 10/06/2020 | 21 | REPLY to Response to Motion re 13 MOTION for Partial Summary Judgment filed by Nancy Anaya-Smith. (Travis, Rex) (Entered: 10/06/2020) |
| 10/08/2020 | 22 | UNOPPOSED MOTION for Extension of Time to File Response/Reply as to 21 Reply to |

A-0004

| | | Response to Motion by Federated Mutual Insurance Company. (Moen, Eric) (Entered: 10/08/2020) |
|---|---|---|
| 10/13/2020 | 23 | ORDER granting 22 Motion for Extension of Time to File Response/Reply re 13 MOTION for Partial Summary Judgment Reply due by 10/20/2020.. Signed by Honorable Timothy D. DeGiusti on 10/13/2020. (mb) (Entered: 10/13/2020) |
| 10/20/2020 | 24 | REPLY by Counter Claimant Federated Mutual Insurance Company, Defendant Federated Mutual Insurance Company re 21 Reply to Response to Motion filed by Federated Mutual Insurance Company. (Moen, Eric) (Entered: 10/20/2020) |
| 07/01/2021 | 25 | NOTICE (other) by Nancy Anaya-Smith re 13 MOTION for Partial Summary Judgment *Suggestion of Additional Authority* (Travis, Margaret) (Entered: 07/01/2021) |
| 07/02/2021 | 26 | MOTION to Withdraw as Attorney by All Plaintiffs. (Travis, Margaret) (Entered: 07/02/2021) |
| 07/06/2021 | 27 | UNOPPOSED MOTION for Leave *to file Supplemental Brief Under LCvR 7.1(m)* by Federated Mutual Insurance Company. (Moen, Eric) (Entered: 07/06/2021) |
| 07/08/2021 | 28 | ORDER granting 26 Motion to Withdraw as Attorney. Attorney Margaret E Travis terminated. Signed by Honorable Timothy D. DeGiusti on 7/8/2021. (kmt) (Entered: 07/08/2021) |
| 07/08/2021 | 29 | ORDER granting 27 Unopposed Motion for Leave to File a Supplemental Brief. Signed by Honorable Timothy D. DeGiusti on 7/8/2021. (kmt) (Entered: 07/08/2021) |
| 07/15/2021 | 30 | RESPONSE *TO PLAINTIFF'S SUGGESTION OF ADDITIONAL AUTHORITY* filed by Federated Mutual Insurance Company. (Moen, Eric) (Entered: 07/15/2021) |
| 09/16/2021 | 31 | ORDER denying 13 Plaintiffs Motion for Partial Summary Judgment and granting in part and denying in part Defendants Motion for Summary Judgment. Signed by Honorable Timothy D. DeGiusti on 9/16/2021. (mb) (Entered: 09/16/2021) |
| 09/16/2021 | 32 | JUDGMENT in favor of Federated Mutual Insurance Company against Nancy Anaya-Smith. Signed by Honorable Timothy D. DeGiusti on 9/16/2021. (mb) (Entered: 09/16/2021) |
| 09/23/2021 | 33 | NOTICE OF APPEAL as to 31 Order on Motion for Partial Summary Judgment, 32 Judgment by All Plaintiffs. (Travis, Rex) (Entered: 09/23/2021) |
| 09/28/2021 | 34 | PRELIMINARY RECORD LETTER - Electronic Transmission of Notice of Appeal with Preliminary Record sent to Tenth Circuit Court of Appeals re 33 Notice of Appeal (Attachments: # 1 Attachment 1 - Preliminary Record on Appeal)(kmt) (Entered: 09/28/2021) |
| 09/28/2021 | 35 | Receipt for Money Received from Nancy Anaya-Smith in the amount of $505.00, receipt number OKW500087388 regarding 33 Notice of Appeal. (knt) (Entered: 09/28/2021) |
| 09/28/2021 | 36 | Tenth Circuit USCA Case Number 21-6113 for 33 Notice of Appeal filed by Nancy Anaya-Smith. Civil case docketed. Preliminary record filed. DATE RECEIVED: 09/28/2021. Fee is due in district court by 10/12/2021 for Nancy Anaya-Smith. Notice of appearance, transcript order form and docketing statement due 10/12/2021 for Nancy Anaya-Smith. Notice of appearance due on 10/12/2021 for Federated Mutual Insurance Company. [21-6113] (kmt) (Entered: 09/29/2021) |
| 10/19/2021 | 37 | TRANSCRIPT LETTER re 33 Notice of Appeal filed by Nancy Anaya-Smith. The record is ready for appeal purposes. (kmt) (Entered: 10/19/2021) |

A-0005

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 11/09/2021 11:25:52 | | | |
| **PACER Login:** | rtravis9081 | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 5:20-cv-00565-D Start date: 1/1/1972 End date: 11/9/2021 |
| **Billable Pages:** | 5 | **Cost:** | 0.50 |

A-0006

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NANCY ANAYA-SMITH, next of kin of
MICHAEL BRIAN SMITH, deceased,
     Plaintiff,

vs.

FEDERATED MUTUAL INSURANCE
COMPANY,
     Defendant.

Case No.   CIV-20-565-D

## **COMPLAINT**

Plaintiff, for cause of action against Defendant, states:

1. Plaintiff is the wife and next of kin of Michael Brian Smith, deceased (Michael).

2. On March 24, 2020, Michael was killed in a one-vehicle roll-over wreck in Murray County Oklahoma. The wreck was caused when the vehicle in which he was a passenger went out-of-control due to the negligence of the driver, Michael's co-worker, Duane Alan Clark (Clark)

3. The vehicle Smith and Clark were occupying at the time of the wreck was owned by their employer, Fixtures & Drywall (Fadco), for which company they were on the job. That vehicle was insured by a policy issued by Defendant, which provided $1 million in uninsured/underinsured (UIM) motorist insurance coverage. There is no available liability insurance on the vehicle due to the exclusive remedy of the Oklahoma Workers' Compensation Act. The vehicle is, therefore, uninsured.

4. Defendant has denied coverage in bad faith, claiming that its policy does not provide UIM coverage to Michael or for his death because he is not a "director, officer,

partner or owner" nor a "family member" of Fadco. The Oklahoma UIM statute, 36 O.S. § 3636, does not contain that provision so, as a matter of law, there is coverage under the policy for Michael's death. Defendant is not in good faith in asserting that Oklahoma law permits such an exclusion from UIM coverage.

5. Michael suffered conscious pain from his injuries. He leaves surviving him Plaintiff and a child and his mother and father, for whose benefit Plaintiff also sues here.

6. Plaintiff and her children and Michael's parents have suffered grief and loss of Michael's love and affection and of his financial support. In addition, due to Defendant's bad faith denial of her claim, Plaintiff has suffered great emotional distress and been required to hire lawyers and expend money to pursue this case.

7. Plaintiff's recoverable damages and, therefore, the amount in controversy exceeds $75,000. Plaintiff is a citizen of Oklahoma and Defendant is a Minnesota Corporation with its principal place of business in Minnesota.

WHEREFORE, Plaintiff prays judgment for an amount in excess of $75,000 and such other and further relief as the Court deems proper.

CHAD MCLAIN, OBA #19349
DAN GRAVES, OBA #16656
RACHEL GUSMAN, OBA #22161

4137 S. Harvard Ave., Suite F
Tulsa, OK 74135
Telephone: (918) 359-6600
Facsimile: (918) 359-6605


**JURY TRIAL DEMANDED**
**ATTORNEYS LIEN CLAIMED**

REX TRAVIS, OBA #9081
MARGARET TRAVIS, OBA #14424
CASEY LAWSON, OBA #33947
info@travislawoffice.com
P.O. Box 1336
Oklahoma City, OK 73101-1336
Telephone: (405) 236-5400
Facsimile: (405) 236-5499
Attorneys for Plaintiff
s/ *Rex Travis*
_____
By:Rex Travis

A-0008

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

NANCY ANAYA-SMITH, next of kin of
MICHAEL BRIAN SMITH, deceased,

        Plaintiff,

  vs.                                Case No. CIV-20-565-D

FEDERATED MUTUAL INSURANCE
COMPANY,

        Defendant.

**DEFENDANT'S ANSWER TO COMPLAINT**
**AND COUNTERCLAIM FOR DECLARATORY RELIEF**

      For its Answer to Plaintiff's Complaint, Defendant Federated Mutual Insurance Company (hereafter referred to as "Federated") denies each and every allegation except as expressly admitted, and otherwise states and alleges as follows:

      1.     As to the allegations of paragraph 1, Federated admits Plaintiff is the wife and next of kin of Michael Brian Smith, deceased.

      2.     As to the allegations of paragraph 2, Federated admits only that an accident occurred on March 24, 2020 in Murray County, Oklahoma.  Federated is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations and therefore denies them.

      3.     As to the allegations of paragraph 3, Federated admits only that an insurance policy was issued to "Fixtures And Drywall Company of Oklahoma, Inc.", identified as policy number 9840992 and in effect for the policy period 03/01/2020 to 03/01/2021 (the "Policy"). Federated denies that plaintiff is entitled to any uninsured or underinsured motorists' coverage under the Policy. Federated is without sufficient

knowledge or information to form a belief as to the truth of the remaining allegations and therefore denies them.

4.     Federated denies the allegations in paragraph 4.

5.     Federated is without sufficient knowledge or information to form a belief as to the truth of the allegations of paragraph 5 of Plaintiff's complaint and therefore denies them.

6.     Federated denies the allegation in paragraph 6 that it has acted in bad faith. With respect to the remaining allegations in paragraph 6, Federated is without sufficient knowledge or information to form a belief as to their truth and therefore denies them.

7.     As to the allegations of paragraph 7, Federated admits only that it is a Minnesota Corporation, that its principal place of business is in Minnesota, and that the amount in controversy exceeds $75,000. Federated denies the remaining allegations in paragraph 7.

## <u>AFFIRMATIVE DEFENSES</u>

1.     Defendant Federated affirmatively alleges that Plaintiff's Complaint is conclusory and fails to state facts sufficient to state a claim for "bad faith", "breach of duty of good faith and fair dealing", or "fraud".

2.     Defendant Federated affirmatively alleges that Federated's evaluation of the claim at issue was reasonable and legitimate, and it has the right to have this matter settled in a judicial forum without giving rise to a cause of action for "bad faith."

3.     Defendant Federated affirmatively alleges that this lawsuit is based upon a disagreement between it and its alleged insured and, as such, Plaintiff's claim for "bad faith" is insufficient as a matter of law.

4.     Defendant Federated affirmatively alleges that to the extent Plaintiff seeks reformation of the insurance contract, the allegations pertain to underwriting functions for which tort liability for breach of the obligation of good faith and fair dealing are not recoverable under Oklahoma law.

5.     Defendant Federated affirmatively alleges that Plaintiff failed to mitigate, minimize or avoid any damages allegedly sustained, and any recovery against Defendant must be reduced by the amount attributable to said failure.

6.     Defendant Federated affirmatively alleges that Plaintiff's Petition is barred because Federated was wholly justified and privileged in all its actions.

7.     Defendant Federated affirmatively alleges that Federated and its representatives acted reasonably and in good faith at all times material herein, based on all relevant facts and circumstances known by them at the time they so acted. Accordingly, Plaintiff is barred any recovery.

8.     Defendant Federated affirmatively alleges that Plaintiff's Petition fails to state sufficient facts to support an award of attorney fees.

9.     Defendant Federated affirmatively alleges that Plaintiff's claims are barred by the terms, conditions, and exclusions of the policy referenced in the Petition.

10.     Defendant Federated affirmatively alleges that Plaintiff's claims are within the exclusive jurisdiction and remedy of the worker's compensation court.

11.     Defendant Federated affirmatively alleges that Plaintiff's claim for uninsured/underinsured motorist coverage fails under the plain and unambiguous terms of the Policy.

12.     Defendant Federated affirmatively alleges that Plaintiff's claim for uninsured/underinsured motorist coverage fails because the Policy's named insured rejected such coverage in accordance with Oklahoma law.

WHEREFORE, Federated respectfully prays that Plaintiff's complaint be dismissed with prejudice, that it be awarded its attorney fees and costs incurred in connection with this matter, and that the Court grant such other relief to Federated as it deems just and equitable.

## COUNTERCLAIM
## (DECLARATORY RELIEF)

Federated Mutual Insurance Company ("Federated"), for its counterclaim, seeks a judicial declaration that an insurance policy that it issued to its named insured, Fixtures and Drywall of Oklahoma, Inc. ("FADCO"), does not provide uninsured or underinsured motorists coverage for the death of Michael Brian Smith. Federated's named insured, through its authorized representative, properly rejected such coverage in writing prior to the issuance of the policy. Pursuant to the Oklahoma Uninsured Motorist statute, the named insured was permitted to reject such coverage, and Federated complied with all requirements to effectuate that rejection. Federated's policy does not extend UM/UIM coverage for Mr. Smith's injuries or death.  Federated Mutual Insurance Company, for its Counterclaim for Declaratory Judgment, states and alleges as follows:

### JURISDICTION & VENUE

1.      Federated Mutual Insurance Company ("Federated") is in the business of selling insurance.  It is a Minnesota corporation with its principal place of business located in Minnesota. It is therefore a citizen of Minnesota.

2.      Federated brings this counterclaim under 28 U.S.C. §§ 2201 and 2202 for declaratory relief regarding the parties' rights and obligations under a policy of insurance that extends, to certain persons qualifying as an "insured", uninsured and underinsured motorists coverage.

3.      Nancy Anaya-Smith is the next of kin of Michael Brian Smith ("Smith") and is an individual who is a resident of the state of Oklahoma.  Smith is therefore a citizen of Oklahoma.

4.      Smith has made a claim for uninsured motorists benefits under a policy of insurance that was issued to Brian Smith's employer, Fixtures and Drywall Company of Oklahoma, Inc. ("FADCO").

5.      Federated denies that uninsured motorists benefits are available to Smith

because the vehicle Brian Smith was occupying at the time of the subject accident was not "uninsured," and that in any event, uninsured motorists benefits for individuals like Mr. Smith were expressly rejected by Federated's named insured.

6. An actual and justiciable controversy exists between Federated and Smith regarding the existence of uninsured motorists coverage under the Policy.

7. Venue is proper under 28 U.S.C. § 1391, because Smith resides in this district, and a substantial part of the events giving rise to this claim for declaratory relief occurred in this district.

8. This Court has jurisdiction under 28 U.S.C. § 1332, because Federated and Smith are citizens of different states and because the amount in controversy exceeds $75,000.

## **GENERAL ALLEGATIONS**

9. Michael Brian Smith was killed in a one-vehicle roll-over accident in Murray County, Oklahoma on March 24, 2020 (the "Accident").

10. Upon information and belief, the vehicle was being operated by one of Mr. Smith's co-workers, Duane Alan Clark.

11. Upon information and belief, at the time of the Accident, Mr. Smith and Mr. Clark were occupying a vehicle owned by FADCO and were acting within the course and scope of their employment with FADCO.

12. Upon information and belief, Smith has sought, and is receiving or has received, worker's compensation benefits as a result of the injuries sustained by Mr. Smith in the Accident.

13. Federated issued a Commercial Package Policy, number 9840992, for the policy period 03/01/2020 to 03/01/2021 (the "Policy"). The Policy relevantly identifies Fixtures and Drywall Company of Oklahoma Inc. as the Named Insured and extends liability coverage pursuant to form CA 00 01 10 13.

14.     The Policy extends liability coverage for, "all sums an 'insured' legally must pay as damages because of 'bodily injury' * * * to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered auto."

15.     The Policy defines "insured" for liability coverage to include FADCO and, "**b.** Anyone else while using with your permission a coverage "auto" you own, hire or borrow except * * * "

16.     Upon information and belief, Duane Alan Clark was using the FADCO vehicle at the time of the Accident with the permission of FADCO, and therefore qualified as an insured under the liability coverage of the Policy.

17.     Form CA 00 01 10 13 relevantly excludes coverage for:

**5.      Fellow Employee**

"Bodily injury" to:

a.      Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

* * *

18.     However, the Policy includes an Endorsement entitled "Business Auto Amendatory Endorsement," on form CA-F-5 (04-19), which specifically deletes the "Fellow Employee" exclusion.

19.     The Policy also relevantly extends limited uninsured motorists coverage pursuant to form CA-F-93 (10-13).

20.     Form CA-F-93 (10-13) extends $1,000,000 in Uninsured and Underinsured Motorists Coverage only for, "all directors, officers, partners or owners of the named insured and their 'family members,' * * *," who qualify as an "insured" under the Policy's uninsured motorist coverage form.

A-0014

21.     Form CA-F-93 (10-13) contains a provision indicating that other "insureds" may be entitled to Uninsured and Underinsured Motorists Coverage, but only if a limit of insurance is identified. No limit of insurance is identified for any other "insured" and therefore no other insured is entitled to uninsured or underinsured motorist coverage.

22.     Prior to issuance of the Policy, and pursuant to the requirements of the Oklahoma Uninsured Motorists statute, Federated advised FADCO of its right to purchase uninsured motorist coverage in an amount equal to the liability limits of the policy.

23.     FADCO, through its authorized representative, elected, in writing, to reject uninsured motorists coverage for all operators of its vehicles other than FADCO's directors, officers, partners or owners of the named insured and their "family members."

24.     FADCO's rejection of uninsured motorists coverage was executed in writing.

25.     At the time of the Accident, the FADCO vehicle was not "uninsured" as the Policy extended full liability coverage for both FADCO and Mr. Clark.

26.     At the time of Brian Smith's death, he was not a "director[s], officer[s], partner[s] or owner[s] of the [FADCO]," or a family member of such individuals.

27.     Neither Mr. Smith, nor his next of kin, are entitled to uninsured motorists coverage under Federated's policy because FADCO properly and legally rejected such coverage in accordance with Oklahoma law.

## COUNT 1
## (Declaratory Relief)

**(The FADCO Vehicle Was Not Uninsured At The Time of Mr. Smith's Accident)**

29.     Federated reasserts and incorporates the preceding allegations in paragraphs 1 through 28 above.

30.     The Policy extends liability coverage for, all sums an 'insured' legally must pay as damages because of 'bodily injury' * * * to which this insurance applies, caused

by an 'accident' and resulting from the ownership, maintenance or use of a covered auto."

31.     The Policy defines "insured" for liability coverage to include FADCO and, "**b.** Anyone else while using with your permission a coverage "auto" you own, hire or borrow except * * *."

32.     Upon information and belief, Clark was using the FADCO vehicle at the time of the Accident with the permission of FADCO, and therefore qualified as an insured for liability coverage under the Policy.

33.     Form CA 00 01 10 13 relevantly excludes coverage for:

**5.      Fellow Employee**

"Bodily injury" to:

a.     Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

* * *

34.     However, the Policy includes an Endorsement entitled "Business Auto Amendatory Endorsement," on form CA-F-5 (04-19), which specifically deletes the "Fellow Employee" exclusion.

35.     Upon information and belief, Clark was operating the FADCO owned automobile, in the course and scope of both his and Smith's employment with FADCO, at the time of the Accident.

36.      Clark qualifies as an insured for liability coverage under the Policy and insurance exists for any liability he may have with respect to Mr. Smith's injuries.

37.     The FADCO vehicle was not "uninsured" at the time of the Accident, and therefore UM/UIM coverage is not available.

38.     Federated is entitled to a judicial declaration that the FADCO vehicle was not uninsured at the time of the Accident and therefore Uninsured Motorists Coverage is not applicable.

## COUNT 2
## (Declaratory Relief)

**(FADCO's Rejection of Uninsured Motorists Coverage Was Valid & In Compliance with Oklahoma Law)**

39.     Federated reasserts and incorporates the preceding allegations in paragraphs 1 through 38 above.

40.     The Policy relevantly extends limited uninsured motorists coverage pursuant to form CA-F-93 (10-13).

41.     Form CA-F-93 (10-13) extends $1,000,000 in Uninsured and Underinsured Motorists Coverage only for, "all directors, officers, partners or owners of the named insured and their 'family members,' * * *" who qualify as an "insured" under the Policy's uninsured motorists coverage form.

42.     Form CA-F-93 (10-13) contains a provision indicating that other "insureds" under the policy may be entitled to Uninsured and Underinsured Motorists Coverage, but only if a limit of insurance is identified. No limit of insurance is identified for any other "insured" and therefore no other insured is entitled to uninsured or underinsured motorist coverage.

43.     Prior to issuance of the Policy, and pursuant to the requirements of the Oklahoma Uninsured Motorists statute, Federated advised FADCO of its right to purchase uninsured motorist coverage in an amount equal to the liability limits of the policy.

44.     FADCO, through its authorized representative, elected, in writing, to reject uninsured motorists coverage for all operators of its vehicles other than FADCO's directors, officers, partners or owners of the named insured and their "family members".

A-0017

45.    At the time of Brian Smith's death, he was not a "director[s], officer[s], partner[s] or owner[s] of the [FADCO]," or a family member of such individuals.

46.    Neither Mr. Smith, nor his next of kin, are entitled to uninsured motorists coverage under Federated's policy because FADCO properly and legally rejected such coverage.

47.    Federated is entitled to a judicial declaration that Smith is not entitled to Uninsured Motorists coverage under the Policy.

## PRAYER FOR RELIEF

WHEREFORE, on its Counterclaim for Declaratory Judgment, Federated Mutual Insurance Company hereby requests that the court enter judgment in favor of Federated and against Smith as follows:

1.    Declaring that the FADCO vehicle was not "uninsured" with respect to the Accident;

2.    Declaring that the Policy does not extend Uninsured Motorists coverage to Smith;

3.    Granting such other relief as the court finds just and equitable.

DATED this 18th day of August  2020.

> Respectfully submitted,
>
> /s/Eric A. Moen
> Bart Jay Robey, OBA No. 19926
> Eric A. Moen, OBA No. 31155
> Chubbuck Duncan & Robey, P.C.
> 1329 N. Classen Drive
> Oklahoma City, Oklahoma 73103
> Phone: 405-236-8282
> Fax: 405-236-2828
> bjrobey@chubbucklaw.com
> eamoen@chubbucklaw.com
> **Attorneys for Defendant and**
> **Counterclaimant**
> **Federated Mutual Insurance Company**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 18, 2020, I electronically transmitted the attached documents to the court clerk's office using the CM/ECF system for filing and thereby transmitted a notice of electronic filing to the following CM/ECF registrants:

Chad McLain
Dan Graves
Rachel Gusman
4137 S. Harvard Ave., Suite F
Tulsa, OK  74135
Telephone:  (918) 359-6600
Facsimile: (918) 359-6605

-and-

Rex Travis
Margaret Travis
Casey Lawson
info@travislawoffice.com
P.O. Box 1336
Oklahoma City, OK  73101-1336
Telephone:  (405) 236-5400
Facsimile:  (405) 236-5499
***Attorneys for Plaintiff***
***& Counter Defendant***

/s/*Eric A. Moen*
Eric A. Moen

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NANCY ANAYA-SMITH, next of kin of
MICHAEL BRIAN SMITH, deceased,
     Plaintiff,

vs.

FEDERATED MUTUAL INSURANCE
COMPANY,
     Defendant

Case No. Civ-20-565-D
The Hon. Timothy DeGiusti

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Plaintiff Nancy Anaya-Smith ("Widow"), as next of kin of decedent Michael Brian Smith ("Mr. Smith"), moves for partial summary judgment against Defendant Federated Mutual Insurance Company ("Federated") that there is coverage for Mr. Smith's injuries and death. The undisputed facts, and Oklahoma law on uninsured motorist (UM) coverage, specifically establish that: (1) the decedent, Mr. Smith, was entitled to coverage for the full $1 million policy limit in UM coverage under the insurance policy issued by Federated to his employer, Fixtures & Drywall Company of Oklahoma, Inc. ("Fadco"); and (2) the Oklahoma Workers' Compensation Act does not bar UM recovery under Federated's policy.

In support of this Motion, the Widow submits the following brief.

### STATEMENT OF THE CASE

This case arose from a tragic wreck in Murray County, Oklahoma, on March 24, 2020. Mr. Smith worked for Fadco at the time of the wreck, and rode in a cargo van owned

1

A-0020

by Fadco and driven by his coworker, Duane Alan Clark ("Mr. Clark"). On the return drive to Fadco's Tulsa office from a job in Thackerville, Mr. Clark fell asleep at the wheel on I-35 near Wynnewood, driving the Fadco van onto the median, off the roadway and striking the cable barrier. This woke up Mr. Clark, who overcorrected his steering to compensate. This maneuver caused the van to cross I-35, past the right shoulder of the highway. Ultimately, the van hit a rock wall on the side of the mountains adjacent to I-35, at an estimated speed of 75 miles per hour.

Murray County EMS transported Mr. Smith to the Arbuckle Memorial Hospital, but he died at the hospital. He left behind his wife, their son, and his parents.

Federated's Fadco policy provides a $1 million liability limit. Because Mr. Smith and Mr. Clark were driving home in a van owned by Fadco, the exclusive remedy provision of the Oklahoma Workers' Compensation Act would apply to a suit against Mr. Clark or their mutual employer, Fadco, making the van "uninsured" under Federated's liability policy. Accordingly, the UM/UIM policy from Federated was supposed to kick in. This policy provides an equal amount ($1 million) of UM/UIM coverage for "insureds," defined in the policy as anyone occupying a covered "auto." The policy also provides coverage to parties, such as the Widow, who are entitled to recovery for damages resulting from "bodily injury" sustained by an "insured."

Federated sought to change the definition of "uninsured motor vehicle," so that the UM/UIM applied only to "directors, officers, partners, or owners of the named insured and family members who qualify as insureds," and not to "any other person who qualifies as an insured." Based on this exclusion, Federated denied UM coverage to Mr. Smith's family

A-0021

for his death, on the grounds that he was not a "director, officer, partner or owner," nor a "family member," of Fadco. This suit and Motion results.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1. Decedent Mr. Smith was employed by Fadco at the time of incident.[1]

2. The wreck that killed Mr. Smith was caused by the negligence of his coworker, Mr. Clark, from driving a van owned by Fadco.[2]

3. Defendant issued a commercial automobile liability policy to Fadco, number 9840992, that included $1 million liability for all "insureds" with "covered autos" owned by Fadco, including UM/UIM coverage.[3]

4. Mr. Smith and Mr. Clark were using a covered "auto" owned by Fadco with Fadco's permission, making them both "insureds" under Defendant's liability policy.[4]

5. Defendant's liability policy included two specific exclusions: one excluding "Any obligation for which the 'insured' or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law," the other excluding "'Bodily injury' to: .

---

[1] Ex. 1, Complaint, ¶ 3.
[2] *Id.*, ¶ 2.
[3] Ex. 2, Federated Mut. Ins. Co. declarations pages.
[4] Ex. 3, Federated Mut. Ins. Co. Business Auto Coverage Form.

A-0022

. . [a]n 'employee' of the 'insured' arising out of and in the course of . . . '[e]mployment' by the 'insured.'"[5]

6. Because of these exclusions and the Oklahoma Workers' Compensation Act's "exclusive remedy" provision, there was no available liability insurance on the van, making the van an "uninsured" motor vehicle.[6]

7. When the Named Insured is "[a] partnership, limited liability company, corporation or any other form of organization," Defendant's UM policy defines an "insured" as "Anyone 'occupying' a covered 'auto'. . . . [and a]nyone for damages he or she is entitled to recover because of 'bodily injury' sustained by another 'insured.'"[7]

8. Defendant's policy included a Limit Options form, which purported to split coverage limits into two categories: "Limit for directors, officers, partners, or owners of the named insured and family members who qualify as insureds," and "Limit for any other person who qualifies as an insured."[8]

9. Fadco selected a $1 million UM/UIM limit for "directors, officers, partners, or owners of the named insured and family members who qualify as insureds," rejected all UM/UIM coverage for "any other person who qualifies as an

---

[5] Ex. 3, Federated Mut. Ins. Co. Business Auto Coverage Form.
[6] Ex. 1, Complaint, ¶ 3.
[7] Ex. 4, Federated Mut. Ins. Co. Okla. UM Coverage – Non-Stacked Endorsement.
[8] Ex. 2, Federated Mut. Ins. Co. declarations pages.

insured," and signed both the coverage waiver and mandated UM form; the decedent did not sign either of these.[9]

10. Federated has not alleged, either explicitly or implicitly, that its UM/UIM exclusion is permitted by Oklahoma's Uninsured Motorist law.[10]

11. Plaintiff made a claim under the policies as decedent Mr. Smith's next of kin, as claim number 549263.[11]

12. On April 30, 2020, Plaintiff's counsel Daniel ("Dan") Graves inquired about the status of Plaintiff's claim and whether there was UM/UIM coverage.[12]

13. On May 1, 2020, in a letter sent to Mr. Graves, Defendant denied UM/UIM coverage to Plaintiff.[13]

## ARGUMENT & AUTHORITIES

### I.   SUMMARY JUDGMENT STANDARD

Under F.R.C.P 56, "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. . . ." Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there

---

[9] Ex. 2, Federated Mut. Ins. Co. declarations pages.
[10] Ex. 1, Complaint, ¶ 4.
[11] Ex. 5, Federated Mut. Ins. Co. denial letter to Daniel Graves.
[12] *Id.*
[13] *Id.*

A-0024

is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[14]

Federated's exclusion of UM coverage, for those who are not "directors, officers, partners, or owners of the named insured and family members who qualify as insureds," restricts UM coverage for the policy's "insureds." This deviates from, and is in clear violation of Oklahoma's UM statute, as well as multiple Oklahoma cases. Additionally, Oklahoma courts have held that plaintiffs can still pursue UM claims if otherwise barred from claiming liability under the exclusive remedy provision of the Workers' Compensation Act.

When applying this standard to the undisputed, material facts, the Widow is entitled to judgment as a matter of law regarding two issues: entitlement to Federated's full $1 million UM policy limit, and entitlement of coverage notwithstanding the "exclusive remedy" provision of the Workers' Compensation Act. As such, Plaintiff respectfully requests her Motion for Partial Summary Judgment be granted on these issues.

## II. FEDERATED'S POLICY EXCLUSION VIOLATES THE UM STATUTE AND THUS PUBLIC POLICY; UM IS "STATUTORY COVERAGE" AND MUST APPLY TO ALL "INSUREDS."

Oklahoma's UM/UIM statute specifically states who must be insured under UM/UIM coverage, as well as the amount of the coverage:

> No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes . . . coverage therein or

---

[14] Fed. R. Civ. P. 45(c)(2).

supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. Coverage shall not be less than the amounts or limits prescribed for bodily injury or death for a policy meeting the requirements of Section 7-204 of Title 47 of the Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured.[15]

Additionally, the statute allows for a "named insured or applicant" to reject UM coverage in writing, albeit with a caveat:

Such selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for *all insureds under the policy* and shall continue until a named insured requests in writing that the uninsured motorist coverage be added to an existing or future policy of insurance.[16]

An insured has the burden of proof to show a loss, but the insurer has the burden of proof in showing the exclusions it relies upon to deny coverage are applicable and enforceable; the Tenth Circuit calls this a "basic rule of insurance law."[17] In Oklahoma, policies must conform to statutes, particularly in "motor vehicle liability policies where the policies failed to include or conflicted with [statutory] provisions."[18] This standard heightens even more when the disputed exclusion involves UM/UIM coverage; Oklahoma courts have viewed such exclusions as presumptively invalid and subject to "critical

---

[15] 36 O.S. § 3636(A)–(B).

[16] 36 O.S. § 3636(G) (emphasis added).

[17] *Pitman v. Blue Cross & Blue Shield of Okla.*, 217 F.3d 1291, 1298 (10th Cir. 2000) (applying Oklahoma law).

[18] *MGA Ins. Co. Inc. v. Fisher-Roundtree*, 159 F.3d 1293, 1296 (10th Cir. 1998) (applying Oklahoma law).

A-0026

scrutiny,"[19] and any considered "repugnant to [the] uninsured motorist statute" are deemed void.[20] Put another way, Oklahoma does not permit insurers to use coverage exclusions attempting to make a UM policy provide less coverage than required by the UM statute.

In *Russell v. American States Insurance Co.*,[21] the Tenth Circuit, applying Oklahoma law, invalidated a UM policy provision excluding an otherwise insured vehicle from the definition of an "uninsured motor vehicle," where the liability limits were less than the claim. In this case, Oklahoma Farmers Union insured Russell, who was killed in a single-vehicle accident while occupying a vehicle owned by third-party Sipes ("Sipes") and driven by third-party Glover ("Glover"). The defendant, American States, insured Glover for liability and UM. Russell's personal representative sued Glover and settled the liability claim against Glover for the full amount of Sipes's liability limits, but both parties agreed that Russell's damages exceeded the amounts paid for by American States.

American States sued for a declaratory judgment that its maximum liability coverage would apply, and its UM coverage did not, because of an exclusion stating that "the term 'uninsured highway vehicle' shall not include (1) an insured highway vehicle."[22] Applying the "critical scrutiny" test, which the Oklahoma Supreme Court established in the seminal UM/UIM case *State Farm Mutual Auto Insurance Co. v. Wendt*,[23] to the exclusion, the Tenth Circuit rejected American States' argument:

---

[19] *State Farm Mut. Auto Ins. Co. v. Wendt*, 1985 OK 75, ¶ 4, 708 P.2d 581, 583.
[20] *Keel v. MFA Ins. Co.*, 1976 OK 86, ¶ 10, 553 P. 2d 153, 155-56.
[21] 813 F.2d 306 (10th Cir. 1987).
[22] *Id.* at 311.
[23] *Wendt*, *supra* n.19, ¶ 4, 708 P.2d 581, 583.

A-0027

The Oklahoma courts have repeatedly held that "once a person is insured under an uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and impermissibly limit uninsured motorist coverage are void as violative of the public policy espoused by 36 O.S.1981 § 3636 . . . . This "Catch 22" provision is void because it impermissibly limits the operation of § 3636, which was designed to broaden the scope of the statute to include underinsured motorist coverage.[24]

The same standard applies here. The provision put in place by Federated (and elected by Fadco) does exactly what the Tenth Circuit had said an insurer may not do: dilute and impermissibly limit UM coverage. The exclusion of coverage for "insureds" who are not "directors, officers, partners, or owners of the named insured and family members who qualify as insureds" essentially acts as a "Catch 22" provision since Federated's policy insured Fadco's employees—including Mr. Smith.

The Tenth Circuit's holding in *Russell* progressed from similar holdings in two Oklahoma Supreme Court cases. *State Farm v. Wendt* voided an exclusion not explicitly permitted by § 3636.[25] Wendt, a passenger in his own vehicle driven by his friend who had no insurance, was hurt in a one-vehicle wreck. He made claims under a personal policy covering his vehicle, as well as his parents' State Farm policies, as he was a member of their household. State Farm denied Wendt's claims under his personal policy, on the grounds that that policy—which already excluded him as to liability through a "named insured" exclusion—had excluded from the definition of "uninsured motor vehicle" a vehicle defined in the policy as "an insured motor vehicle." State Farm denied coverage

---

[24] *Russell*, *supra* n.21 at 311.
[25] *Wendt*, *supra* n.19, ¶ 8, 708 P.2d 581, 583.

A-0028

under his parents' policies as well, since his vehicle (which he was occupying) was a vehicle furnished for his regular use.

The Oklahoma Supreme Court held—in response to this Court's certified question—that Wendt had coverage under both his and his parents' UM policies with State Farm. The exclusion of an insured vehicle from the definition of "uninsured motor vehicle" contrasted to the definition of "uninsured motor vehicle" contained in the UM statute. Since the "named insured" exclusion already excluded Wendt from liability coverage, Wendt's vehicle was "uninsured," entitling Wendt to UM coverage on his vehicle.

*Russell* and *Wendt* both quote *Heavner v. Farmers Ins. Co.*,[26] which also says insurers cannot enforce an exclusion contrary to the UM statute. There, plaintiff, Heavner, was injured while riding as a passenger in a car drive by Carlos Sturms, who was insured by Farmers for both liability and UM. Sturms negligently caused a wreck, injuring Heavner and three other passengers in his car. Before Heavner filed suit, Farmers admitted liability and interpleaded its $20,000 liability policy limits. Farmers denied Heavner UM benefits on the grounds that "[t]he term 'uninsured motorist vehicle' shall not include: (a) an 'insured motor vehicle', or (b) a motor vehicle owned by the named insured…."[27] The Oklahoma Supreme Court held that Farmers' exclusion against Heavner was void, entitling Heavner to UM benefits under the policy, because the attempted exclusion violated the definition of an "uninsured motor vehicle" explained in the UM statute.

---

[26] 1983 OK 51, 663 P.2d 730.
[27] *Id.*, ¶ 6, 663 P.2d at 731.

A-0029

Based on the undisputed material facts, Plaintiff has pled the necessary elements for coverage under Federated's policy notwithstanding an exclusion clearly contradictory to Oklahoma UM law. She, as next of kin of the decedent, is legally entitled to recover damages from an accident involving an uninsured vehicle. Federated has not asserted (and, it stands to reason, cannot assert) that the policy's provision excluding coverage because the decedent is not a "director, officer, partner, or owner" nor "family member" of Fadco would be applicable and enforceable under the standards set in Oklahoma law.

Federated's policy terms seem "one size fits all," despite the patchwork of state laws on UM coverage. Several other state courts have upheld "form" exclusions in Federated policies rejecting UM coverage for some "insureds," stating they fit within the bounds of their states' respective UM statutes.[28] Yet, unlike Oklahoma, none of the states in question have UM statutes stating that UM coverage rejections must apply to *all* insureds, nor do these state courts have caselaw invalidating attempts to contravene the UM statute through exclusions that might be permissible in other forms of insurance. For example, the Delaware Supreme Court's rationale in *Stoms v. Federated Mutual Insurance Co.*, which upheld the "directors, officers, partners or owners" exclusion at issue here, specifically reasoned "[t]here is nothing improper under Delaware's insurance statutes about an

---

[28] *See Jones v. Federated Mut. Ins. Co.*, 346 Ga. App. 237, 816 S.E.2d 105 (2018); *Stoms v. Federated Serv. Ins. Co.*, 125 A.3d 1102 (Del. 2015); *Hall v. Federated Mut. Ins. Co.*, 80 So.3d 727 (La. App. 2011); *Federated Mut. Ins. Co. v. Vaughn*, 961 So.2d 816 (Ala. 2007).

A-0030

employer providing higher optional levels of insurance to certain of its managers than to others."[29] In Oklahoma, this is just not the case.

Other courts with UM statutes similar to Oklahoma's have not looked quite as kindly toward similar exclusions in Federated policies providing for rejection of UM for some insureds based on certain criteria. In *Varro v. Federated Mutual Insurance Co.*, the District Court of Appeal of Florida held invalid a similar policy issued by Federated to local company KW Electric, where plaintiff Varro, a passenger in a Mercedes driven by KW Electric's president and involved in an accident, was not considered a "family member" under the policy and therefore could not claim UM coverage.[30] The court stated that under Florida's UM statute, insureds "may reject UM coverage 'on behalf of all insureds under the policy,' but the statute does not allow rejection of UM coverage on behalf of only some insureds under the policy."[31]

Similarly, in *Balagtas v. Bishop*,[32] the Court of Appeals of Indiana upheld a trial court's rejection of a similar exclusion in a Federated policy form, on the grounds that it "diluted statutory protections." The opinion held "the election or rejection of coverage must apply to all insureds,"[33] and quoted the trial court's original decision by stating, "[t]he policy of the [UM] statute would be defeated if the person with the power to elect or decline

---

[29] *Stoms*, 125 A.3d at 1106 (citing relevant **Delaware** cases).
[30] 854 So.2d 726 (Fla. Dist. Ct. App. 2003).
[31] *Id.* at 729 (citing Fl. St. § 627.727(1)).
[32] 910 N.E.2d 789 (Ind. Ct. App. 2009).
[33] *Id.* at 795.

A-0031

coverage could elect coverage for herself while declining coverage for others."[34] This decision branched off of two other UM cases against Federated that were decided by that state court, and both invalidated the exclusion and required Federated to provide UM coverage.[35]

Giving Federated the benefit of the doubt and ruling in favor of its exclusions would lead to patently absurd results for a company with van drivers and construction workers among its employees. The Widow should not be denied recovery for her husband's tragic death merely because his employer opted to permit rejecting him from UM coverage under a policy in a way that clearly contravenes Oklahoma law. Because Federated cannot assert otherwise, the Widow is entitled to UM under Federated's policy with Fadco.

III.   **THE WIDOW CAN RECOVER FROM FEDERATED DESPITE BEING BARRED FROM OTHER RECOVERY BY THE OKLAHOMA WORKERS' COMPENSATION ACT.**

In Oklahoma, the Workers' Compensation Act contains an exclusive remedy provision, which states, in its most current version:

> The rights and remedies granted to an employee subject to the provisions of the Administrative Workers' Compensation Act shall be exclusive of all other rights and remedies of the employee, his legal representative, dependents, next of kin, or anyone else claiming rights to recovery on behalf of the employee against the employer, or any principal, officer, director, employee, stockholder, partner, or prime contractor of the employer on account of injury, illness, or death. Negligent acts of a co-employee may not be imputed to the employer.[36]

---

[34] *Balagtas*, *supra* n.32, 910 N.E.2d at 796.

[35] *See Am. Family Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 800 N.E.2d 1015, 1022 (Ind. Ct. App. 2004); *Am. Family Mut. Ins. Co. v. Federated Mut. Ins. Co.*, 775 N.E.2d 1198, 1206 (Ind. Ct. App. 2002).

[36] 85A O.S. § 5.

A-0032

Ordinarily, this provision would bar the Widow from recovery, unless she were to sue Fadco in a workers' compensation court as Mr. Smith's next of kin. It certainly means she cannot sue Mr. Clark, because, as Mr. Smith's co-employee, he would be immune from suit. Nonetheless, based on a pair of precedents from the Oklahoma Supreme Court, the Widow can still recover from Fadco's UM coverage with Federated.

In *Barfield v. Barfield*,[37] Robert Barfield, a truck driver with United Petroleum Transports, did some on-the-job training with a recent hire, his brother Vern Barfield, teaching him their employer's routes. Tragedy struck, however, when both brothers were killed in a one-vehicle wreck. Both brothers' widows received death benefits under the Workers' Compensation Act. Vern's widow subsequently sued both Robert's widow (as executor of Robert's estate) and Vern's UM carrier, Kansas City Fire and Marine, on the grounds that Vern's death was caused by Robert's negligence, and Robert was considered an "uninsured motorist" under the policy.

The trial court held the exclusive remedy provision of the Workers' Compensation Act barred both claims, granting summary judgment to Robert's widow and Kansas City Fire and Marine, and Vern's widow appealed. The Oklahoma Supreme Court upheld the summary judgment for Robert's widow, but reversed for the UM carrier, stating:

> Protection under an uninsured motorist policy is a contractual right resting in the insured and thus may be co-existent with the protection under the Workers' Compensation Act. . . . Decedent's widow is not attempting to recover from a policy with which decedent had no connection. Instead she merely seeks to recover under a policy which insured plaintiff's decedent against financially irresponsible motorists. Insureds are entitled to uninsured

---

[37] 1987 OK 72, 742 P.2d 1107.

motorist coverage under their policies regardless of the circumstances that exist when they are personally injured through the fault of an uninsured motorist.[38]

*Torres v. Kansas City Fire and Marine Ins. Co.*[39] extended *Barfield* to cases where employees and their representatives sue for recovery under their employer's UM policy. In that case, while riding as a passenger in a car owned by his employer, Mid-America Lumber and driven by a co-employee, Christopher Torres was killed in a wreck caused by the co-employee's negligence. Christopher's father Gary, his personal representative, recovered Workers' Compensation death benefits. Gary then sued Mid-America Lumber's UM carrier, Kansas City Fire and Marine, to recover under its UM policy. The carrier argued *Barfield*'s holding was distinguishable because, unlike the decedent Vern in *Barfield*, who was a Class 1 insured, Christopher was a Class 2 insured, i.e., Christopher did not actually purchase the policy with the UM exclusion and was somehow not "named" under that sphere.[40] The trial court did not humor this argument, stating that as a matter of law, Christopher could recover under Kansas City Fire and Marine's UM endorsement, regardless of whether the Workers' Compensation Act gave his co-employee statutory immunity from suit.

---

[38] *Barfield*, *supra* n.37, ¶¶ 13–14, 742 P.2d at 1112–13.
[39] 1993 OK 32, 849 P.2d 407.
[40] *Id.*, ¶ 11, 849 P.2d at 411.

A-0034

In *Torres*, the carrier appealed, the COCA upheld the verdict, and the Oklahoma Supreme Court affirmed.[41] The Court said the question of whether Christopher was a Class 1 or Class 2 insured did not have any bearing on the matter, citing *Heavner* as its guide:

> In our view, focusing on who paid the premium is in essence the same argument cast in a little different light than focusing on the status of the insured as Class 1 or Class 2 for the reason most, if not all, Class 2 insureds will have paid no premium. In *Heavner v. Farmers Insurance Company* [citation omitted] we specifically rejected the view that an insured under an UM endorsement by virtue of his being a passenger in a vehicle driven by the named insured in the policy at issue should be precluded from receiving UM benefits merely because he had paid no premium for the coverage.[42]

When one takes the invalid exclusion out of the picture, Mr. Smith *was* an "insured," but his next of kin, the Widow, would have otherwise been barred from recovery in a non-Workers' Compensation court. This is due to both the exclusive remedy provision and the fact that the negligent driver, Mr. Clark, was Mr. Smith's co-employee, making him statutorily immune from suit. Under the standard set in *Barfield* and *Torres*, the Widow can still recover under Federated's policy—regardless of whether she or her late husband actually purchased the policy.

### CONCLUSION

Federated's coverage exclusions limit Fadco's insurance policy in a fashion clearly contrary to Oklahoma law. Plaintiff hereby respectfully requests a judgment in her favor, stating that (1) as next of kin of the decedent, she is entitled to Federated's $1 million UM policy limit; and (2) the "exclusive remedy" provision of the Oklahoma Workers'

---

[41] *Torres*, *supra* n.39, ¶ 12, 849 P.2d at 411.
[42] *Id.*, ¶ 16, 849 P.2d at 412–13.

A-0035

Compensation Act does not bar her from recovering on Federated's policy. This will leave us to try only the issues of negligence, damages and bad faith.

Respectfully submitted,

CHAD MCLAIN, OBA #19349                REX TRAVIS, OBA #9081
DAN GRAVES, OBA #16656                 MARGARET TRAVIS, OBA #14424
RACHEL GUSMAN, OBA #22161              CASEY LAWSON, OBA #33947
4137 S. Harvard Ave., Suite F          info@travislawoffice.com
Tulsa, OK 74135                        P.O. Box 1336
Telephone: (918) 359-6600              Oklahoma City, OK 73101-1336
Facsimile: (918) 359-6605              Telephone: (405) 236-5400
                                       Facsimile: (405) 236-5499
                                       By
                                       s/ Rex Travis
                                       _____
                                       Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of August 2020, I electronically transmitted the foregoing Plaintiff's Motion for Partial Summary Judgment to the Clerk of Court using the ECF System for filing. Based on the current records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

s/ Rex Travis
_____

A-0036

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NANCY ANAYA-SMITH, next of kin of
MICHAEL BRIAN SMITH, deceased,
      Plaintiff/Counter-Defendant,

vs.

FEDERATED MUTUAL INSURANCE
COMPANY,
      Defendant/Counterclaimant.

Case No. Civ-20-565-D
The Hon. Timothy DeGiusti

## PLAINTIFF'S ANSWER TO DEFENDANT'S COUNTERCLAIM

For her Answer to Defendant's Counterclaim for Declaratory Relief, Plaintiff denies each and every allegation except as expressly admitted, and she:

1. Admits the Court has jurisdiction and that venue is proper as set forth in paragraphs 1-4.

2. Denies the allegations in paragraph 5. The vehicle Brian Smith was occupying at the time of the subject wreck and his death was uninsured for the purposes of the policy at issue. Further, the named insured accepted UM coverage.

3. Admits the allegations in paragraphs 9, 10, 11, 12, 13, 14, 15, 16, 17, and 18.

4. Admits, with regard to paragraphs 19–25, the policy extends $1 million uninsured and underinsured motorist coverage but denies that such coverage is validly limited so that some insureds have coverage while others do not.

5. Admits the allegations of paragraph 26.

A-0037

6. Denies the allegations in paragraph 27.

7. With regard to paragraphs 30–37, state that these appear to be an inadvertent repetition of the preceding paragraphs. Therefore, her response to those paragraphs is the same as when first stated.

8. Denies the allegations of paragraph 38.

9. States the allegations of paragraphs 40-45 are inadvertent repetitions of the preceding paragraphs. Therefore, her response to those paragraphs is the same as when first stated.

10. Plaintiff denies the allegations in paragraphs 46–47.

WHEREFORE, having fully answered, Plaintiff prays that Defendant Federated Mutual Insurance Company take nothing by its counterclaim.

| | |
|---|---|
| WILLIAM C. MCLAIN, OBA #19349 | REX TRAVIS, OBA #9081 |
| DANIEL B. GRAVES, OBA #16656 | MARGARET TRAVIS, OBA #14424 |
| RACHEL GUSMAN, OBA #22161 | CASEY LAWSON, OBA #33947 |
| 4137 S. Harvard Ave., Suite F | info@travislawoffice.com |
| Tulsa, OK 74135 | P.O. Box 1336 |
| Telephone: (918) 359-6600 | Oklahoma City, OK 73101-1336 |
| Facsimile: (918) 359-6605 | Telephone: (405) 236-5400 |
| | Facsimile: (405) 236-5499 |
| | By |
| | s/ Rex Travis |
| | ATTORNEYS FOR PLAINTIFF/COUNTER-DEFENDANT |

## CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of September 2020, I electronically transmitted the foregoing Plaintiff's Answer to Defendant's Counterclaim to the Clerk of Court using the ECF System for filing. Based on the current records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

s/ Rex Travis

A-0039

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NANCY ANAYA-SMITH, next of kin of MICHAEL BRIAN SMITH, deceased,<br><br>   Plaintiff,<br><br>vs.<br><br>FEDERATED MUTUAL INSURANCE COMPANY,<br><br>   Defendants. | Case No. CIV-20-565-D |

**DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY
JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT**

Bart J. Robey, OBA No. 19926
Eric A. Moen, OBA No. 31155
Chubbuck Duncan & Robey, P.C.
1329 N. Classen Drive
Oklahoma City, Oklahoma 73103
Phone: 405-236-8282
Fax: 405-236-2828
bjrobey@chubbucklaw.com
eamoen@chubbucklaw.com
*Attorneys for Defendant and Counterclaimant
Federated Mutual Insurance Company*

A-0040

## TABLE OF CONTENTS

Table of Authorities………………………………………………………………iii

I.      Statement of the Case……………………………………..…………1

II.     Federated's Response to Plaintiff's "Statement of Undisputed
        Material Facts"………………………………………………….…...3

III.    Movant Federated's Statement of Undisputed Material Facts……...………5

IV.     Arguments and Authorities…………………………………………9

        A.      Plaintiff is not entitled to UM/UIM coverage under the plain
                terms of the policy, because the Named Insured, FADCO,
                decided not to purchase such coverage for persons such as
                Mr. Smith, which it had the right to do under Oklahoma law………9

                1.      Under the clear and unambiguous terms of FADCO's
                        Policy, Mr. Smith is not entitled to UM/UIM coverage
                        because he was not a FADCO director, officer, owner,
                        or family member of such…………………………………9

                2.      FADCO elected to purchase optional UM/UIM coverage only
                        for its directors, officers, owners and their family members
                        who qualify as insureds, and not to purchase coverage
                        for any other person…………………………………………...11

                3.      Oklahoma law allows a Named Insured the option to
                        purchase UM/UIM coverage for some insureds, and
                        not others……………………………………………………...13

                4.      The "valid for all insureds" statutory language does not
                        mean that the named insured must purchase the same
                        coverage for all insureds…………………………………16

                5.      There is no Oklahoma public policy expressed in any
                        statute that mandates the same UM/UIM coverage for
                        all insureds……………………………………………………18

        B.      Arguing solely in the alternative, if FADCO's rejection of
                UM/UIM coverage were deemed invalid, only the statutory
                minimum limits are imputed into Federated's Policy…………..…...23

        C.      Plaintiff has not established that the FADCO vehicle was an
                "uninsured motor vehicle" as that term is defined in the Policy…...24

        D.      Plaintiff's bad faith claim fails as a matter of law………...…………26

V.      Conclusion………………………………………………………...27

A-0041

## TABLE OF AUTHORITIES

**Cases**:

Balagtas v. Bishop, 910 N.E.2d 789 (Ind. Ct. App. 2009)……….……………21, 22

Barfield v. Barfield, 742 P.2d 1107 (Okla. 1987)……………………….……………26

Boerstler v. Hoover, 943 P.2d 614 (Okla. 1997)………………………….……………23

BP America, Inc. v. State Auto Property & Cas. Co.,
    148 P.3d 832 (Okla. 2005)…………………………………………….……………9, 20

Conti v. Republic Underwriters, Ins. Co., 782 P.2d 1357 (Okla. 1989)……...……27

Crouch v. Federated Mut. Ins. Co., 571 S.E.2d 574 (Ga.App. 2002)………………13

Estes v. ConocoPhillips Co. ̦184 P.3d 518 (Okla. 2008)…………………….…….15

Federated Mut. Ins. Co. v. Vaughn, 961 So.2d 816 (Ala. 2007)………………12, 21

Germany v. Darby, 157 So.3d 521 (Fla. Dist. Ct. App. 2015)………….………….22

Hlasnick v. Federated Mut. Ins. Co., 539 S.E.2d 274 (N.C. 2000)…………......13, 21

Jarrell v. Viking Insurance Company of Wisconsin,
    2017 WL 1154025 (D. Colo. 2017)…………………………….…………13, 19

Jones v. Federated Mut. Ins. Co., 816 S.E.2d 105 (Ga.App. 2018)……...…12, 15, 21

May v. National Union Fire Insurance Co., 918 P.2d 43 (Okla. 1996)………..23, 24

Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431 (10th Cir. 1993)…………….…27

Pearson v. St. Paul Fire and Marine Insurance Company,
    393 F.Supp.2d 1238 (W.D. Okla. 2005)…………………………….…………27

Rarick v. Federated Service Ins. Co., 325 F.Supp.3d 590 (E.D. Pa. 2018)…13, 16, 21

Siloam Springs Hotel, LLC v. Century Surety Co., 392 P.3d 262 (Okla. 2017)……18

Stoms v. Federated Service Ins. Co., 125 A.3d 1102 (Del. 2015) ………..……12, 20

Stoms v. Federated Service Ins. Co.,
    2014 WL 6673848 (Super.Ct.Del. 2014) ……………………………….…….22

Timberlake Constr. Co. v. U.S. Fid. And Guar. Co.,
    71 F.3d 335, 343 (10th Cir. 1995)…………………………………….………..27

Torres v. Kansas Fire and Marine Inc. Co., 849 P.2d 407 (Okla. 1993)…….….….26

Varro v. Federated Mutual Ins. Co.,
    854 So.2d 726 (Fla. Dist. Ct. App. 2003)……………………………….………21, 22

<u>Wiley v. Universal Underwriters Ins. Co.</u>, 2017 WL 495794 (E.D. Pa. 2017)…….13

<u>Worley v. Fender</u>, 79 N.E.3d 173 (Ill.App. 5th Dist. 2017) ……………………….13

**Statutes**:

18 Del. C. § 3902………………………………………………………….…………..20

36 O.S. § 3610……………………………………………………………………16

36 O.S. § 3636…………………………………………..…………14, 15, 16, 18, 23, 24

Fl. Stat. § 627.727 (1) (1999)……………….……………………………………21

A-0043

Defendant Federated Mutual Insurance Company ("Federated") asks the Court to deny the Motion for Partial Summary Judgment filed by Plaintiff, Nancy Anaya-Smith as next of kin of decedent Michael Brian Smith ("Mr. Smith"). In addition, pursuant to Fed. R. Civ. P. 56, Federated moves for summary judgment on its counterclaim for declaratory judgment. Federated respectfully asks the Court to dismiss plaintiff's complaint with prejudice, and to enter a judgment declaring Federated's policy issued to Fixtures and Drywall Company of Oklahoma, Inc. ("FADCO") provides no uninsured/underinsured motorist ("UM/UIM") coverage to Mr. Smith for an underlying accident.

No genuine issue of material fact exists, and Federated is entitled to judgment under the plain terms of the policy and applicable Oklahoma law. Because Federated is entitled to a judgment declaring it has no UM/UIM coverage obligations, it is likewise entitled to judgment dismissing plaintiff's claims as they necessarily fail where no coverage exists. The grounds for the motion are more fully set forth in the Argument and Authorities below. This motion is based upon all of the files, records, and proceedings herein, including the Declaration of Daniel Powers. [Exhibit "1"].

## I.   <u>Statement of the Case</u>

Mr. Smith was employed by FADCO, which is a millwork subcontractor in the Tulsa area.  While acting within the course of employment, he sustained fatal injuries in a one-vehicle accident. At the time, he was occupying a FADCO-owned vehicle being driven by a co-employee. Plaintiff alleges that the co-employee's negligence caused the accident. In the present lawsuit, plaintiff claims that the co-employee is an uninsured or underinsured motorist and that she is entitled to UM/UIM coverage under FADCO's commercial insurance policy issued by Federated.

This claim fails for the simple reason that the Oklahoma policyholder, FADCO, exercised its right not to purchase optional UM/UIM coverage for persons such as Mr. Smith. Federated had offered such coverage to FADCO as required by Oklahoma law and was more than happy to sell it with an accompanying increased premium. But FADCO

instead chose to purchase UM/UIM coverage only for its directors, officers, owners, and their family members who qualify as an insured, and to reject coverage for anyone else who otherwise may have qualified as an insured, including Mr. Smith.

FADCO's rejection of such coverage was in conformity with Oklahoma statutes. Oklahoma does not require it policyholders to purchase UM/UIM coverage. Rather, it only requires automobile liability insurers to offer to sell optional UM/UIM coverage up to the same limit as the limit for bodily injury liability coverage, which Federated did here. Oklahoma law then affords named insured policyholders the "right" to determine what optional coverage they want to purchase and what coverage they do not want to purchase. By statute, those named insured decisions bind all insureds under the named insured's policy. Here, FADCO, as the corporate named insured, decided to reject UM/UIM coverage for anyone qualifying as an "insured", other than its officers, directors, owners and their family members.

Plaintiff takes issue with FADCO's right to reject optional UM/UIM coverage for insureds such as Mr. Smith, while deciding to purchase coverage for its officers, directors, and owners. Plaintiff takes the position that Oklahoma law somehow compels Oklahoma policyholders to either purchase optional UM/UIM coverage for all potential insureds under their policies, or to not purchase such coverage for any insured at all.  But Oklahoma statutes impose no such "all or nothing" rule. Plaintiff urges the court to find an "all or nothing" requirement based solely on a statutory provision stating that, when an Oklahoma named insured makes its coverage selections, those decisions about what they wish to purchase are "valid for all insureds." According to plaintiff, this supposedly means that any rejection of UM/UIM coverage by a named insured must *apply* to all insureds. But that is not what the statute says.  This provision simply states the named insured's "selection, rejection, or exercise of the option not to purchase uninsured motorist coverage * * * shall be valid for all insureds under the policy." Under this provision, Oklahoma named insured policyholders are given the statutory right to decide

what coverage to purchase, or not to purchase, and their decisions bind all who might qualify as insureds under the policy that the named insured paid for.

Plaintiff's argument directly attacks all Oklahoma policyholders' statutory ability to select the optional UM/UIM coverage they wish to procure.  If plaintiff's all-or-nothing argument prevails, all Oklahoma policyholders would be forced to either pay for optional coverage that they did not want to buy, or to forego the optional coverage that they wished to purchase.  This would contravene, not promote, the statute and its underlying public policy affording policyholders choices when making their insurance-purchasing decision.  And if forced to accept an all-or-nothing approach, in which the payment for all insureds come with increased costs for purely optional coverage, the ironic result of plaintiff's argument would likely be that less Oklahomans, not more, would have UM/UIM coverage.

In short, the Named Insured, FADCO, exercised its statutory right not to purchase UM/UIM coverage for insureds such as Mr. Smith. This Court is obligated to give effect to FACDO's decision.  Federated asks the court to enter judgment declaring that no UM/UIM coverage is provided to Mr. Smith under FADCO's policy, as FADCO had intended.  It also asks for judgment dismissing the Complaint.

## II.    **Federated's Response to Plaintiff's "Statement of Undisputed Material Facts"**

Federated responds to each of plaintiff's statements as follows:

1.     Admitted.

2.     Disputed. Plaintiff has the burden of proof on the allegations of negligence stated in paragraph 2 and has not submitted any admissible evidence in support of those. Federated further states that the issue regarding negligence is not material to Federated's motion for summary judgment.

3.     Admitted in part, disputed in part. Federated admits it issued a commercial package policy to FADCO and that the policy includes a Business Auto Coverage part, but denies that plaintiff's statements accurately characterize the policy's coverage.

Federated denies that the policy provides UM/UIM coverage to all persons who qualify as an "insured" under the policy's UM/UIM coverage endorsement. The policy speaks for itself.

4.      Admitted in part, disputed in part. Federated admits Mr. Smith and Mr. Clark were occupying an auto owned by FADCO and that Mr. Clark was operating the vehicle with FADCO's permission, thus qualifying Mr. Clark as an "insured" for liability coverage under the Federated policy. Federated disputes plaintiff's statement that Mr. Smith is insured for liability coverage, because there have been no claims made against him as a mere "occupant" of the FADCO vehicle at the time of the accident.

5.      Admitted.

6.      Disputed.  The FADCO vehicle was a "covered auto" for liability coverage under the Business Auto Coverage part of Federated's Commercial Package Policy.  Thus, the vehicle is not "uninsured". The policy's UM/UIM endorsement defines the term "uninsured motor vehicle" [Exhibit "A" to Declaration of Daniel Powers, FEDPOL0044], and the FADCO vehicle does not meet that definition because the vehicle is insured under the Business Auto Coverage part [Id., FEDPOL0020, FEDPOL0024].  In addition, the liability coverage of the Business Auto Coverage part applies to Mr. Clark because he is an "insured" for such coverage. [Id., FEDPOL0024]. Such liability coverage would indemnify him for sums he legally must pay as damages because of bodily injury caused by an accident and arising from his operation of the vehicle.

7.      Admitted.

8.      Admitted in part, disputed in part. Federated denies that the "form" referenced in paragraph 8 is part of, or included in, the insurance policy. The form speaks for itself, and does provide the named insured with the option of selecting different limits or rejecting coverage for "directors, officers, partners, or owners of the named insured and family members who qualify as insureds" and for "any other person who qualifies as an insured." [Exhibit "D" to Powers Declaration].

A-0047

9.      Admitted.

10.     Disputed. Federated affirmatively alleges that Oklahoma law allows a named insured to reject UM/UIM coverage for reasons explained in its memorandum of law.

11.     Admitted.

12.     Admitted.

13.     Admitted.

### III.     <u>Movant Federated's Statement of Undisputed Material Facts</u>

1.      Mr. Smith was involved in a motor vehicle accident on March 24, 2020 that resulted in his death (the "Accident"). [*See* Docket #1, Plaintiff's Complaint, ¶2; Docket #12, Federated's Answer, ¶ 2].

2.      At the time of the accident, Mr. Smith was a passenger in a vehicle owned by FADCO that was being operated by a co-worker, Duane Clark. It is plaintiff's contention that Mr. Clark's negligence caused the accident. [*See* Docket #1, Plaintiff's Complaint, ¶ 2 & 3].

3.      Federated issued a Commercial Package Policy, number 9840992, for the policy period 03/01/2020 to 03/01/2021 (the "Policy"). [Powers Declaration, Ex. 1, ¶ 4]. The Policy relevantly identifies Fixtures and Drywall Company of Oklahoma Inc. as the Named Insured and, under the Business Auto Coverage part, extends liability coverage pursuant to form CA 00 01 10 13. [Ex. "A" to Powers Declaration, Bates No. FEDPOL0001, FEDPOL0024].

4.      Federated also issued Commercial Umbrella Policy, number 9840993, for the policy period 03/01/2020 to 03/01/2021 (the "Umbrella Policy"). [Powers Declaration, Ex. 1, ¶ 4]. The Umbrella Policy provided excess liability coverage subject to a limit of $6,000,000 per occurrence.  [Exhibit "B" to Powers Declaration, FEDPOL0084].

5.      The Policy extends liability coverage for, "all sums an 'insured' legally must pay as damages because of 'bodily injury' * * * to which this insurance applies,

caused by an 'accident' and resulting from the ownership, maintenance or use of a covered auto." [Ex. "A" to Powers Declaration, Bates No. FEDPOL0025].

6.  The Policy defines "insured" for liability coverage to include FADCO and, "**b.** Anyone else while using with your permission a coverage "auto" you own, hire or borrow * * *." [Ex. "A" to Powers Declaration, Bates No. FEDPOL0025].

7.  To the extent Duane Alan Clark was using the FADCO vehicle at the time of the Accident with the permission of FADCO, he qualified as an insured under the liability coverage of the Policy. [Ex. "A" to Powers Declaration, Bates No. FEDPOL0025].

8.  Form CA 00 01 10 13 of the Policy relevantly excludes coverage for:

**5.  Fellow Employee**

"Bodily injury" to:

a.  Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

* * *

[Exhibit "A" to Powers Declaration, Bates No. FEDPOL0027].

9.  The Policy includes an endorsement form CA-F-5 (04-19), entitled "Business Auto Amendatory Endorsement," which deletes the "Fellow Employee" exclusion quoted in paragraph 7 above. [Ex. "A" to Powers Declaration, Bates No. FEDPOL0065].

10.  Prior to issuance of the Policy, Federated offered to provide UM/UIM coverage to FADCO in amounts equal to the $1,000,000 bodily injury liability limit of the Policy, or to purchase a lesser amount, or to reject such coverage entirely for all persons who would otherwise qualify as an insured. [Powers Declaration, Ex. 1, ¶ 7, and Exhibit "C" to Powers Declaration, "Oklahoma Uninsured Motorists Coverage Law" election form, F80-104 PT.2 (OK) (04-05)].

11.    On February 28, 2018, FADCO representative Stephanie Geddings executed the "Oklahoma Uninsured Motorists Coverage Law" election form, F80-104 PT.2 (OK) (04-05), and expressly rejected all "Uninsured Motorist coverage." [Ex. "C" to Powers Declaration].

12.     Federated also offered FADCO the option of purchasing UM/UIM coverage for its directors, officers, owners, and their family members who qualify as an insured, while rejecting coverage for any other person who qualifies as an insured. [Powers Declaration, Ex. 1, ¶ 8, Ex. "D" to Powers Declaration, "Oklahoma Commercial Auto Coverage Form," F80-104 PT.1 (OK-C.A.) (04-05)].

13.    On February 28, 2018, FADCO's representative Stephanie Geddings executed the "Oklahoma Commercial Auto Coverage Form," F80-104 PT.1 (OK-C.A.) (04-05), electing to purchase $1,000,000 of UM coverage for FADCO's directors, officers, owners, and their family members who qualify as an insured, while rejecting coverage for any other person who qualifies as an insured. [Powers Declaration, Ex. 1, ¶¶ 8 & 9; Ex. "D" to Powers Declaration].

14.    The Policy includes Form CA-F-93 (10-13), which is entitled "UNINSURED AND UNDERINSURED MOTORISTS LIMIT OF INSURANCE." [Ex. "A" to Powers Declaration, Bates No. FEDPOL0046] Federated includes this Form in the insurance policy where, as here, a Named Insured elects to purchase UM/UIM coverage for its directors, officers, owners and their family members who qualify as insured, and either elects a different limit or rejects coverage entirely for any other person who qualifies as an insured.  [Powers Declaration, Ex. 1 ¶ 10].  Pursuant to the named insured's coverage elections, Form CA-F-93 sets forth the limit of insurance for UM/UIM coverage that is applicable to directors, officers, owners and their family members who qualify as an insured, and also sets forth the different limit applicable to any other person who qualifies as an insured. In the event the named insured decided to reject coverage for any other person who qualifies as an insured, then Form CA-F-93 lists

no limit for such persons and states:  "If no limit is shown below, no coverage is afforded to any other person."  [Ex. "A" to Powers Declaration, Bates No. FEDPOL0046].

15.    Form CA-F-93 (10-13) was filed with, and approved for use by, the Oklahoma Insurance Department, prior to issuance of the Policy. [Powers Declaration, Ex. 1, ¶ 11].

16.    Form CA-F-93 (10-13) of FADCO's Policy extends $1,000,000 in Uninsured and Underinsured Motorists Coverage only for FADCO's directors, officers, owners and their family members, who qualify as an insured under the Policy's uninsured motorist coverage form. [Exhibit "A" to Powers Declaration, Bates No. FEDPOL0046].

17.    Form CA-F-93 (10-13) of FADCO's Policy also contains a provision indicating that any other person who qualifies as an insured may be entitled to Uninsured and Underinsured Motorists Coverage, but only if a limit of insurance is shown. The Form states "If no limit is shown below, no coverage is afforded to any other person." No limit is shown, and therefore no other person who qualifies as an insured is entitled to uninsured or underinsured motorist coverage. [Ex. "A" to Powers Declaration, Bates No. FEDPOL0046].

18.    At the time of Brian Smith's death, he was not a director, officer, or owner of the FADCO, or a family member of such individuals.  [Docket #12, Counterclaim ¶ 26, Docket #17, Answer to Counterclaim, ¶ 5].

19.    The premium charged by Federated for UM/UIM coverage for directors, officers, partners or owners of FADCO was $230. [Powers Declaration, Ex. 1, ¶ 8].

20.    If FADCO had decided to also purchase UM/UIM coverage for "any other person who qualifies as an insured," the premium charged by Federated would have increased.  For example, had FADCO also purchased $1,000,000 of UM/UIM coverage for any other person qualifying as an insured, the premium charged for UM/UIM coverage would have been $1,150. [Powers Declaration, Ex. 1, ¶¶ 12 & 13].

IV.     **Arguments and Authorities**

Interpreting an insurance policy presents an issue of law for the Court.  See <u>BP America, Inc. v. State Auto Property & Cas. Co.</u>, 148 P.3d 832, 835 (Okla. 2005). Policy terms are given their plain and ordinary meaning, are not ambiguous when subject to only one reasonable interpretation, and "a split in authority over whether a term is ambiguous will not, in itself, establish an ambiguity." *See* <u>Id</u>. at 835-36.  In this case, the policy terms and the UM/UIM coverage rejection form are clear and unambiguous.  In fact, plaintiff makes no argument that their terms are unclear or ambiguous.  Those terms plainly establish that Mr. Smith is not entitled to UM/UIM coverage as a matter of law.

    A.     **Plaintiff is not entitled to UM/UIM coverage under the plain terms of the policy, because the Named Insured, FADCO, decided not to purchase such coverage for persons such as Mr. Smith, which it had the right to do under Oklahoma law.**

Plaintiff's claim for UM/UIM coverage fails as a matter of law because FADCO did not purchase it for persons such as Mr. Smith. The policy provides UM/UIM coverage only to FADCO's directors, officers, owners, and their family members who qualify as insureds.  It provides no coverage to any other person.  FADCO had the statutory right to decide what coverage to purchase. It exercised that right in accordance with Oklahoma law. Nothing in Oklahoma statues precluded FADCO from purchasing UM/UIM coverage for its directors, officers, and owners, and rejecting coverage for any other person qualifying as an insured.

    1.     **Under the clear and unambiguous terms of FADCO's Policy, Mr. Smith is not entitled to UM/UIM coverage because he was not a FADCO director, officer, owner, or family member of such.**

The Policy's Declarations state that it provides UM/UIM coverage for "covered autos" identified by symbol "2A" and subject to the limits set forth in Form CA-F-93. [Ex. "A" to Powers Declaration, FEDPOL0020]  Symbol "2A" refers to "Owned 'Autos' Only", which is defined as "[o]nly those 'autos' you own." [Id. at FEDPOL0064]  The term "You" refers to the named insured, which is FADCO. [Id. at FEDPOL0001]  Here,

the vehicle occupied by Mr. Smith at the time of the accident was owned by FADCO. Thus, UM/UIM coverage is provided for that vehicle subject to the terms in form CA-F-93, which provides:

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

**UNSINSURED AND UNDERINSURED MOTORISTS LIMIT OF INSURANCE**

This endorsement modifies insurance provided under the following:
BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM

In consideration of the premium charged, the limit for Uninsured and Underinsured Motorists Coverage as provided by your policy is modified as follows:

1. For all directors, officers, partners or owners of the named insured and their "family members" who qualify as "insureds" under the WHO IS INSURED of the Uninsured and Underinsured Motorists Coverage attached to this policy, the limit of insurance shall apply per "accident" as follows:

   $1,000,000 Uninsured Motorists
   $INCLUDED Underinsured Motorists_____This limit of insurance is for each "accident" and is the most we will pay form [sic] all damages resulting from any one "accident" or "loss" regardless of the number of directors, officers, partners, owners or family members involved unless otherwise stated in the Uninsured and Underinsured Motorists Coverage attached to this policy.

2. For any other persons qualifying as "insureds" under the WHO IS AN INSURED provision of the applicable coverage, the limit shown below shall apply per "accident". If no limit is shown below, no coverage is afforded to any other person.

   _____This limit of insurance is for each "accident" and is the most we will pay for all damages resulting from any one "accident" or "loss" regardless of the number of other persons involved unless otherwise stated in the Uninsured and Underinsured Motorists Coverage attached to this policy.
   [Powers Declaration, Exhibit A, Bates No. FEDPOL0046].

As indicated in paragraph 1 above, a $1,000,000 limit is provided for UM/UIM coverage for "all directors, officers, partners or owners of the named insured and their 'family

members' who qualify as 'insureds'."[1]  As indicated in paragraph 2 above, "if no limit is shown below, no coverage is afforded to any other person." No limit is shown in the blank. Thus, any person other than directors, officers, partners, owners, or their family members is not covered for the purposes of the UM/UIM insurance provided by the Policy.

It is undisputed Mr. Smith was not an officer, director, partner or owner of FADCO.  Nor was he a family member of any such person.  Under the plain terms of form CA-F-93, the Policy provides no UM/UIM coverage to him.

**2.    FADCO elected to purchase optional UM/UIM coverage only for its directors, officers, owners and their family members who qualify as insureds, and not to purchase coverage for any other person.**

Form CA-F-93 specifies the UM/UIM coverage provided by the policy exactly in accordance with Named Insured FADCO's decision as to what coverage it desired to purchase and what coverage it desired not to purchase. FADCO expressed its desire when it executed, in writing, two specific forms relating to Oklahoma UM/UIM coverage.  In particular, it executed Forms F80-104 PT. 2 (04-05) and F80-104 PT. 1 (04-05).

In F80-104 PT. 2, Federated offered UM/UIM coverage for all persons qualifying as insureds in an amount up to the policy's bodily injury liability limit. FADCO completed this form, showing that it rejected coverage for all insureds. [Ex. "C" to Powers Declaration].  In F80-104 PT.1, Federated also offered the option of purchasing one amount of UM/UIM coverage for directors, officers, etc., while either purchasing a different limit or rejecting coverage altogether for any other person qualifying as an insured. [Ex. D. to Powers Declaration]. FADCO completed this form, selecting

---

[1] The Policy's UM/UIM coverage endorsement contains a "Who Is An Insured" provision identifying who may qualify as an "insured". It states in relevant part that if the Named insured is a corporation (as FADCO is here), then "insured" means: "Anyone 'occupying' or using a covered 'auto' * * *." [Ex. A. to Powers Declaration, Bates No. FEDPOL0041] Thus, for a director, officer, owner, family member, or any other person to qualify as an insured for UM/UIM coverage, the person must be occupying a covered auto, which is an auto owned by FADCO.

A-0054

UM/UIM coverage with a limit of $1,000,000 for its officers, directors, owners, and their family members who qualify as insureds under the Policy's UM/UIM endorsement.  For anyone else who qualifies as an insured (i.e, any other occupant of a covered auto who is not an officer, director, owner etc.), FADCO checked the box rejecting UM/UIM coverage entirely for that group. [Id.] Thus, FADCO opted not to purchase UM/UIM coverage for persons such as Mr. Smith.

Courts in other jurisdictions have held that an identical Option Form rejecting coverage for "any other person who qualifies as an insured" is valid, enforceable, and precludes UM/UIM coverage for persons who are not officers, directors, owners, etc. of the corporate named insured.  For example, and as acknowledged in plaintiff's motion, the Supreme Court of Delaware so held in Stoms v. Federated Service Ins. Co., 125 A.3d 1102 (Del. 2015).  In Stoms, plaintiff's decedent, David Stoms, was killed in an auto accident that happened while he was operating a vehicle owned by his employer, Diamond Motor Sports. Id. at 1103. The other vehicle involved in the accident was uninsured. Mr. Stoms' estate sought UM coverage under a commercial auto policy issued by Federated to Diamond.  As here, the named insured had completed a UM/UIM Option Form, choosing to purchase UM/UIM coverage only for its directors, officers, partners, owners and their family members who qualified as insureds. Diamond chose not to purchase UM/UIM coverage for "any other person who qualifies as an insured." Id. at 1104.  The Delaware Supreme Court concluded that the applicable language was not ambiguous and the uninsured motorist coverage did not apply because decedent was not an officer or director of the corporate named insured. Id. at 1107–08.

The same conclusion has been reached in numerous other jurisdictions. Jones v. Federated Mut. Ins. Co., 816 S.E.2d 105 (Ga. App. 2018) (holding that rejection of UIM coverage for certain persons who qualified as insureds, while purchasing $1,000,000 of coverage for directors, officers, partners, or owners and family members, was valid and enforceable); Federated Mut. Ins. Co. v. Vaughn, 961 So.2d 816 (Ala. 2007) (holding that

employer could reject UM coverage for insured employees while accepting it for directors, officers, partners, owners and their family members); Hlasnick v. Federated Mut. Ins. Co., 539 S.E.2d 274 (N.C. 2000) (holding that multi-tier UIM coverage providing higher limit for directors, officers, partners, owners than for other insureds was valid and enforceable); Crouch v. Federated Mut. Ins. Co., 571 S.E.2d 574 (Ga.App. 2002) (policy that split UM coverage into categories for family members of dealership's officers, directors, partners, or owners on the one hand and for all other persons qualifying as insureds on the other was valid and enforceable); Jarrell v. Viking Insurance Company of Wisconsin, 2017 WL 1154025 (D. Colo. 2017) (holding that, where named insured purchased UM/UIM coverage only for directors, officers, owners and family members who qualified as an insured, and rejected it for other persons qualifying as insured, employee who was not an officer or director was not entitled to UM/UIM coverage); Rarick v. Federated Service Ins. Co., 325 F.Supp.3d 590 (E.D. Pa. 2018) (holding that two-tier system of UM coverage for named insured's directors, officers, partners, owners and their family members, but not for other employees, was valid); *see also* Worley v. Fender, 79 N.E.3d 173 (Ill. App. 5th Dist. 2017) (holding that step-down limit for UM coverage was valid); Wiley v. Universal Underwriters Ins. Co., 2017 WL 495794 (E.D. Pa. 2017) (policy under which named insured had rejected UIM coverage for employees, but purchased coverage for two specific individuals, was valid).

The same conclusion applies here. Mr. Smith was not an officer, director, or owner of the corporate named insured, FADCO. And FADCO expressly rejected UM/UIM coverage for persons such as Mr. Smith. Thus, the Policy provides no UM/UIM coverage to him.

### 3. Oklahoma law allows a Named Insured the option to purchase UM/UIM coverage for some insureds, and not others.

Plaintiff takes issue with FADCO's decision to purchase UM/UIM coverage only for insureds who are directors, officers, etc., while rejecting coverage for others.

Plaintiff's position appears to be that a named insured must select or reject coverage, and its decision must apply equally to all insureds. But plaintiff's position that Oklahoma law mandates an "all or nothing" approach is contrary to Oklahoma UM/UIM statutes.

Oklahoma statutes only require that an automobile liability insurer offer UM/UIM coverage to the named insured up to the limit of the policy's bodily injury liability coverage, and that the named insured select whatever coverage it opts for in writing. Oklahoma law does not mandate any UM/UIM coverage, but instead gives the named insured the right to determine what coverage *it wants to purchase* and what coverage *it does not want to purchase*. *See* 36 Okla. Stat. § 3636. The named insured has the right to decide whether it desires to pay the premium for UM/UIM coverage equal to liability limits, whether it wants to completely reject such coverage and pay no premium, or whether it wants to opt for a middle ground under which some UM/UIM coverage is purchased and some is not. All of this is reflected in the plain language of § 3636 (G).

Section 3636 (G) states that a "named insured or applicant shall have ***the right*** to reject uninsured motorist coverage in writing." It further states that, "[a]fter selection of limits, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured," the insurer is no longer required to notify the insured of its options at subsequent policy renewals. Section 3636(G) also makes clear that the named insured's decision is binding on all other insureds:

> Such selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds under the policy and shall continue until a named insured requests in writing that the uninsured motors coverage be added to an existing or future policy of insurance.

The foregoing statutory language draws a distinction among "***selection***", "***rejection***", or "***exercise of the option not to purchase***" coverage. Obviously, under the last item, the statute grants the named insured the "option" of what coverage not to purchase. Under this language, the named insured has the option not to purchase UM/UIM coverage for some insureds, while electing to purchase it for others. This makes sense because

UM/UIM coverage is not mandatory.  It is purely optional.  By definition, if the insured has the option not to purchase something, that means it also has the option to purchase something.  Thus, the named insured can decide what it wants to pay for, and what it does not want to pay for.

The most fundamental rule of statutory construction requires that a court give effect and meaning to each provision of a statute, and avoid a construction that renders words meaningless.  Estes v. ConocoPhillips Co., 184 P.3d 518, 525 (Okla. 2008) (court must give statute a construction "which renders every word operative, rather than one which makes some words idle and meaningless"). The foregoing statute states that a named insured can make a "selection, rejection, *or exercise the option not to purchase uninsured motorist coverage."*  The court is obligated to give meaning to the "option not to purchase" phrase. Such phrase cannot mean the same thing as "rejection"; otherwise, the phrase has no meaning. The phrase "option not to purchase" necessarily means that the named insured is not limited to either "selecting" coverage for all insureds or "rejecting" coverage for all insureds. Instead, the statute grants the named insured the right to select UM/UIM coverage for some insureds, but also the "option not to purchase" UM/UIM coverage for others.

Thus, plaintiff's position that the named insured has only two choices – the "selection" or the "rejection" of coverage for *all* insureds – is contrary to the statutory language that plainly gives the named insured another "option". The statute allows the named insured to reject all coverage for all insureds. But it also allows the named insured to select UM/UIM coverage for some insureds, while opting not to purchase it for others. Plaintiff's "all or nothing" interpretation of § 3636 renders the statutory language "exercise of the option not to purchase" meaningless.  Moreover, there is no provision in the statute mandating the same selection of coverage for all insureds.  *See* Jones, 816 S.E.2d at 109 (rejecting argument that policy had to provide same UM/UIM coverage for all insureds, and noting that the Georgia statute had no language "imposing an 'all or

nothing' restriction upon uninsured motorist coverage"); Rarick, 325 F.Supp.3d at 602 (nothing in Pennsylvania's statute "suggests that a waiver of UM/UIM must be an 'all-or-nothing' waiver").

Federated gave FADCO exactly the options that the Oklahoma statute contemplates. FADCO was free to select coverage for all insureds up to the policy's bodily injury liability limits, free to reject all coverage, or free to opt for a middle ground. FADCO opted for a middle ground, electing to purchase $1,000,000 of UM/UIM coverage for its officers, directors, owners, etc., who qualify as an insured. It also exercised the "option not to purchase uninsured motorist coverage" for any other person who qualifies as an insured. This comported with Oklahoma law.[2]

### 4. The "valid for all insureds" statutory language does not mean that the named insured must purchase the same coverage for all insureds.

In her motion for partial summary judgment, plaintiff attempts to seize on the "valid for all insureds" language in §3636(G), suggesting that this language shows that Oklahoma law prohibits an Oklahoma policyholder from purchasing different coverage for different insureds under its policy. Under plaintiff's argument, the statute mandates that a selection or rejection of coverage must *apply* to all insureds. But that is not what the statute says. Plaintiff's argument is taking the words "valid for all insureds" out of context, and attempting to assign a meaning to them that is inconsistent with what the entire provision says. When those words are put back into context and read with the rest

---

[2] FADCO's decision as to what coverage to purchase and what not to purchase is set forth in the Policy in endorsement Form CA-F-93.  As discussed above, that endorsement identifies one limit of UM/UIM coverage for directors, officers, etc., who qualify as an insured, and separately identifies the limit for any other person who qualifies as an insured.  It further states, however, that if no limit is shown for the latter group (the "any other person" group), then no UM/UIM coverage is provided to that group.  Prior to using that form, Federated submitted it to, and obtained approval of use from, the Oklahoma Department of Insurance, as required by Oklahoma law, 36 O.S. § 3610. [Powers Declaration, ¶ 11].  Obviously, Oklahoma insurance regulators found no issues with a form that grants a policyholder the right to select UM/UIM coverage to certain insureds, while rejecting the purchase of coverage to another group of insureds.

of the statutory language, it is clear Oklahoma law does not mandate the same UM/UIM coverage for all insureds.

As already quoted above, the statutory provision where those words are found reads as follows: "[s]uch selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds under the policy." When read in its entirety, this statute simply means what it says – that the named insured's decisions (whatever they might be – selection, rejection, or exercise of the option not to purchase) are "valid" for all insureds. It does not say that it must make the same decision for all insureds. Moreover, as explained in detail above, the statute expressly gives the named insured multiple options. The statute has no language stating that the named insured must purchase coverage for all insureds or reject coverage for all insureds. It has no language stating that a "selection", "rejection", or "exercise of the option not to purchase" must *apply* to all insureds. Rather, it says the named insured's decisions are "*valid*" for all insureds. The obvious meaning of "valid for all insureds" is that only the named insured has the right to decide what coverage to purchase, and its decision binds all insureds.

This makes sense for two reasons. First, the named insured is the one paying the premium. Because UM/UIM coverage is not mandatory, the named insured is entitled to decide what premium payment it is willing to make in exchange for the purchase of purely optional coverage. Other persons who happen to be occupants of the named insured's vehicles have no right to decide how the named insured should spend its money.  More to the point, they have no right to decide what *non-mandatory* coverage the named insured should purchase. Second, it is not feasible to obtain a signed form from every person who might occupy a vehicle owned by the named insured. This is particularly true with respect to commercial auto policies issued to Oklahoma businesses. Using the FADCO policy as an example, its commercial policy insures numerous vehicles and permissive users. It would be entirely unworkable to expect every potential

insured occupant of FADCO's vehicles, present and future, to be presented with and execute a UM/UIM rejection or selection form. That is precisely why the statute authorizes the named insured to make the election, and have it "valid for all insureds."

Section 3636(G)'s "valid for all insureds" language does not mean that all insureds under a policy must be treated identically. It merely confirms that the named insured on a policy, such as FADCO, can make the selection that binds (i.e., is "*valid for*") all insureds. The named insured is the one paying the premium and when it comes to non-mandatory coverage – as UM/UIM coverage is in Oklahoma – it can decide what coverage to purchase and what coverage not to purchase.

### 5. There is no Oklahoma public policy expressed in any statute that mandates the same UM/UIM coverage for all insureds.

The Oklahoma legislature has enacted a statute that governs UM/UIM coverage, and has modified it numerous times over the years.  That statute represents the sole source of Oklahoma public policy governing UM/UIM coverage.  *See* <u>Siloam Springs Hotel, LLC v. Century Surety Co.</u>, 392 P.3d 262 (Okla. 2017) (noting that the Oklahoma legislature, rather than the court, is primarily vested with responsibility for declaring the public policy of the state).  Because the Oklahoma legislature has chosen not to mandate UM/UIM coverage, there is obviously no Oklahoma public policy that UM/UIM coverage apply to all insureds. Rather, in making UM/UIM coverage purely optional, the unequivocal public policy expressed by Oklahoma's legislature is one favoring policyholder choice.  The public policy adopted by the Oklahoma legislature is one allowing the named insured to determine what coverage it wants to purchase, and what coverage it does not want to purchase.  There is simply no public policy expressed in the statute that imposes an "all or nothing" requirement.

Here, policyholder FACDO exercised the choice given by Oklahoma's legislature to decide what purely optional UM/UIM coverage it wanted to purchase, and what it did not want to purchase.  In compliance with 36 O.S. § 3636, FADCO executed a rejection

form indicating its decision to reject UM/UIM coverage for all insureds.  But it also decided to exercise the right to buy such optional coverage for its directors, officers, owners, and their family members who qualified as insureds.  To accept plaintiff's argument that FACDO should be barred from purchasing optional coverage for some insureds while rejecting it for others would contravene Oklahoma statutorily-expressed public policy, which favors policyholder choice.

The only other public policy that might be gleaned from a statute like Oklahoma's, which merely requires an offer of coverage, is a public policy that encourages the purchase of such coverage. This public policy of encouraging the purchase of UM/UIM coverage would also not be served by the "all or nothing" position urged by plaintiff, whereby a named insured is compelled to either purchase coverage for all insureds or reject coverage for all insureds. This is particularly true in the context of commercial policies issued to businesses.

If corporate named insureds are required to purchase UM/UIM coverage, if at all, only for every person occupying every owned auto, they will have to do so at a dramatically higher premium. As a result, many named insureds would choose not to purchase any coverage, thus frustrating a public policy that encourages the purchase of optional coverage. The policy issued to FADCO provides a perfect example.  FADCO's purchase of $1,000,000 of UM/UIM coverage only for its directors, officers, etc., who qualify as an insured was at a premium of only $230. But if FADCO had also purchased $1,000,000 of UM/UIM coverage for any other person qualifying as an insured, the premium charged would have increased by about 500% to $1,150. [Powers Declaration, Ex. 1, ¶¶ 8 & 13]. Such dramatically higher premiums would discourage corporations from purchasing any UM/UIM coverage at all, if forced to choose between coverage for all insureds or no insureds.  See Jarrell v. Viking Insurance Company of Wisconsin, 2017 WL 1154025 (D. Colo. 2017) (noting that the Colorado UM statute does not mandate an all-or-nothing approach to obtaining or rejecting UM/UIM coverage, and further noting

that holding otherwise would discourage rather than encourage the purchase of such coverage); see also, BP America, Inc. v. State Auto Property & Cas. Ins. Co., 148 P.3d 832, 835-36 (Okla. 2005) (holding that, "payment of premiums is a crucial factor in determining whether a specific coverage is available to the insured."). Ironically, this would result in less Oklahomans with UM/UIM coverage, not more.

The validity of the named insured's rejection of UM/UIM coverage "as to any other person who qualifies as an insured" was specifically and thoroughly addressed under a similar statutory scheme in the Stoms case. The plaintiff in Stoms had argued the policy was "void as a matter of Delaware public policy because it excludes a class of drivers from its uninsured motorists coverage." Stoms, 125 A.3d at 1104. The trial court rejected that argument, holding that "an employer may purchase such coverage for some employees and reject it for others because 18 Del. C. § 3902 **expressly allows an insured to reject uninsured motorists coverage.**" Id. (emphasis supplied). The Delaware Supreme Court agreed with the trial court, reasoning as follows:

> Mrs. Stoms * * * argues that "insurance provisions designed to reduce or limit the coverage to less that that prescribed by statute are void." But the Uninsured Motorists Provision does not provide less than the minimum coverage statutorily required. Section 3902 of Title 18 allows an insured to reject uninsured motorists coverage "when rejected in writing, on a form furnished by the insurer." The Policy shows that Price [Diamond's President] did exactly this when obtaining insurance on Diamond Motor's behalf. Specifically, he expressly rejected uninsured motorists coverage for drivers other than "directors, officers, partners or owners" on a form provided by Federated Insurance.
>
> Second, Mrs. Stoms asserts that the Uninsured Motorists Provision violates public policy because it applies different levels of uninsured motorists coverage to different drivers. But that argument has no foundation in the governing statutes, which must be the source of public policy in this realm that is highly regulated by the Code. Once an insured has purchased the statutory minimum, the insured is free as a matter of contract to procure as much or little optional insurance as it wants, and to allocate it among drivers as it chooses. Price bought optional coverage as a perquisite for some of his employees at Diamond Motor, and the coverage he purchased

for the others, including [decedent] still satisfied the statutory minimum. There is nothing improper under Delaware's insurance statutes about an employer providing higher optional limits of insurance to certain of its managers than to others.  To hold that any coverage above the statutory minimum – such as uninsured motorists coverage, for which no level of coverage is statutorily mandated – has to be afforded to all who benefit from the policy would dissuade employers from buying anything above the statutory minimum.

Id. at 1106-07 (internal citations omitted) (footnote omitted).

The same conclusion is required under Oklahoma law. Like Delaware, Oklahoma permits a named insured to reject UM/UIM coverage. No minimum mandatory UM/UIM coverage is imposed under Oklahoma statutes. Oklahoma lawmakers decided to allow the named insured to make its own decision on whether to purchase UM/UIM coverage. Because FADCO was permitted to reject UM/UIM coverage, its decision to do so for any person other than its officers, directors, and owners does not violate Oklahoma law or public policy.  See also Jones, 816 S.E.2d at 110-11 (rejecting public policy challenge to split UM/UIM coverage for different insureds); Vaughn, 961 So.2d at 819-20 (rejecting public-policy argument); Hlasnick, 539 S.E.2d at 277 (rejecting public policy argument, because statute did not mandate that UIM coverage be equivalent for all persons insured under the policy); Rarick, 325 F.Supp.3d at 601-03 (rejecting public policy challenge to different levels of UM/UIM coverage).

In contrast to the foregoing weight of authority, plaintiff relies on two decisions, Varro v. Federated Mutual Ins. Co., 854 So.2d 726 (Fla. Dist. Ct. App. 2003) and Balagtas v. Bishop, 910 N.E.2d 789 (Ind. Ct. App. 2009).  But plaintiff's reliance on those decisions is misplaced because they involved different statutory language.   In Varro, the statute at issue specifically stated, "the coverage required under this section is not applicable when, or to the extent that, an insured named in the policy makes a written rejection of the coverage on behalf of all insureds under the policy." Fl. Stat. § 627.727 (1) (1999). Based on this language, the Court ruled that a written rejection must be made for "all" insureds in order to be effective. See Varro, 854 So.2d at 728-729. This language

is notably absent in Oklahoma's statute. The Oklahoma statute merely states that the selection, rejection, or option not to purchase coverage is "valid for all insureds" - meaning the named insured's decision binds all insureds. See also, Germany v. Darby, 157 So.3d 521, 523 (Fla. Dist. Ct. App. 2015) (distinguishing Varro and upholding the validity of a split limit policy where a lower limit of coverage was selected for others).

Turning to the Balagtas decision, the Indiana Court of Appeals was charged with interpreting Indiana's UM statute. That statute is also materially different from Oklahoma's statute.  The Indiana statute has language stating that "any named insured * * * has the right, on behalf of all other named insureds and all other insureds, in writing, to:  (1) reject both the uninsured motorist coverage and the underinsured motorist coverage provided for in this section; or (2) reject either the uninsured motorist coverage alone or the underinsured motorist coverage alone * * *."  The Balagtas court interpreted this language to mandate that the rejection be on behalf of all named insureds and all other insureds, such that a rejection could not be on behalf of some insureds and not others.  Again, Oklahoma's statute in materially different, because it expressly grants the named insured multiple options, and says that its election of those options is "valid for all insureds."  Thus, the decision in that case provides no support of plaintiff's arguments under Oklahoma's statute.  See Stoms v. Federated Service Ins. Co., 2014 WL 6673848 *8 (Super.Ct.Del. 2014) (distinguishing Balagtas based in Indiana's different statutory language).

Plaintiff attempts throughout her motion to characterize FADCO's rejection of UM coverage for Mr. Smith as an "exclusion" to coverage that is impermissible in Oklahoma and akin to a "Catch 22 provision." [Docket #13, Page 9, ¶1]. FADCO's decision to reject UM coverage for insureds like Mr. Smith does not operate as an "exclusion." An exclusion assumes that coverage exists in the first place. Here, such coverage was specifically rejected by the named insured, who then opted to purchase

optional coverage for directors, officers, partners and owners. There simply is no "Catch 22."

In the end, plaintiff's true objection is to FACDO having decided to purchase UM/UIM coverage for its officers, directors, owners and their family members. But Oklahoma law and public policy simply does not bar a named insured from purchasing UM/UIM coverage for certain insureds, while exercising its option not to purchase coverage for others. If plaintiff's arguments were sustained, the only permissible remedy would be to invalidate FADCO's selected purchase of coverage for certain insureds (i.e., directors, officers, etc.), not to afford coverage to other parties such as plaintiff, for whom FADCO intended to, and did, reject such coverage and for which FADCO paid no premium.

> **B.     Arguing solely in the alternative, if FADCO's rejection of UM/UIM coverage were deemed invalid, only the statutory minimum limits are imputed into Federated's Policy.**

Plaintiff admits that FADCO's policy, on its face, does not extend UM/UIM coverage for Mr. Smith. Instead, she contends that FADCO's rejection of UM/UIM coverage for Mr. Smith, and election of coverage for a different class of insureds, is invalid under Oklahoma law, and therefore that such coverage must be imputed into FADCO's policy. In the event that plaintiff is successful in such argument, FADCO's policy will not extend $1,000,000 in UM coverage for Mr. Smith. Rather, only minimum coverage limits would apply.

The Oklahoma Supreme Court addressed precisely this issue in <u>Boerstler v. Hoover</u>, 943 P.2d 614 (Okla. 1997). In that case, the Court, citing to its own prior precedent, ruled that when UM/UIM coverage is imputed into a policy for failure to comply with 36 O.S. § 3636, the public policy is met by only imputing the statutory minimum limits. As the Court noted:

> We have previously addressed this issue in <u>May v. National Union Fire Insurance Co.</u>, 918 P.2d 43 (Okla. 1996) where we held:

[T]he legislative intent underlying § 3636 is that every automobile liability policy issued in this state have a statutory minimum of uninsured motorists coverage unless that minimum amount is rejected in writing. That objective was not altered by the 1990 amendments to the statute. Where an insurer fails to offer in writing or obtain a written rejection of UM coverage such that UM coverage is imputed to an insured's policy as a matter of law, we hold that the mandate of § 3636 is satisfied by imputation of the minimum limits of UM coverage required by statute. To impute a higher amount of UM coverage would go beyond the mandate of § 3636. *Id.* at 616 (*quoting May* at 48).

In light of the foregoing, in the event that the Court agrees with Plaintiff that FADCO's rejection of UM coverage for insureds such as Mr. Smith was in violation of § 3636, the maximum amount of UM coverage for other insureds that would be imputed into Federated's policy is $25,000 per person and $50,000 per occurrence.

### C.   Plaintiff has not established that the FADCO vehicle was an "uninsured  motor vehicle" as that term is defined in the Policy.

A claim for UM/UIM coverage is a *contractual* claim, and therefore the terms of the contract determine the parties' rights and obligations. The UM/UIM coverage is provided on endorsement form CA 31 43 11 15. In relevant part, the endorsement states that it will pay in accordance with Tittle 36, Oklahoma Statutes, all sums the insured is legally entitled to recover from the driver of an "uninsured motor vehicle". [Ex. "A" to Powers Declaration, Bates No. FEDPOL0041]. It further states the driver's liability must "result" from the use of the "uninsured motor vehicle." [Id.] The policy defines "uninsured motor vehicle" as a land motor vehicle "for which no liability bond or policy at the time of the 'accident' provides at least the amounts required by applicable law". [Id. at FEDPOL0044]. It also defines the term to include "an underinsured motor vehicle", which is a vehicle "for which there is a liability bond or policy at the time of the accident, the liability limits of which are less than the amount of the claim of the person or persons making such claim." [Id.] These definitions are in conformity with 36 O.S. § 3636 (C).

Plaintiff has not demonstrated the FADCO vehicle was an "uninsured motor vehicle" as defined in the policy. The driver in this case, Mr. Clark, has at least $7,000,000 of liability coverage available to him.  In particular, the Policy extends liability coverage for, "all sums an 'insured' legally must pay as damages because of 'bodily injury' * * * to which this insurance applies, caused by an 'accident' and resulting from the ownership, maintenance or use of a covered auto."  [Id. at FEDPOL0025]. The Policy's applicable liability coverage form defines "insured" for liability coverage to include FADCO and, "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow * * *."  [Id. at FEDPOL0025].  At the time of the accident, Mr. Clark was using the FADCO vehicle with its permission, and therefore qualified as an insured for liability coverage. He likewise qualified as an insured for the excess coverage provided by the Umbrella Policy.[3] Although it is true exclusion 5 of the Business Auto Coverage form excludes coverage for bodily injury to "Fellow Employee[s]," an endorsement specifically deletes this exclusion. [Id. at FEDPOL0065].

In short, Mr. Clark is not an "uninsured motorist" and the accident vehicle is not an "uninsured motor vehicle" as defined in the Policy.  To the contrary, Mr. Clark and the vehicle are covered by policies extending $7,000,000 of liability coverage.  As noted, the term "uninsured motor vehicle" is also defined to include an underinsured motor vehicle, which is one for which the liability limits are exceeded by the claimed damages.  Plaintiff has not demonstrated that her damages exceed $7,000,000, and therefore has not shown that the FADCO vehicle was an underinsured motor vehicle.

---

[3] The Umbrella Policy's "Who Is An Insured" provision states that the term "insured" is generally determined by who qualifies as an insured under the "underlying insurance". With respect to use of an automobile, the Umbrella Policy includes "employees" of the Named Insured, but only while in the course of employment.  [Ex. B to Powers Declaration, Bates No. FEDPOL0104].  Because Mr. Clark is an insured under the Policy (i.e., the "underlying insurance") and because he was within the course of employment at the time of the accident, he is likewise an insured for the excess liability coverage provided by the Umbrella Policy.  Thus, under that policy, he has an additional $6,000,000 of liability coverage.

Plaintiff's motion spends a great deal of time discussing Oklahoma precedent where certain courts have allowed the pursuit of UM coverage where a co-employee is injured and the worker's compensation exclusive remedy provision bars suit. But this discussion and argument misses the mark. These decisions, including Barfield v. Barfield, 742 P.2d 1107 (Okla. 1987), and Torres v. Kansas Fire and Marine Inc. Co., 849 P.2d 407 (Okla. 1993), did not address the issue as to whether the accident vehicle in those cases was an "uninsured motor vehicle". In all likelihood, the auto liability policies covering the vehicles in those cases were commercial auto policies. Standard commercial policies typically include a "fellow employee" exclusion, which would have applied in those cases, thus rendering the vehicle "uninsured". (As noted above, Federated's policy, in contrast, deletes that standard exclusion.) Based upon the complete absence of any discussion as to whether the accident vehicle was an "uninsured motor vehicle", presumably there was no dispute that, in fact, that accident vehicle was such a vehicle. The sole issue addressed in those cases was whether the injured party was still "legally entitled to recover" against the co-employee for the purpose of pursuing UM coverage, notwithstanding the worker's compensation exclusivity bar.

In short, if the court were to invalidate FADCO's rejection of UM/UIM coverage for persons such as Mr. Smith, and impute such coverage into the policy, plaintiff would still have to establish that the FADCO vehicle was an "uninsured motor vehicle" within the meaning of the policy. Given that the vehicle and its driver, Mr. Clark, had $7,000,000 of liability coverage, plaintiff must prove that Mr. Clark's liability exceeds that sum in order to show the vehicle is an "underinsured motor vehicle." Plaintiff has not presented any evidence to meet that burden and is therefore not entitled to summary judgment on her claim.

**D.     Plaintiff's bad faith claim fails as a matter of law.**

The Oklahoma courts have repeatedly held that an insurer does not breach the implied duty to deal fairly and in good faith with their insured, "simply by denying a

claim." <u>Pearson v. St. Paul Fire and Marine Insurance Company</u>, 393 F.Supp.2d 1238, 1240 (W.D. OK 2005).  Conversely, "a plaintiff must demonstrate that no legitimate dispute exists regarding coverage and the insurer did not have a reasonable good faith belief for withholding payment." *Id*. (citing <u>Timberlake Constr. Co. v. U.S. Fid. and Guar. Co</u>., 71 F.3d 335, 343 (10th Cir. 1995) ("'The essence of the tort of bad faith, as it is recognized in Oklahoma, is the unreasonableness of the insurer's actions'") (quoting <u>Conti v. Republic Underwriters, Ins. Co</u>., 782 P.2d 1357, 1360 (Okla. 1989)). See also <u>Oulds v. Principal Mut. Life Ins. Co</u>., 6 F.3d 1431, 1436 (10th Cir. 1993).

Here, obviously, if Federated prevails on its coverage position, there can be no viable claim for bad faith. However, even if the Court rules against Federated with respect to the coverage dispute, no evidence exists that it acted unreasonably or in bad faith in relying on its named insured's intent to reject UM/UIM coverage for insureds like Mr. Smith (and others). Moreover, Federated reasonably relied upon its submission of form CA-F-93 to the Oklahoma Insurance Department and its approval of Federated's use of that form. That form clearly states that one limit may be provided to directors, officers, etc. and a different limit or no coverage at all may apply to any other person qualifying as an insured.  Having regulatory authorization to use such form in Oklahoma demonstrates that, as a matter of law, Federated has not taken a coverage position without a reasonable basis and in bad faith.  Consequently, the bad faith claim must be dismissed.

## V.   **Conclusion**

For all of the foregoing reasons, Federated asks the court to enter a judgment dismissing plaintiff's claims, and declaring that Federated has no obligation to provide UM/UIM coverage to them in connection with the Accident.

Dated this 22nd day of September, 2020

A-0070

Respectfully submitted,

/s/Eric A. Moen
Bart J. Robey, OBA No. 19926
Eric A. Moen, OBA No. 31155
Chubbuck Duncan & Robey, P.C.
1329 N. Classen Drive
Oklahoma City, Oklahoma 73103
Phone: 405-236-8282
Fax: 405-236-2828
bjrobey@chubbucklaw.com
eamoen@chubbucklaw.com
*Attorneys for Defendant and Counterclaimant*
*Federated Mutual Insurance Company*

A-0071

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of September 2020, I electronically transmitted the attached documents to the court clerk's office using the CM/ECF system for filing and thereby transmitted a notice of electronic filing to the following CM/ECF registrants:

Chad McLain
Dan Graves
Rachel Gusman
4137 S. Harvard Ave., Suite F
Tulsa, OK  74135
Telephone:  (918) 359-6600
Facsimile: (918) 359-6605

Rex Travis
Margaret Travis
Casey Lawson
info@travislawoffice.com
P.O. Box 1336
Oklahoma City, OK  73101-1336
Telephone:  (405) 236-5400
Facsimile:  (405) 236-5499

*Attorneys for Plaintiff and Counter Defendant*

I hereby certify that on 22nd day of September, 2020 I served the attached document by mail to the following:

The Hon.Timothy DeGiusti
United States District Court
Western District of Oklahoma

By: /s/Eric A. Moen

13708244.1

1

2

3

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

4

5

6

7

8

9

10

11

NANCY ANAYA-SMITH, next of kin of
MICHAEL BRIAN SMITH, deceased,

        Plaintiff,

vs.

FEDERATED MUTUAL INSURANCE
COMPANY,

        Defendants.

Case No. CIV-20-565-D

**DECLARATION OF DANIEL**
**POWERS**

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

I, Daniel Powers, declare under penalty of perjury as follows:

1. From August 1998 to the present I have continuously held the position of Property and Casualty Insurance Product Analyst ("P&C Product Analyst") for Federated Mutual Insurance Company, ("Federated").

2. I have personal knowledge concerning the facts set forth herein and I am authorized by Federated to execute this Declaration on behalf of the company.

3. In my capacity as a P&C Product Analyst it is my responsibility to develop and implement coverage and endorsement language, underwriting policies, and procedures. I review, evaluate and recommend premium rate modifications to correspond with the type and level of risk undertaken by the company. My duties include establishment and ongoing analysis of rates for Oklahoma Uninsured and Underinsured Motorist coverage.

4. Federated issued a Commercial Package Policy, identified as policy number 9840992 ("the Policy") to Fixtures and Drywall Company of Oklahoma Inc. ("FADCO") as Named Insured on or about March 1, 2018. Thereafter

Exhibit 1

Federated issued consecutive renewal policies, so that FADCO has been insured under that Policy number from that date through to the present.  Attached as **Exhibit A** is a certified copy of the Business Auto Coverage Part of policy number 9840992 for the policy period 03/01/2020 to 03/01/2021.  Federated also issued Commercial Umbrella Policy, number 9840993, to FADCO for the policy period 03/01/2020 to 03/01/2021 (the "Umbrella Policy").  Attached as **Exhibit B** is a certified copy of policy number 9840993 for the policy period 03/01/2020 to 03/01/2021.

5. I have reviewed the Policy and the Umbrella Policy and I am familiar with their terms.

6. The Policy was in effect on March 24, 2020, which I have been advised is the undisputed date of loss in the above captioned case.

7. Attached as **Exhibit C** is a true and correct copy of the Oklahoma Uninsured Motorists Coverage Law Form, identified as form F80-104 PT.2 (OK) (04-05) (the "OK UM/UIM rejection form"), which was signed by Stephanie Geddings on behalf of FADCO.  Under this form, Federated offered to provide UM/UIM coverage to FADCO in amounts equal to the $1,000,000 bodily injury liability limit of the Policy, or to purchase a lesser amount, or to rejected such coverage entirely for persons who would qualify as an insured.  Pursuant to this form, the Named Insured FADCO rejected all Uninsured Motorists coverage under the Policy.

8. Attached as **Exhibit D** is a true and correct copy of the Oklahoma Commercial Auto Coverage Option Form, identified as form F80-104 PT.1 (OK-CA) (04-05) (the "OK UM/UIM selection form"), which was signed by Stephanie Geddings on behalf of FADCO.  Under this form, Federated also offered FADCO the option of purchasing UM/UIM coverage for its directors, officers, owners and

A-0074

their family members who qualify as an insured, while rejecting such coverage for any other person who qualifies as an insured.  Pursuant to this form, the Named Insured FADCO elected to purchase $1,000,000 of Uninsured and Underinsured Motorist coverage for its directors, officers, owners and their family members who qualify as insureds, while rejecting such coverage for any other person who qualifies as an insured.  The premium charged for this coverage was $230.

9. The OK UM/UIM selection form also expresses the Named Insured's intent to reject Federated's offer of Oklahoma Uninsured and Underinsured Motorist coverage for "any other person who qualified as an insured under the Policy."

10. If a Named Insured elects to purchase UM/UIM coverage for its directors, officers, owners and their family members who qualify as an insured, and either elects a different limit or rejects coverage entirely for any other person who qualifies as an insured, then Federated attaches Form CA-F-93 (10-13) to the policy.  That Form is entitled "UNINSURED AND UNDERINSURED MOTORISTS LIMIT OF INSURANCE."  Pursuant to the Named Insured's coverage elections, Form CA-F-93 sets forth the limit of insurance for UM/UIM coverage that is applicable to directors, officers, owners and their family members who qualify as an insured, and also sets forth the different limit applicable to any other person who qualifies as an insured.  In the event the Named Insured decided to reject coverage for any other person who qualifies as an insured, then Form CA-F-93 lists no limit for such persons and states:  "If no limit is shown below, no coverage is afforded to any other person."  *See* **Exhibit A**, Bates No. FEDPOL0046.

11. Federated Form CA-F-93 (10-13) was filed with, and approved for use by, the Oklahoma Insurance Department, prior to issuance of the Policy.

A-0075

12. If, in this case, FADCO had exercised one of the available options for the purchase of UM/UIM coverage for "any other person who qualifies as an insured," the premium charged by Federated would have increased by an amount commensurate with the increased risk of covering a broader class of insureds at the level of coverage selected.

13. For example, if the Named Insured had elected to purchase $1,000,000 in Oklahoma UM/UIM coverage for "any other person who qualified as an insured under the Policy," the premium would have increased to $1,150.

Daniel Powers

4

# EXHIBIT "A"

A-0077



**FEDERATED MUTUAL INSURANCE COMPANY**
121 East Park Square, Owatonna, MN 55060
(507) 455-5200

# COMMON POLICY DECLARATIONS
# COMMERCIAL PACKAGE POLICY

MUTUAL COMPANY PARTICIPATING NONASSESSABLE POLICY

Policy No. **9840992**

Account No. **376-020-4**

NAMED INSURED AND MAILING ADDRESS

**FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK   74115**

CERTIFIED TO BE A TRUE AND CORRECT
COPY OF A PORTION OF THE ORIGINAL POLICY

*Becky Lee*

RISK ADDRESS (if different than above):

POLICY PERIOD: from **03-01-2020**      to   **03-01-2021**      12:01 A.M. Standard time at the designated business premises.

BUSINESS OPERATIONS:
ENTITY TYPE: **Corporation**

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL TERMS OF THE POLICY, WE AGREE WITH YOU TO PROVIDE THE INSURANCE AS STATED IN THE POLICY.

THIS POLICY CONSISTS OF ONLY THOSE COVERAGE PARTS SHOWN BELOW. THE PREMIUM MAY BE SUBJECT TO ADJUSTMENT.

**COMMERCIAL PROPERTY COVERAGE PART**
**COMMERCIAL INLAND MARINE COVERAGE PART**
**COMMERCIAL GENERAL LIABILITY COVERAGE PART**
**COMMERCIAL CRIME COVERAGE PART**
**BUSINESS AUTO COVERAGE PART**

| | |
|---|---|
| **CERTIFIED ACTS OF TERRORISM PREMIUM:** | **$159** |
| **TOTAL PROVISIONAL PREMIUM** | **$79,017** |

FORMS APPLICABLE TO ALL COVERAGE PARTS:

| | |
|---|---|
| **IL-F-26 (07-95)** | **IL 02 36 (09-07)** |
| **IL 00 17 (11-98)** | |
| **IL-F-38 (02-15)** | |
| **IL 09 52 (01-15)** | |
| **IL 09 96 (01-07)** | |
| **CP-F-18 (01-86)** | |
| **IL 00 21 (09-08)** | |
| **IL 09 35 (07-02)** | |
| **IL-F-27 (08-94)** | |
| **IL-F-10 (07-95)** | |
| **IL 01 77 (10-10)** | |
| **IL 01 79 (10-02)** | |

MUTUALS - PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY: No Contingent Liability:
This policy is nonassessable.  The policyholder is a member of the Company and shall participate,  to the extent and upon the conditions  fixed and determined by the  Board  of  Directors in  accordance with  the provisions of law, in the distribution of dividends so fixed and determined.

MUTUAL - MEMBERSHIP AND VOTING NOTICE:
The insured is notified  that  by virtue of this policy,  he or she is a member of the  Federated  Mutual  Insurance Company of Owatonna, Minnesota, and is entitled to vote either in person or by proxy at any and all meetings of said Company.  The Annual Meetings are held in its Home Office in Owatonna,  Minnesota, on the third Tuesday of April in each year at ten o'clock A.M.

**In Witness Whereof,** the Company has caused this policy to be executed and attested.

**SECRETARY**          **PRESIDENT**

This Policy consists of: (1) this Declarations; (2) if attached hereto, the Schedule of Surcharges; (3) the Declarations and coverage forms for each Coverage Part indicated above as being part of this Policy; and (4) all forms and endorsements listed on any of those Declarations.

IL-F-1 (01-17)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020

A-0079

Insured Copy

## LOCATION SCHEDULE

| | | |
|---|---|---|
| 1 | 5531 E ADMIRAL PL | |
| | TULSA OK  74115-8411 | |
| 2 | 5510 E ARCHER ST | |
| | TULSA OK  74115-8417 | |
| 3 | 1021 N COLUMBIA PL | |
| | TULSA OK  74110-5026 | |
| 4 | 5534 E ADMIRAL PL | |
| | TULSA OK  74115-8411 | |

IL-F-26 (07-95)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020

A-0080

Insured Copy

IL 00 17 11 98

# COMMON POLICY CONDITIONS

All Coverage Parts included in this policy are subject to the following conditions.

**A. Cancellation**

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

   b. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of the cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

**B. Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**C. Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**D. Inspections And Surveys**

1. We have the right to:

   a. Make inspections and surveys at any time;

   b. Give you reports on the conditions we find; and

   c. Recommend changes.

2. We are not obligated to make any inspections, surveys, reports or recommendations and any such actions we do undertake relate only to insurability and the premiums to be charged. We do not make safety inspections. We do not undertake to perform the duty of any person or organization to provide for the health or safety of workers or the public. And we do not warrant that conditions:

   a. Are safe or healthful; or

   b. Comply with laws, regulations, codes or standards.

3. Paragraphs **1.** and **2.** of this condition apply not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations.

4. Paragraph **2.** of this condition does not apply to any inspections, surveys, reports or recommendations we may make relative to certification, under state or municipal statutes, ordinances or regulations, of boilers, pressure vessels or elevators.

**E. Premiums**

The first Named Insured shown in the Declarations:

1. Is responsible for the payment of all premiums; and

2. Will be the payee for any return premiums we pay.

**F. Transfer Of Your Rights And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual named insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

Copyright, Insurance Services Office, Inc., 1998

A-0081

**FEDERATED INSURANCE COMPANIES**

# TERRORISM RISK INSURANCE ACT

# POLICYHOLDER DISCLOSURE NOTICE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Where coverage is provided by this policy for losses resulting from certified acts of terrorism, such losses may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The portion of your annual premium that is attributable to coverage for certified acts of terrorism is shown in the Declarations Page of your policy.

The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

IL 09 52 01 15

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**A.  Cap on Certified Terrorism Losses**

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.**  The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.**  The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

**B.  Application Of Exclusions**

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss which would otherwise be excluded under this Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

    © Insurance Services Office, Inc., 2015    A-0098

Insured Copy

IL 09 96 01 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

BOILER AND MACHINERY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
EQUIPMENT BREAKDOWN PROTECTION COVERAGE FORM
FARM COVERAGE PART
STANDARD PROPERTY POLICY

**SCHEDULE**

The **Exception Covering Certain Fire Losses** (Paragraph **D.**) applies to property located in the following state(s), if covered under the indicated Coverage Form, Coverage Part or Policy:

| State(s) | Coverage Form, Coverage Part Or Policy |
|---|---|
| Any state in which there is a standard fire policy statute or regulation that does not contain an exception for terrorism. | The following Coverage Parts if included within this policy: 1) Commercial Property Coverage Part 2) Commercial Inland Marine Coverage Part - only for those states in which there is a standard fire policy statute or regulation applicable to inland marine insurance that does not contain an exception for terrorism. |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A. Applicability Of The Provisions Of This Endorsement**

1. The provisions of this endorsement become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   a. The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Form, Coverage Part or Policy; or

b. A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

   (1) Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

© ISO Properties, Inc., 2005



A-0084

(2) **Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or**

(3) **Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.**

2. **If the provisions of this endorsement become applicable, such provisions:**

   a. **Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to loss or damage from an incident(s) of terrorism (however defined) that occurs on or after the date when the provisions of this endorsement become applicable; and**

   b. **Remain in effect unless we notify you of changes in these provisions, in response to federal law.**

3. **If the provisions of the endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.**

B. The following definition is added and applies under this endorsement wherever the term terrorism is enclosed in quotation marks.

"Terrorism" means activities against persons, organizations or property of any nature:

1. That involve the following or preparation for the following:

   a. Use or threat of force or violence; or

   b. Commission or threat of a dangerous act; or

   c. Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

2. When one or both of the following applies:

   a. The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   b. It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

C. The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

2. Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

3. The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

4. Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

D. **Exception Covering Certain Fire Losses**

The following exception to the Exclusion Of Terrorism applies only if indicated and as indicated in the Schedule of this endorsement.

If "terrorism" results in fire, we will pay for the loss or damage caused by that fire, subject to all applicable policy provisions including the Limit of Insurance on the affected property. Such coverage for fire applies only to direct loss or damage by fire to Covered Property. Therefore, for example, the coverage does not apply to insurance provided under Business Income and/or Extra Expense coverage forms or endorsements that apply to those coverage forms, or to the Legal Liability Coverage Form or the Leasehold Interest Coverage Form.


A-0085

Insured Copy

**E.    Application Of Other Exclusions**

**1.**    When the Exclusion Of Terrorism applies in accordance with the terms of **C.1.** or **C.2.,** such exclusion applies without regard to the Nuclear Hazard Exclusion in this Coverage Form, Coverage Part or Policy.

**2.**    The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for any loss or damage which would otherwise be excluded under this Coverage Form, Coverage Part or Policy, such as losses excluded by the Nuclear Hazard Exclusion or the War And Military Action Exclusion.

© ISO Properties, Inc., 2005



Insured Copy

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# COMMERCIAL PACKAGE POLICY ENDORSEMENT

### ADDITIONAL NAMED INSURED ENDORSEMENT

The first Named Insured shown in the Declarations includes the person(s) or organization(s) designated below, subject to the following additional Common Policy Conditions:

1. The first Named Insureds shown in the Declarations is authorized to act for additional named insured(s) in all matters relating to this insurance.

2. If the first Named Insured shown in the Declarations becomes insolvent or bankrupt, the additional named insured(s) agree to pay us any premium for this insurance.

3. This endorsement will not waive any rights of recovery as a claimant which would be valid, if not shown as an additional named insured.

4. Knowledge or discovery by any insured (including any partner or officer) shall be considered knowledge or discovery made by all insureds.

5. The first Named Insured shown in the Declarations declares that all firms named in the policy (named insureds and additional named insureds) are owned or financially controlled by the same interests.

### Names of Additional Named Insureds:

| Entity No. | Name of Insured | Entity Type | F.E.I.N |
|---|---|---|---|
| 1 | FIXTURES AND DRYWALL COMPANY OF OKLAHOMA INC | Corporation | 73-1112460 |
| 1* | FADCO INC | Corporation | 73-1112460 |
| 2 | FADCO OF ARKANSAS LLC | Limited Liability Co. | 26-4407293 |
| 3 | VINCENT MILLWORKS LLC | Limited Liability Co. | 11-3771401 |

**\* Additional trade name of the legal entity**



FEDERATED MUTUAL INSURANCE COMPANY
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

All other terms of this policy remain unchanged.

CP-F-18 (01-86)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020

A-0087

IL 00 21 09 08

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# NUCLEAR ENERGY LIABILITY EXCLUSION ENDORSEMENT
### (Broad Form)

This endorsement modifies insurance provided under the following:

COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
FARM COVERAGE PART
LIQUOR LIABILITY COVERAGE PART
MEDICAL PROFESSIONAL LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
UNDERGROUND STORAGE TANK POLICY

1. The insurance does not apply:

   A. Under any Liability Coverage, to "bodily injury" or "property damage":

      (1) With respect to which an "insured" under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which **(a)** any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or **(b)** the "insured" is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   B. Under any Medical Payments coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   C. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from "hazardous properties" of "nuclear material," if:

      (1) The "nuclear material" **(a)** is at any "nuclear facility" owned by, or operated by or on behalf of, an "insured" or **(b)** has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of, by or on behalf of an "insured"; or

      (3) The "bodily injury" or "property damage" arises out of the furnishing by an "insured" of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion **(3)** applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "Hazardous properties" includes radioactive, toxic or explosive properties.

   "Nuclear material" means "source material", "special nuclear material" or "by-product material".

A-0088

"Source material", "special nuclear material," and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

"Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

"Waste" means any waste material **(a)** containing "by-product material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content, and **(b)** resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

"Nuclear facility" means:

   **(a)** Any "nuclear reactor";

   **(b)** Any equipment or device designed or used for **(1)** separating the isotopes of uranium or plutonium, **(2)** processing or utilizing "spent fuel", or **(3)** handling, processing or packaging "waste";

   **(c)** Any equipment or device used for the processing, fabricating, or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the "insured" at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

   **(d)** Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

"Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

"Property damage" includes all forms of radioactive contamination of property.

 © ISO Properties, Inc., 2007

A-0089

Insured Copy

IL 09 35 07 02

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF CERTAIN COMPUTER-RELATED LOSSES

This endorsement modifies insurance provided under the following:

COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
STANDARD PROPERTY POLICY

A. We will not pay for loss ("loss") or damage caused directly or indirectly by the following. Such loss ("loss") or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss ("loss") or damage.

1. The failure, malfunction or inadequacy of:

    a. Any of the following, whether belonging to any insured or to others:

        (1) Computer hardware, including microprocessors;

        (2) Computer application software;

        (3) Computer operating systems and related software;

        (4) Computer networks;

        (5) Microprocessors (computer chips) not part of any computer system; or

        (6) Any other computerized or electronic equipment or components; or

    b. Any other products, and any services, data or functions that directly or indirectly use or rely upon, in any manner, any of the items listed in Paragraph **A.1.a.** of this endorsement;

    due to the inability to correctly recognize, process, distinguish, interpret or accept one or more dates or times. An example is the inability of computer software to recognize the year 2000.

2. Any advice, consultation, design, evaluation, inspection, installation, maintenance, repair, replacement or supervision provided or done by you or for you to determine, rectify or test for, any potential or actual problems described in Paragraph **A.1.** of this endorsement.

B. If an excluded Cause of Loss as described in Paragraph **A.** of this endorsement results:

1. In a Covered Cause of Loss under the Crime and Fidelity Coverage Part, the Commercial Inland Marine Coverage Part or the Standard Property Policy; or

2. Under the Commercial Property Coverage Part:

    a. In a "Specified Cause of Loss", or in elevator collision resulting from mechanical breakdown, under the Causes of Loss - Special Form; or

    b. In a Covered Cause of Loss under the Causes Of Loss - Basic Form or the Causes Of Loss - Broad Form;

    we will pay only for the loss ("loss") or damage caused by such "Specified Cause of Loss", elevator collision, or Covered Cause of Loss.

C. We will not pay for repair, replacement or modification of any items in Paragraphs **A.1.a.** and **A.1.b.** of this endorsement to correct any deficiencies or change any features.

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - ASBESTOS OR LEAD

This endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE PART
> COMMERCIAL GENERAL LIABILITY COVERAGE PART
> OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
> PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
> RAILROAD PROTECTIVE LIABILITY COVERAGE PART
> BUSINESSOWNERS POLICY
> PRINTERS ERRORS AND OMISSIONS POLICY
> BUSINESS ERRORS AND OMISSIONS POLICY

PROVISIONS

This insurance does not apply to any injury, damage, loss, cost, payment or expense, including, but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of asbestos or lead, asbestos or lead compounds or asbestos or lead which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

1. Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

2. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such injury or damage, loss, cost, payment or expense; or

3. Any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of asbestos or lead, asbestos or lead compounds or materials or substances containing asbestos or lead.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IL-F-27 (08-94)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020

A-0091

Insured Copy

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

**SPECIAL - IL-F-50, Ltd. Amendment of Canc. Prov.**

This endorsement modifies insurance provided under the following:

```
Endorsement(s) IL-F-50 (04-13), Limited Amendments of Cancellation
Provisions is added to the policy
```

Insured Copy

INTERLINE
IL 01 77 10 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OKLAHOMA CHANGES - CONCEALMENT, MISREPRESENTATION OR FRAUD

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART - FARM PROPERTY - OTHER FARM PROVISIONS FORM - ADDITIONAL
COVERAGES, CONDITIONS, DEFINITIONS
FARM COVERAGE PART - LIVESTOCK COVERAGE FORM
FARM COVERAGE PART - MOBILE AGRICULTURAL MACHINERY AND EQUIPMENT COVERAGE FORM
STANDARD PROPERTY POLICY

**A.** When this endorsement is attached to the **Standard Property Policy CP 00 99**, the term Coverage Part in this endorsement is replaced by the term Policy.

**B.** The **Concealment, Misrepresentation Or Fraud** condition is replaced by the following:

Except as provided in Paragraphs **C.** and **D.**, we do not provide coverage in any case of fraud by you as it relates to this Coverage Part at any time. We also do not provide coverage if you or any other insured ("insured"), at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The Covered Property;

**3.** Your interest in the Covered Property; or

**4.** A claim under this Coverage Part.

**C.** The **Concealment, Misrepresentation Or Fraud** condition in the Commercial Auto Coverage Part is replaced by the following:

We do not provide coverage in any case of fraud by you at any time as it relates to this Coverage Part. We also do not provide coverage if you or any other "insured", at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This Coverage Part;

**2.** The covered "auto";

**3.** Your interest in the covered "auto"; or

**4.** A claim under this Coverage Part.

However, this provision does not apply, but only up to the compulsory or financial responsibility limits required by Oklahoma law, if an "accident" results in a third party liability claim against the "insured" under this Coverage Part.

**D.** Under the Kidnap/Ransom And Extortion Coverage Form, the **Concealment, Misrepresentation Or Fraud** condition is replaced by the following:

We do not provide coverage in any case of fraud by you as it relates to this insurance at any time. We also do not provide coverage if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

**1.** This insurance;

**2.** A person insured under this insurance;

**3.** The "property" covered under this insurance;

**4.** Your interest in the "property" covered under this insurance; or

**5.** A claim under this insurance.

A-0093

Insured Copy

IL 01 79 10 02

# OKLAHOMA NOTICE

The following statement is added to the policy:

**WARNING:**

Any person who knowingly, and with intent to injure, defraud or deceive any insurer, makes any claim for the proceeds of an insurance policy, containing any false, incomplete or misleading information, is guilty of a felony.

A-0094

Insured Copy

IL 02 36 09 07

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OKLAHOMA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

CAPITAL ASSETS PROGRAM (OUTPUT POLICY) COVERAGE PART
COMMERCIAL AUTOMOBILE COVERAGE PART
COMMERCIAL GENERAL LIABILITY COVERAGE PART
COMMERCIAL INLAND MARINE COVERAGE PART
COMMERCIAL LIABILITY UMBRELLA COVERAGE PART
COMMERCIAL PROPERTY COVERAGE PART
CRIME AND FIDELITY COVERAGE PART
EMPLOYMENT-RELATED PRACTICES LIABILITY COVERAGE PART
EQUIPMENT BREAKDOWN COVERAGE PART
FARM COVERAGE PART
FARM UMBRELLA LIABILITY POLICY
LIQUOR LIABILITY COVERAGE PART
POLLUTION LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**A.** Paragraph **2.** of the **Cancellation** Common Policy Condition is replaced by the following:

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

**a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

**b.** 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

(1) Nonpayment of premium;

(2) Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

(3) Discovery of willful or reckless acts or omissions by you that increase any hazard insured against;

(4) The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

(5) A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

(6) A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the insurance laws of this state;

(7) Your conviction of a crime having as one of its necessary elements an act increasing any hazard insured against; or

(8) Loss of or substantial changes in applicable reinsurance.

**B.** The following are added to the Common Policy Conditions and supersede any provisions to the contrary:

**1.** **Nonrenewal**

**a.** If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 45 days before:

(1) The expiration date of this policy; or

(2) An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

© ISO Properties, Inc., 2006

A-0095

Insured Copy

**b.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

**c.** If notice is mailed:

(1) It will be considered to have been given to the first Named Insured on the day it is mailed.

(2) Proof of mailing will be sufficient proof of notice.

**d.** If notice of nonrenewal is **not** mailed or delivered at least 45 days before the expiration date or an anniversary date of this policy, coverage will remain in effect until 45 days after notice is given. Earned premium for such extended period of coverage will be calculated pro rata based on the rates applicable to the expiring policy.

**e.** We will **not** provide notice of nonrenewal if:

(1) We, or another company within the same insurance group, have offered to issue a renewal policy; or

(2) You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

**f.** If we have provided the required notice of nonrenewal as described in **B.1.a.** above, and thereafter extend the policy for a period of 90 days or less, we will **not** provide an additional nonrenewal notice with respect to the period of extension.

**2.** **Premium Or Coverage Changes At Renewal**

**a.** If we elect to renew this policy, we will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the first Named Insured, at the last mailing address known to us.

**b.** Any such notice will be mailed or delivered to the first Named Insured at least 45 days before:

(1) The expiration date of this policy; or

(2) An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

**c.** If notice is mailed:

(1) It will be considered to have been given to the first Named Insured on the day it is mailed.

(2) Proof of mailing will be sufficient proof of notice.

**d.** If the first Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

**e.** If notice is **not** mailed or delivered at least 45 days before the expiration date or anniversary date of this policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

(1) 45 days after notice is given; or

(2) The effective date of replacement coverage obtained by the insured;

whichever occurs first.

If the first Named Insured then elects **not** to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

**f.** We will **not** provide notice of the following:

(1) Changes in a rate or plan filed pursuant to the Property and Casualty Competitive Loss Cost Rating Act applicable to an entire class of business;

(2) Changes which are based upon the altered nature or extent of the risk insured; or

(3) Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

© ISO Properties, Inc., 2006   A 0096 IL 02 36 09 07



**FEDERATED MUTUAL INSURANCE COMPANY**

121 East Park Square, Owatonna, MN 55060

## DECLARATIONS
## BUSINESS AUTO COVERAGE PART

**ITEM ONE** - NAMED INSURED and Address - Refer to COMMON POLICY DECLARATIONS

**ITEM TWO** - SCHEDULE OF COVERAGES AND COVERED AUTOS

This coverage part provides only those coverages for which an "X" is shown in the Coverages Provided Column below. Each of these coverages will apply to those "autos" shown as covered "autos". "Autos" are shown as covered "autos" for a particular coverage by the entry of one or more of the symbols from the Covered Autos section of the Business Auto Coverage Form.

| COVERAGES | COVERED AUTOS (Entry of one or more symbols shows which "autos" are covered "autos") | LIMIT THE MOST WE WILL PAY FOR ANY ONE ACCIDENT OR LOSS | COVERAGES PROVIDED |
|---|---|---|---|
| Covered Autos Liability | 1 | $1,000,000 | X |
| Personal Injury Protection (or equivalent No-fault coverage) | | Separately stated in each P.I.P. Endorsement | |
| Added Personal Injury Protection or (or equivalent No-fault coverage) | | Separately stated in each Added P.I.P. Endorsement | |
| Property Protection Insurance (Michigan only) | | Separately stated in the P.P.I. Endorsement $ Deductible (Nil if nothing shown) | |
| Auto Medical Payments | | | |
| Uninsured Motorists | 2A | SEE CA-F-93 | X |
| Underinsured Motorists | | $INCLUDED | |
| Physical Damage Comprehensive Coverage | 2A | Actual Cash Value or Cost of Repair, whichever is less, minus the deductible stated in the auto schedule for each covered "auto", but no deductible applies to "loss" caused by fire or lightning. | X |
| Physical Damage Specified Causes of Loss Coverage | | Actual Cash Value or Cost of Repair, whichever is less, minus $25 Deductible for each covered "auto" for "loss" caused by mischief or vandalism. | |
| Physical Damage Collision Coverage | 2A | Actual Cash Value or Cost of Repair, whichever is less, minus the deductible stated in the auto schedule for each covered "auto". | X |

DESCRIPTION OF ADDITIONAL COVERED AUTO DESIGNATION SYMBOLS

Symbol 10 =

Symbol 11 =

Symbol 12 =

Symbol 13 =

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CA-F-1 (01-17)      Policy Number: 9840992      Transaction Effective Date: 02-01-2020

A-0097

**ITEM THREE** - SCHEDULE OF COVERED "AUTOS" YOU OWN - REFER TO AUTO SCHEDULE

**ITEM FOUR** - SCHEDULE OF HIRED OR BORROWED COVERED AUTO COVERAGE AND PREMIUM - LIABILITY INSURANCE

| State | Estimated Cost of Hire For Each State | Rate Per Each $100 Cost of Hire |
|-------|---------------------------------------|---------------------------------|
|       | IF ANY                                |                                 |

Cost of hire means the total amount you incur for the hire of "autos" you do not own (not including "autos" you borrow or rent from your employees or their family members). Cost of hire does not include charges for services performed by motor carriers of property or passengers.

**ITEM FIVE** - SCHEDULE FOR NON-OWNERSHIP LIABILITY:

| Rating Basis - Number of Employees: | 68 |
|-------------------------------------|----|

**FORMS AND ENDORSEMENTS APPLICABLE:**

**\*\*SEE SCHEDULE ATTACHED\*\***

This Coverage Part consists of: (1) this Coverage Part Declarations Page; (2) the Schedule of Forms and Endorsements if attached hereto; (3) all forms and endorsements listed on this Coverage Part Declarations Page or, if attached here, the Schedule of Forms and Endorsements; and (4) any other schedules attached hereto.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CA-F-1 (01-17)          Policy Number: 9840992          Transaction Effective Date: 02-01-2020

A-0098

Insured Copy

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Title as on Form or Endorsement | Form Edition |
|---|---|
| Declarations - Business Auto Coverage | CA-F-1 (01-17) |
| Automobile Schedule - Part 1 | CA-F-70 PT.1 (11-01) |
| Business Auto Coverage Form | CA 00 01 (10-13) |
| Loss Payable Clause And Certificate | CA-F-9 (06-93) |
| *Rented Auto Insurance Endorsement - Additional Insured (Owner Or Lessor) | CA-F-40 (05-98) |
| Deductible Liability Coverage | CA 03 01 (10-13) |
| Oklahoma Uninsured Motorists Coverage - Nonstacked | CA 31 43 (11-15) |
| Uninsured and Underinsured Motorists Amendment | CA-F-81 (10-13) |
| Uninsured and Underinsured Motorists Limit of Insurance | CA-F-93 (10-13) |
| Excl of Terrorism Involving Nucl, Bio, or Chem Terrorism Above    Min Stat Lmts | CA 23 87 (10-13) |
| Pollution Liability - Broadened Coverage For Covered Autos - Business Auto | CA 99 48 (10-13) |
| Public or Livery Passenger Conveyance Exclusion | CA 23 44 (11-16) |
| Drive Other Car Coverage - Broadened Coverage For Named Individuals | CA 99 10 (10-13) |
| Primary and Noncontributory - Other Insurance Condition | CA 04 49 (11-16) |
| Limited Worldwide Coverage for Hired Autos | CA-F-115 (10-13) |
| Additional Insured by Contract Endorsement | CA-F-127 (03-03) |
| Blanket Waiver Of Transfer Of Rights Of Recovery | CA-F-128 (03-03) |
| Stated Amount Coverage | CA-F-11 (10-01) |
| Limited Mexico Coverage | CA 01 21 (10-13) |
| Oklahoma Changes | CA 01 32 (10-13) |
| Summary of State Minimum Auto Liability Limits | CA-F-118 (11-01) |
| Crane Load Capacity Exclusion | CA-F-124 (10-13) |
| Business Auto Amendatory Endorsement | CA-F-5 (04-19) |

Insured Copy

## FEDERATED MUTUAL INSURANCE COMPANY

### AUTOMOBILE SCHEDULE - Part 1

| | | | COMMERCIAL VEHICLES | | | PRIVATE PASSENGER | | | | | | | RATING FACTORS | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | DESCRIPTION | | See Key Below | | | Miles | | | Age | | | | Garaging Location & ZIP Code | |
| Vehicle Number | Year, Make, Size Gallonage and Body type | Vehicle ID Number | R | G W | B U | A M | Bus. to Use Work | Cost New | Grp/ Symb | Comp Ded | Coll Ded | Spec Causes | and/or Assigned Driver & Birthdate | |
| 1 | 2004 GMC WT5500 TRK | J8DF5C13X47700156 | L | H | C | | | 33,525 | 17 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 2 | 2005 GMC 2500 VAN | 1GTGG25V651170276 | L | Li | S | | | 23,500 | 16 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 3 | 2008 CHEV 1500 TRUCK | 1GCEC14C48E134533 | L | Li | S | | | 30,000 | 13 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 4 | 2010 FORD CXT VAN | NM0LS6BN7AT027566 | L | Li | S | | | 25,000 | 11 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 5# | 2013 NISS NV200 VAN | 3N6CM0KN5DK692505 | L | Li | S | | | 25,000 | 8 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 6# | 2013 FORD F250 TRUCK | 1FT7W2BT5DEB56611 | L | Li | S | | | 43,745 | 8 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 7# | 2015 FRHT BOX TRUCK | 3ALACWDT7FDGH9321 | I | H | S | | | 127,250 | 6 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 8# | 2013 FORD TRANSIT | NM0LS6AN0DT134979 | L | Li | S | | | 23,000 | 8 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 9 | 2019 DYNAMAX FORCE MOTORHOME | 1FVACXFE6JHJY7596 | | | | | | 210,000 | 2 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 10# | 2019 ATC QUEST TRLR | 5JX1A2837KD218160 | L | | | | | 55,000 | 2 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |
| 11# | 2020 INTL MV607 | 3HAEUMMLXLL402357 | L | H | S | | | 92,759 | 1 | 1,000 | 1,000 | | TULSA-TULSA OK 74115 | |

# - This Vehicle ID number is incorrect. Please send us the correct Vehicle ID number to ensure proper identification of your vehicle.

| R - Radius of Operation | GW - Gross Weight | BU - Business Use Class | AM - Annual Mileage |
|---|---|---|---|
| L - Local up to 50 miles   I - Intermediate 51 to 200 miles D - Long Distance over 200 miles | Li - Light   M - Medium   H - Heavy   E - Extra Heavy | S - Service   R - Retail   C - Commercial | in Thousands (Truck Tractor only) |

Insured Copy

COMMERCIAL AUTO
CA 00 01 10 13

# BUSINESS AUTO COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the company providing this insurance.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section **V** - Definitions.

## SECTION I - COVERED AUTOS

Item Two of the Declarations shows the "autos" that are covered "autos" for each of your coverages. The following numerical symbols describe the "autos" that may be covered "autos". The symbols entered next to a coverage on the Declarations designate the only "autos" that are covered "autos".

**A.  Description Of Covered Auto Designation Symbols**

| Symbol | | Description Of Covered Auto Designation Symbols |
|---|---|---|
| **1** | Any "Auto" | |
| **2** | Owned "Autos" Only | Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" you acquire ownership of after the policy begins. |
| **3** | Owned Private Passenger "Autos" Only | Only the private passenger "autos" you own. This includes those private passenger "autos" you acquire ownership of after the policy begins. |
| **4** | Owned "Autos" Other Than Private Passenger "Autos" Only | Only those "autos" you own that are not of the private passenger type (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type you acquire ownership of after the policy begins. |
| **5** | Owned "Autos" Subject To No-fault | Only those "autos" you own that are required to have no-fault benefits in the state where they are licensed or principally garaged. This includes those "autos" you acquire ownership of after the policy begins provided they are required to have no-fault benefits in the state where they are licensed or principally garaged. |
| **6** | Owned "Autos" Subject To A Compulsory Uninsured Motorists Law | Only those "autos" you own that because of the law in the state where they are licensed or principally garaged are required to have and cannot reject Uninsured Motorists Coverage. This includes those "autos" you acquire ownership of after the policy begins provided they are subject to the same state uninsured motorists requirement. |
| **7** | Specifically Described "Autos" | Only those "autos" described in Item Three of the Declarations for which a premium charge is shown (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to any power unit described in Item Three). |
| **8** | Hired "Autos" Only | Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent or borrow from any of your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households. |
| **9** | Non-owned "Autos" Only | Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your "employees", partners (if you are a partnership), members (if you are a limited liability company) or members of their households but only while used in your business or your personal affairs. |

© Insurance Services Office, Inc., 2011

| 19 | Mobile Equipment Subject To Compulsory Or Financial Responsibility Or Other Motor Vehicle Insurance Law Only | Only those "autos" that are land vehicles and that would qualify under the definition of "mobile equipment" under this policy if they were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where they are licensed or principally garaged. |

**B. Owned Autos You Acquire After The Policy Begins**

1. If Symbols **1**, **2**, **3**, **4**, **5**, **6** or **19** are entered next to a coverage in Item Two of the Declarations, then you have coverage for "autos" that you acquire of the type described for the remainder of the policy period.

2. But, if Symbol **7** is entered next to a coverage in Item Two of the Declarations, an "auto" you acquire will be a covered "auto" for that coverage only if:

   a. We already cover all "autos" that you own for that coverage or it replaces an "auto" you previously owned that had that coverage; and

   b. You tell us within 30 days after you acquire it that you want us to cover it for that coverage.

**C. Certain Trailers, Mobile Equipment And Temporary Substitute Autos**

If Covered Autos Liability Coverage is provided by this Coverage Form, the following types of vehicles are also covered "autos" for Covered Autos Liability Coverage:

1. "Trailers" with a load capacity of 2,000 pounds or less designed primarily for travel on public roads.

2. "Mobile equipment" while being carried or towed by a covered "auto".

3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" you own that is out of service because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. "Loss"; or

   e. Destruction.

**SECTION II - COVERED AUTOS LIABILITY COVERAGE**

**A. Coverage**

We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of a covered "auto".

We will also pay all sums an "insured" legally must pay as a "covered pollution cost or expense" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance or use of covered "autos". However, we will only pay for the "covered pollution cost or expense" if there is either "bodily injury" or "property damage" to which this insurance applies that is caused by the same "accident".

We have the right and duty to defend any "insured" against a "suit" asking for such damages or a "covered pollution cost or expense". However, we have no duty to defend any "insured" against a "suit" seeking damages for "bodily injury" or "property damage" or a "covered pollution cost or expense" to which this insurance does not apply. We may investigate and settle any claim or "suit" as we consider appropriate. Our duty to defend or settle ends when the Covered Autos Liability Coverage Limit of Insurance has been exhausted by payment of judgments or settlements.

**1. Who Is An Insured**

The following are "insureds":

   a. You for any covered "auto".

   b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

      **(1)** The owner or anyone else from whom you hire or borrow a covered "auto".

      This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

© Insurance Services Office, Inc., 2011

(2) Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4) Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company) or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5) A partner (if you are a partnership) or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

**c.** Anyone liable for the conduct of an "insured" described above but only to the extent of that liability.

**2. Coverage Extensions**

**a. Supplementary Payments**

We will pay for the "insured":

(1) All expenses we incur.

(2) Up to $2,000 for cost of bail bonds (including bonds for related traffic law violations) required because of an "accident" we cover. We do not have to furnish these bonds.

(3) The cost of bonds to release attachments in any "suit" against the "insured" we defend, but only for bond amounts within our Limit of Insurance.

(4) All reasonable expenses incurred by the "insured" at our request, including actual loss of earnings up to $250 a day because of time off from work.

(5) All court costs taxed against the "insured" in any "suit" against the "insured" we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the "insured".

(6) All interest on the full amount of any judgment that accrues after entry of the judgment in any "suit" against the "insured" we defend, but our duty to pay interest ends when we have paid, offered to pay or deposited in court the part of the judgment that is within our Limit of Insurance.

These payments will not reduce the Limit of Insurance.

**b. Out-of-state Coverage Extensions**

While a covered "auto" is away from the state where it is licensed we will:

(1) Increase the Limit of Insurance for Covered Autos Liability Coverage to meet the limits specified by a compulsory or financial responsibility law of the jurisdiction where the covered "auto" is being used. This extension does not apply to the limit or limits specified by any law governing motor carriers of passengers or property.

(2) Provide the minimum amounts and types of other coverages, such as no-fault, required of out-of-state vehicles by the jurisdiction where the covered "auto" is being used.

We will not pay anyone more than once for the same elements of loss because of these extensions.

**B. Exclusions**

This insurance does not apply to any of the following:

**1. Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

**2. Contractual**

Liability assumed under any contract or agreement.

But this exclusion does not apply to liability for damages:

**a.** Assumed in a contract or agreement that is an "insured contract" provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement; or

**b.** That the "insured" would have in the absence of the contract or agreement.

**3. Workers' Compensation**

Any obligation for which the "insured" or the "insured's" insurer may be held liable under any workers' compensation, disability benefits or unemployment compensation law or any similar law.

          © Insurance Services Office, Inc., 2011

4. **Employee Indemnification And Employer's Liability**

   "Bodily injury" to:

   a. An "employee" of the "insured" arising out of and in the course of:

      (1) Employment by the "insured"; or

      (2) Performing the duties related to the conduct of the "insured's" business; or

   b. The spouse, child, parent, brother or sister of that "employee" as a consequence of Paragraph **a.** above.

   This exclusion applies:

      (1) Whether the "insured" may be liable as an employer or in any other capacity; and

      (2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

   But this exclusion does not apply to "bodily injury" to domestic "employees" not entitled to workers' compensation benefits or to liability assumed by the "insured" under an "insured contract". For the purposes of the Coverage Form, a domestic "employee" is a person engaged in household or domestic work performed principally in connection with a residence premises.

5. **Fellow Employee**

   "Bodily injury" to:

   a. Any fellow "employee" of the "insured" arising out of and in the course of the fellow "employee's" employment or while performing duties related to the conduct of your business; or

   b. The spouse, child, parent, brother or sister of that fellow "employee" as a consequence of Paragraph **a.** above.

6. **Care, Custody Or Control**

   "Property damage" to or "covered pollution cost or expense" involving property owned or transported by the "insured" or in the "insured's" care, custody or control. But this exclusion does not apply to liability assumed under a sidetrack agreement.

7. **Handling Of Property**

   "Bodily injury" or "property damage" resulting from the handling of property:

   a. Before it is moved from the place where it is accepted by the "insured" for movement into or onto the covered "auto"; or

   b. After it is moved from the covered "auto" to the place where it is finally delivered by the "insured".

8. **Movement Of Property By Mechanical Device**

   "Bodily injury" or "property damage" resulting from the movement of property by a mechanical device (other than a hand truck) unless the device is attached to the covered "auto".

9. **Operations**

   "Bodily injury" or "property damage" arising out of the operation of:

   a. Any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment"; or

   b. Machinery or equipment that is on, attached to or part of a land vehicle that would qualify under the definition of "mobile equipment" if it were not subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

10. **Completed Operations**

    "Bodily injury" or "property damage" arising out of your work after that work has been completed or abandoned.

    In this exclusion, your work means:

    a. Work or operations performed by you or on your behalf; and

    b. Materials, parts or equipment furnished in connection with such work or operations.

    Your work includes warranties or representations made at any time with respect to the fitness, quality, durability or performance of any of the items included in Paragraph **a.** or **b.** above.

    Your work will be deemed completed at the earliest of the following times:

       (1) When all of the work called for in your contract has been completed;

       (2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site; or

       (3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

© Insurance Services Office, Inc., 2011

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

**11. Pollution**

"Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.** That are, or that are contained in any property that is:

**(1)** Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)** Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)** Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.** Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.** After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar "pollutants" that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered "auto" or its parts, if:

**(1)** The "pollutants" escape, seep, migrate or are discharged, dispersed or released directly from an "auto" part designed by its manufacturer to hold, store, receive or dispose of such "pollutants"; and

**(2)** The "bodily injury", "property damage" or "covered pollution cost or expense" does not arise out of the operation of any equipment listed in Paragraphs **6.b.** and **6.c.** of the definition of "mobile equipment".

Paragraphs **b.** and **c.** above of this exclusion do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

**(a)** The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

**12. War**

"Bodily injury" or "property damage" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**13. Racing**

Covered "autos" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. This insurance also does not apply while that covered "auto" is being prepared for such a contest or activity.

**C. Limit Of Insurance**

Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for the total of all damages and "covered pollution cost or expense" combined resulting from any one "accident" is the Limit Of Insurance for Covered Autos Liability Coverage shown in the Declarations.

    © Insurance Services Office, Inc., 2011

All "bodily injury", "property damage" and "covered pollution cost or expense" resulting from continuous or repeated exposure to substantially the same conditions will be considered as resulting from one "accident".

No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Medical Payments Coverage endorsement, Uninsured Motorists Coverage endorsement or Underinsured Motorists Coverage endorsement attached to this Coverage Part.

## SECTION III - PHYSICAL DAMAGE COVERAGE

**A.** **Coverage**

1. We will pay for "loss" to a covered "auto" or its equipment under:

   **a.** **Comprehensive Coverage**

   From any cause except:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

   **b.** **Specified Causes Of Loss Coverage**

   Caused by:

   (1) Fire, lightning or explosion;

   (2) Theft;

   (3) Windstorm, hail or earthquake;

   (4) Flood;

   (5) Mischief or vandalism; or

   (6) The sinking, burning, collision or derailment of any conveyance transporting the covered "auto".

   **c.** **Collision Coverage**

   Caused by:

   (1) The covered "auto's" collision with another object; or

   (2) The covered "auto's" overturn.

2. **Towing**

   We will pay up to the limit shown in the Declarations for towing and labor costs incurred each time a covered "auto" of the private passenger type is disabled. However, the labor must be performed at the place of disablement.

3. **Glass Breakage - Hitting A Bird Or Animal - Falling Objects Or Missiles**

   If you carry Comprehensive Coverage for the damaged covered "auto", we will pay for the following under Comprehensive Coverage:

   **a.** Glass breakage;

   **b.** "Loss" caused by hitting a bird or animal; and

   **c.** "Loss" caused by falling objects or missiles.

   However, you have the option of having glass breakage caused by a covered "auto's" collision or overturn considered a "loss" under Collision Coverage.

4. **Coverage Extensions**

   **a.** **Transportation Expenses**

   We will pay up to $20 per day to a maximum of $600 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes Of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for its "loss".

   **b.** **Loss Of Use Expenses**

   For Hired Auto Physical Damage, we will pay expenses for which an "insured" becomes legally responsible to pay for loss of use of a vehicle rented or hired without a driver under a written rental contract or agreement. We will pay for loss of use expenses if caused by:

   (1) Other than collision only if the Declarations indicate that Comprehensive Coverage is provided for any covered "auto";

   (2) Specified Causes Of Loss only if the Declarations indicate that Specified Causes Of Loss Coverage is provided for any covered "auto"; or

(3) Collision only if the Declarations indicate that Collision Coverage is provided for any covered "auto".

However, the most we will pay for any expenses for loss of use is $20 per day, to a maximum of $600.

**B. Exclusions**

**1.** We will not pay for "loss" caused by or resulting from any of the following. Such "loss" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the "loss".

**a. Nuclear Hazard**

(1) The explosion of any weapon employing atomic fission or fusion; or

(2) Nuclear reaction or radiation, or radioactive contamination, however caused.

**b. War Or Military Action**

(1) War, including undeclared or civil war;

(2) Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

(3) Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**2.** We will not pay for "loss" to any covered "auto" while used in any professional or organized racing or demolition contest or stunting activity, or while practicing for such contest or activity. We will also not pay for "loss" to any covered "auto" while that covered "auto" is being prepared for such a contest or activity.

**3.** We will not pay for "loss" due and confined to:

**a.** Wear and tear, freezing, mechanical or electrical breakdown.

**b.** Blowouts, punctures or other road damage to tires.

This exclusion does not apply to such "loss" resulting from the total theft of a covered "auto".

**4.** We will not pay for "loss" to any of the following:

**a.** Tapes, records, discs or other similar audio, visual or data electronic devices designed for use with audio, visual or data electronic equipment.

**b.** Any device designed or used to detect speed-measuring equipment, such as radar or laser detectors, and any jamming apparatus intended to elude or disrupt speed-measuring equipment.

**c.** Any electronic equipment, without regard to whether this equipment is permanently installed, that reproduces, receives or transmits audio, visual or data signals.

**d.** Any accessories used with the electronic equipment described in Paragraph **c.** above.

**5.** Exclusions **4.c.** and **4.d.** do not apply to equipment designed to be operated solely by use of the power from the "auto's" electrical system that, at the time of "loss", is:

**a.** Permanently installed in or upon the covered "auto";

**b.** Removable from a housing unit which is permanently installed in or upon the covered "auto";

**c.** An integral part of the same unit housing any electronic equipment described in Paragraphs **a.** and **b.** above; or

**d.** Necessary for the normal operation of the covered "auto" or the monitoring of the covered "auto's" operating system.

**6.** We will not pay for "loss" to a covered "auto" due to "diminution in value".

**C. Limit Of Insurance**

**1.** The most we will pay for:

**a.** "Loss" to any one covered "auto" is the lesser of:

(1) The actual cash value of the damaged or stolen property as of the time of the "loss"; or

(2) The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality.

**b.** All electronic equipment that reproduces receives or transmits audio, visual or data signals in any one "loss" is $1,000 if, at the time of "loss", such electronic equipment is:

(1) Permanently installed in or upon the covered "auto" in a housing, opening or other location that is not normally used by the "auto" manufacturer for the installation of such equipment;

© Insurance Services Office, Inc., 2011

**(2)** Removable from a permanently installed housing unit as described in Paragraph **b.(1)** above; or

**(3)** An integral part of such equipment as described in Paragraphs **b.(1)** and **b.(2)** above.

**2.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

**3.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

### D. Deductible

For each covered "auto", our obligation to pay for, repair, return or replace damaged or stolen property will be reduced by the applicable deductible shown in the Declarations. Any Comprehensive Coverage deductible shown in the Declarations does not apply to "loss" caused by fire or lightning.

### SECTION IV - BUSINESS AUTO CONDITIONS

The following conditions apply in addition to the Common Policy Conditions:

### A. Loss Conditions

**1. Appraisal For Physical Damage Loss**

If you and we disagree on the amount of "loss", either may demand an appraisal of the "loss". In this event, each party will select a competent appraiser. The two appraisers will select a competent and impartial umpire. The appraisers will state separately the actual cash value and amount of "loss". If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

**a.** Pay its chosen appraiser; and

**b.** Bear the other expenses of the appraisal and umpire equally.

If we submit to an appraisal, we will still retain our right to deny the claim.

**2. Duties In The Event Of Accident, Claim, Suit Or Loss**

We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

**a.** In the event of "accident", claim, "suit" or "loss", you must give us or our authorized representative prompt notice of the "accident" or "loss". Include:

**(1)** How, when and where the "accident" or "loss" occurred;

**(2)** The "insured's" name and address; and

**(3)** To the extent possible, the names and addresses of any injured persons and witnesses.

**b.** Additionally, you and any other involved "insured" must:

**(1)** Assume no obligation, make no payment or incur no expense without our consent, except at the "insured's" own cost.

**(2)** Immediately send us copies of any request, demand, order, notice, summons or legal paper received concerning the claim or "suit".

**(3)** Cooperate with us in the investigation or settlement of the claim or defense against the "suit".

**(4)** Authorize us to obtain medical records or other pertinent information.

**(5)** Submit to examination, at our expense, by physicians of our choice, as often as we reasonably require.

**c.** If there is "loss" to a covered "auto" or its equipment you must also do the following:

**(1)** Promptly notify the police if the covered "auto" or any of its equipment is stolen.

**(2)** Take all reasonable steps to protect the covered "auto" from further damage. Also keep a record of your expenses for consideration in the settlement of the claim.

**(3)** Permit us to inspect the covered "auto" and records proving the "loss" before its repair or disposition.

**(4)** Agree to examinations under oath at our request and give us a signed statement of your answers.

**3. Legal Action Against us**

No one may bring a legal action against us under this Coverage Form until:

**a.** There has been full compliance with all the terms of this Coverage Form; and

**b.** Under Covered Autos Liability Coverage, we agree in writing that the "insured" has an obligation to pay or until the amount of that obligation has finally been determined by judgment after trial. No one has the right under this policy to bring us into an action to determine the "insured's" liability.

**4. Loss Payment - Physical Damage Coverages**

At our option we may:

**a.** Pay for, repair or replace damaged or stolen property;

**b.** Return the stolen property, at our expense. We will pay for any damage that results to the "auto" from the theft; or

**c.** Take all or any part of the damaged or stolen property at an agreed or appraised value.

If we pay for the "loss", our payment will include the applicable sales tax for the damaged or stolen property.

**5. Transfer Of Rights Of Recovery Against Others To Us**

If any person or organization to or for whom we make payment under this Coverage Form has rights to recover damages from another, those rights are transferred to us. That person or organization must do everything necessary to secure our rights and must do nothing after "accident" or "loss" to impair them.

**B. General Conditions**

**1. Bankruptcy**

Bankruptcy or insolvency of the "insured" or the "insured's" estate will not relieve us of any obligations under this Coverage Form.

**2. Concealment, Misrepresentation Or Fraud**

This Coverage Form is void in any case of fraud by you at any time as it relates to this Coverage Form. It is also void if you or any other "insured", at any time, intentionally conceals or misrepresents a material fact concerning:

**a.** This Coverage Form;

**b.** The covered "auto";

**c.** Your interest in the covered "auto"; or

**d.** A claim under this Coverage Form.

**3. Liberalization**

If we revise this Coverage Form to provide more coverage without additional premium charge, your policy will automatically provide the additional coverage as of the day the revision is effective in your state.

**4. No Benefit To Bailee - Physical Damage Coverages**

We will not recognize any assignment or grant any coverage for the benefit of any person or organization holding, storing or transporting property for a fee regardless of any other provision of this Coverage Form.

**5. Other Insurance**

**a.** For any covered "auto" you own, this Coverage Form provides primary insurance. For any covered "auto" you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance. However, while a covered "auto" which is a "trailer" is connected to another vehicle, the Covered Autos Liability Coverage this Coverage Form provides for the "trailer" is:

**(1)** Excess while it is connected to a motor vehicle you do not own; or

**(2)** Primary while it is connected to a covered "auto" you own.

**b.** For Hired Auto Physical Damage Coverage, any covered "auto" you lease, hire, rent or borrow is deemed to be a covered "auto" you own. However, any "auto" that is leased, hired, rented or borrowed with a driver is not a covered "auto".

**c.** Regardless of the provisions of Paragraph **a.** above, this Coverage Form's Covered Autos Liability Coverage is primary for any liability assumed under an "insured contract".

**d.** When this Coverage Form and any other Coverage Form or policy covers on the same basis, either excess or primary, we will pay only our share. Our share is the proportion that the Limit of Insurance of our Coverage Form bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**6. Premium Audit**

**a.** The estimated premium for this Coverage Form is based on the exposures you told us you would have when this policy began. We will compute the final premium due when we determine your actual exposures. The estimated total premium will be credited against the final premium due and the first Named Insured will be billed for the balance, if any. The due date for the final premium or retrospective premium is the date shown as the due date on the bill. If the estimated total premium exceeds the final premium due, the first Named Insured will get a refund.

**b.** If this policy is issued for more than one year, the premium for this Coverage Form will be computed annually based on our rates or premiums in effect at the beginning of each year of the policy.



**7.  Policy Period, Coverage Territory**

Under this Coverage Form, we cover "accidents" and "losses" occurring:

**a.**  During the policy period shown in the Declarations; and

**b.**  Within the coverage territory.

The coverage territory is:

**(1)**  The United States of America;

**(2)**  The territories and possessions of the United States of America;

**(3)**  Puerto Rico;

**(4)**  Canada; and

**(5)**  Anywhere in the world if a covered "auto" of the private passenger type is leased, hired, rented or borrowed without a driver for a period of 30 days or less,

provided that the "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

We also cover "loss" to, or "accidents" involving, a covered "auto" while being transported between any of these places.

**8.  Two Or More Coverage Forms Or Policies Issued By Us**

If this Coverage Form and any other Coverage Form or policy issued to you by us or any company affiliated with us applies to the same "accident", the aggregate maximum Limit of Insurance under all the Coverage Forms or policies shall not exceed the highest applicable Limit of Insurance under any one Coverage Form or policy. This condition does not apply to any Coverage Form or policy issued by us or an affiliated company specifically to apply as excess insurance over this Coverage Form.

**SECTION V - DEFINITIONS**

**A.**  "Accident" includes continuous or repeated exposure to the same conditions resulting in "bodily injury" or "property damage".

**B.**  "Auto" means:

**1.**  A land motor vehicle, "trailer" or semitrailer designed for travel on public roads; or

**2.**  Any other land vehicle that is subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged.

However, "auto" does not include "mobile equipment".

**C.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these.

**D.**  "Covered pollution cost or expense" means any cost or expense arising out of:

**1.**  Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

**2.**  Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**a.**  That are, or that are contained in any property that is:

**(1)**  Being transported or towed by, handled or handled for movement into, onto or from the covered "auto";

**(2)**  Otherwise in the course of transit by or on behalf of the "insured"; or

**(3)**  Being stored, disposed of, treated or processed in or upon the covered "auto";

**b.**  Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

**c.**  After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

© Insurance Services Office, Inc., 2011          CA 00 01 10 13

Paragraph **a.** above does not apply to fuels, lubricants, fluids, exhaust gases or other similar ″pollutants″ that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the covered ″auto″ or its parts, if:

**(1)** The ″pollutants″ escape, seep, migrate or are discharged, dispersed or released directly from an ″auto″ part designed by its manufacturer to hold, store, receive or dispose of such ″pollutants″; and

**(2)** The ″bodily injury″, ″property damage″ or ″covered pollution cost or expense″ does not arise out of the operation of any equipment listed in Paragraph **6.b.** or **6.c.** of the definition of ″mobile equipment″.

Paragraphs **b.** and **c.** above do not apply to ″accidents″ that occur away from premises owned by or rented to an ″insured″ with respect to ″pollutants″ not in or upon a covered ″auto″ if:

**(a)** The ″pollutants″ or any property in which the ″pollutants″ are contained are upset, overturned or damaged as a result of the maintenance or use of a covered ″auto″; and

**(b)** The discharge, dispersal, seepage, migration, release or escape of the ″pollutants″ is caused directly by such upset, overturn or damage.

**E.** ″Diminution in value″ means the actual or perceived loss in market value or resale value which results from a direct and accidental ″loss″.

**F.** ″Employee″ includes a ″leased worker″. ″Employee″ does not include a ″temporary worker″.

**G.** ″Insured″ means any person or organization qualifying as an insured in the Who Is An Insured provision of the applicable coverage. Except with respect to the Limit of Insurance, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or ″suit″ is brought.

**H.** ″Insured contract″ means:

**1.** A lease of premises;

**2.** A sidetrack agreement;

**3.** Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;

**4.** An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

**5.** That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another to pay for ″bodily injury″ or ″property damage″ to a third party or organization. Tort liability means a liability that would be imposed by law in the absence of any contract or agreement; or

**6.** That part of any contract or agreement entered into, as part of your business, pertaining to the rental or lease, by you or any of your ″employees″, of any ″auto″. However, such contract or agreement shall not be considered an ″insured contract″ to the extent that it obligates you or any of your ″employees″ to pay for ″property damage″ to any ″auto″ rented or leased by you or any of your ″employees″.

An ″insured contract″ does not include that part of any contract or agreement:

**a.** That indemnifies a railroad for ″bodily injury″ or ″property damage″ arising out of construction or demolition operations, within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass or crossing;

**b.** That pertains to the loan, lease or rental of an ″auto″ to you or any of your ″employees″, if the ″auto″ is loaned, leased or rented with a driver; or

**c.** That holds a person or organization engaged in the business of transporting property by ″auto″ for hire harmless for your use of a covered ″auto″ over a route or territory that person or organization is authorized to serve by public authority.

**I.** ″Leased worker″ means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm to perform duties related to the conduct of your business. ″Leased worker″ does not include a ″temporary worker″.

**J.** ″Loss″ means direct and accidental loss or damage.

**K.** ″Mobile equipment″ means any of the following types of land vehicles, including any attached machinery or equipment:

**1.** Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

**2.** Vehicles maintained for use solely on or next to premises you own or rent;

**3.** Vehicles that travel on crawler treads;

© Insurance Services Office, Inc., 2011

4.  Vehicles, whether self-propelled or not, maintained primarily to provide mobility to permanently mounted:

 a.  Power cranes, shovels, loaders, diggers or drills; or

 b.  Road construction or resurfacing equipment such as graders, scrapers or rollers;

5.  Vehicles not described in Paragraphs **1., 2., 3.** or **4.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

 a.  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well-servicing equipment; or

 b.  Cherry pickers and similar devices used to raise or lower workers; or

6.  Vehicles not described in Paragraph **1., 2., 3.** or **4.** above maintained primarily for purposes other than the transportation of persons or cargo. However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

 a.  Equipment designed primarily for:

  (1)  Snow removal;

  (2)  Road maintenance, but not construction or resurfacing; or

  (3)  Street cleaning;

 b.  Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

 c.  Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting or well-servicing equipment.

However, "mobile equipment" does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law where it is licensed or principally garaged. Land vehicles subject to a compulsory or financial responsibility law or other motor vehicle insurance law are considered "autos".

L.  "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

M.  "Property damage" means damage to or loss of use of tangible property.

N.  "Suit" means a civil proceeding in which:

 1.  Damages because of "bodily injury" or "property damage"; or

 2.  A "covered pollution cost or expense";

 to which this insurance applies, are alleged.

 "Suit" includes:

  a.  An arbitration proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the "insured" must submit or does submit with our consent; or

  b.  Any other alternative dispute resolution proceeding in which such damages or "covered pollution costs or expenses" are claimed and to which the insured submits with our consent.

O.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

P.  "Trailer" includes semitrailer.

© Insurance Services Office, Inc., 2011

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE AND CERTIFICATE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM

**Insured:**
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

**POLICY PERIOD:  from**   03-01-2020        **to**   03-01-2021

THIS CERTIFIES THAT THE "AUTO" DESCRIBED BELOW IS INSURED BY US FOR THE COVERAGES INDICATED:

| Unit No. | Vehicle Description | Vehicle Identification Number (VIN) | Comp. Ded. | Coll. Ded. | Spec. Causes Ded. | Stated Amount Limit |
|---|---|---|---|---|---|---|
| 9 | 2019 DYNAMAX FORCE MOTORHOME | 1FVACXFE6JHJY7596 | $1,000 | $1,000 | | $210,000 |

Coverages are on an ACTUAL CASH VALUE or cost of repair basis, whichever is less, minus the deductible shown for each covered "auto."  If a STATED AMOUNT is indicated, the most we will pay for any one "accident" or "loss" is the limit shown.  Coverage is only applicable when an entry is made in the deductible or limit column.

## LOSS PAYABLE CLAUSE

**A.** We will pay you and the loss payee named in this endorsement for a covered "loss" to a covered "auto", as interest may appear.

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy by providing at least 10 days advance written notice, or more, as may be allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest.  If we cancel the policy, we will mail you and the loss payee the same advance notice.

**D.** If we make any payment to the loss payee, we will obtain their rights against any other party.

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

SECRETARY

PRESIDENT

VAST BANK, NA DBA VALLEY
NATIONAL BANK
12401 E 86TH ST N
OWASSO OK  74055

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LOSS PAYABLE CLAUSE AND CERTIFICATE

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM
    GARAGE COVERAGE FORM

**Insured:**

FIXTURES AND DRYWALL COMPANY          RE: LOAN 0150
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK   74115

**POLICY PERIOD: from**   03-01-2020     **to**   03-01-2021

THIS CERTIFIES THAT THE "AUTO" DESCRIBED BELOW IS INSURED BY US FOR THE COVERAGES INDICATED:

| Unit No. | Vehicle Description | Vehicle Identification Number (VIN) | Comp. Ded. | Coll. Ded. | Spec. Causes Ded. | Stated Amount Limit |
|---|---|---|---|---|---|---|
| 6 | 2013 FORD F250 TRUCK | 1FT7W2BT5DEB56611 | $1,000 | $1,000 | | |

Coverages are on an ACTUAL CASH VALUE or cost of repair basis, whichever is less, minus the deductible shown for each covered "auto." If a STATED AMOUNT is indicated, the most we will pay for any one "accident" or "loss" is the limit shown. Coverage is only applicable when an entry is made in the deductible or limit column.

### LOSS PAYABLE CLAUSE

**A.** We will pay you and the loss payee named in this endorsement for a covered "loss" to a covered "auto", as interest may appear.

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy by providing at least 10 days advance written notice, or more, as may be allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest. If we cancel the policy, we will mail you and the loss payee the same advance notice.

**D.** If we make any payment to the loss payee, we will obtain their rights against any other party.

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN 55060
(507) 455-5200

SECRETARY

OKLAHOMA CENTRAL CREDIT UNION
PO BOX 471227
TULSA OK   74147

PRESIDENT

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## LOSS PAYABLE CLAUSE AND CERTIFICATE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM

**Insured:**
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK   74115

**POLICY PERIOD:  from**   03-01-2020     **to**   03-01-2021

THIS CERTIFIES THAT THE "AUTO" DESCRIBED BELOW IS INSURED BY US FOR THE COVERAGES INDICATED:

| Unit No. | Vehicle Description | Vehicle Identification Number (VIN) | Comp. Ded. | Coll. Ded. | Spec. Causes Ded. | Stated Amount Limit |
|---|---|---|---|---|---|---|
| 1 | 2004 GMC WT5500 TRK | J8DF5C13X47700156 | $1,000 | $1,000 | | |
| 7 | 2015 FRHT BOX TRUCK | 3ALACWDT7FDGH9321 | $1,000 | $1,000 | | |

Coverages are on an ACTUAL CASH VALUE or cost of repair basis, whichever is less, minus the deductible shown for each covered "auto."  If a STATED AMOUNT is indicated, the most we will pay for any one "accident" or "loss" is the limit shown.  Coverage is only applicable when an entry is made in the deductible or limit column.

LOSS PAYABLE CLAUSE

**A.** We will pay you and the loss payee named in this endorsement for a covered "loss" to a covered "auto", as interest may appear.

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy by providing at least 10 days advance written notice, or more, as may be allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest.  If we cancel the policy, we will mail you and the loss payee the same advance notice.

**D.** If we make any payment to the loss payee, we will obtain their rights against any other party.

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

SECRETARY

VALLEY NATIONAL BANK
4812 E 81ST ST
TULSA OK   74137

PRESIDENT

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CA-F-9 (06-93)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020

Insured Copy

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# RENTED AUTO INSURANCE ENDORSEMENT - ADDITIONAL INSURED (OWNER OR LESSOR)

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

IT IS AGREED THE "AUTO" DESCRIBED BELOW IS INSURED FOR THE COVERAGES INDICATED:

Any truck-tractor, tank truck, truck, van or trailer rented from others by the Named "Insured" for a period of less than six months.

For a covered, described, rented "auto" WHO IS AN INSURED is changed to include as an "insured" the owner or lessor named in this endorsement. However, the owner or lessor is an "insured" for bodily injury or property damage resulting only from the acts or omissions of you or any of your "employees", "temporary workers" or agents.

**Insured:**

FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

**POLICY PERIOD:  from**  03-01-2020  **to**  03-01-2021

The described rental "auto" is a covered "auto" with respect to coverages indicated by an "X" in column 1 below and will be considered a covered "auto" you own.

__100__   Estimated total number of rental days   (Count each rental day as follows: truck tractor = 1.0; tank truck, truck or van = .75; trailer = .25. Total number of rental days  needs to be rounded to the nearest whole number)

| Column No. 1 | Premium | Minimum Premium | Rate Per Rental Day | Limit - The most we will pay for any one "accident" or "loss" | Coverages |
|---|---|---|---|---|---|
| X | INC | INC | $0.46 | $1,000          each "accident" | Liability |
|  |  |  |  | Per Person each "accident" | Medical Payments |
|  |  |  |  | Statutory | Personal Injury Protection |
|  |  |  |  | $1,000,000 each "accident" | Property Protection Insurance |
| X | INC | INC | $1.22 | Actual cash value or cost of repair minus $1,000          for each covered "Auto" | Comprehensive |
|  |  |  |  | Actual cash value or cost of repair, whichever is less, minus $25 for each covered "auto" for "loss" caused by mischief or vandalism. | Specified Causes of Loss |
| X | INC | INC | $2.88 | Actual cash value or cost of repair, whichever is less, minus $1,000          for each covered "auto". | Collision |
|  |  | **Total Premium** |  |  |  |

**LOSS PAYABLE CLAUSE**

A.  We will pay you and the owner or lessor named in this endorsement for a covered "loss" to a covered "auto", as interest may appear.

B.  The insurance covers the interest of the owner or lessor unless the "loss" results from conversion, secretion or embezzlement on your part.

C.  If we make any payment to the owner or lessor, we will obtain his rights against any other party.

__10__   days written notice will be given to the additional "insured" named below if, during the term of the policy, cancellations or changes occur which affect this endorsement.

MILESTONE EQIUPMENT LLC
16711 EAST ADMIRAL PLACE
TULSA, OK 74116

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

SECRETARY                    PRESIDENT

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CA-F-40 (05-98)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020

Insured Copy

POLICY NUMBER: 9840992

**COMMERCIAL AUTO**
CA 03 01 10 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DEDUCTIBLE LIABILITY COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:**   03-01-2020 |

### SCHEDULE

Covered Autos Liability Coverage and Paragraph **A.** Bodily Injury And Property Damage Liability of Section **II** - General Liability Coverages in the Auto Dealers Coverage Form are subject to one of the following two deductibles shown below:

| | | |
|---|---|---|
| **Liability Deductible:** | $ | Per "Accident" |
| | **OR** | |
| **"Property Damage" Only Liability Deductible:** | $      1,000 | Per "Accident" |

Information required to complete this Schedule, if not shown above, will be shown in the Declarations.

**A.  Liability Deductible**

If a Liability Deductible, and not a "Property Damage" Only Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable will be reduced by the Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

**B.  Property Damage Only Liability Deductible**

If a "Property Damage" Only Liability Deductible, and not a Liability Deductible, is shown in the Schedule, the damages resulting from any one "accident" that are otherwise payable for "property damage" will be reduced by the "Property Damage" Only Liability Deductible shown in the Schedule prior to the application of the Limit of Insurance provision.

**C.  Our Right To Reimbursement**

To settle any claim or "suit", we may pay all or any part of any deductible shown in the Schedule. If this happens, you must reimburse us for the deductible or the part of the deductible we paid.

A-0197

POLICY NUMBER: 9840992

**COMMERCIAL AUTO**
**CA 31 43 11 15**

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OKLAHOMA UNINSURED MOTORISTS COVERAGE - NON-STACKED

For a covered "auto" licensed or principally garaged in, or "auto dealer operations" conducted in, Oklahoma, this endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the Policy effective on the inception date of the Policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** |

### SCHEDULE

| Limit Of Insurance:    $    SEE DECLARATIONS               Each "Accident" |
|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. |

**A. Coverage**

We will pay, in accordance with Title 36, Oklahoma Statutes, all sums the "insured" is legally entitled to recover as compensatory damages from the owner or driver of an "uninsured motor vehicle". The damages must result from "bodily injury" sustained by the "insured" caused by an "accident". The owner's or driver's liability for these damages must result from the ownership, maintenance or use of the "uninsured motor vehicle".

**B. Who Is An Insured**

If the Named Insured is designated in the Declarations as:

**1.** An individual, then the following are "insureds":

   **a.** The Named Insured and any "family members".

   **b.** Anyone else "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

   **c.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**2.** A partnership, limited liability company, corporation or any other form of organization, then the following are "insureds":

   **a.** Anyone "occupying" a covered "auto" or a temporary substitute for a covered "auto". The covered "auto" must be out of service because of its breakdown, repair, servicing, "loss" or destruction.

**b.** Anyone for damages he or she is entitled to recover because of "bodily injury" sustained by another "insured".

**C. Exclusions**

This insurance does not apply to:

**1.** "Bodily injury" sustained by:

**a.** Any person who is a "family member" while "occupying", or when struck by, any motor vehicle owned by that person which is not insured for Uninsured Motorists Coverage at the time of the "accident" and to whom no other Uninsured Motorists Coverage is available.

**b.** Any "insured" while "occupying" an "auto":

**(1)** Owned by the Named Insured or any person who is a "family member"; or

**(2)** Furnished or available for the regular use of the Named Insured or any person who is a "family member";

if such "auto" is not insured under a motor vehicle insurance policy at the time of the "accident".

**2.** The direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law.

**3.** Anyone using a vehicle without a reasonable belief that the person is entitled to do so.

**4.** Punitive or exemplary damages.

**5.** "Bodily injury" arising directly or indirectly out of:

**a.** War, including undeclared or civil war;

**b.** Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

**c.** Insurrection, rebellion, revolution, usurped power or action taken by governmental authority in hindering or defending against any of these.

**D. Limit Of Insurance**

**1.** Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the most we will pay for all damages resulting from any one "accident" is the Limit Of Insurance for Uninsured Motorists Coverage shown in the Schedule or Declarations.

**2.** Any payment made by or on behalf of the owner or operator of a vehicle described in Paragraph **F.3.b.** of the definition of an "uninsured motor vehicle" shall not reduce or be a credit against our limit of insurance.

**3.** No one will be entitled to receive duplicate payments for the same elements of "loss" under this Coverage Form and any Liability Coverage Form or Medical Payments Coverage endorsement attached to this Policy.

We will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible.

**E. Changes In Conditions**

The **Conditions** of the Policy are changed for **Uninsured Motorists Coverage,** as follows:

**1.** **Other Insurance** in the Auto Dealers and Business Auto Coverage Forms and **Other Insurance - Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form are replaced by the following:

If there is other applicable insurance available under one or more policies or provisions of coverage:

**a.** The maximum recovery under all coverage forms or policies combined may equal but not exceed the highest applicable limit for any one vehicle under any coverage form or policy providing coverage on either a primary or excess basis.

**b.** Any insurance we provide with respect to a vehicle the Named Insured does not own shall be excess over any other collectible uninsured motorists insurance providing coverage on a primary basis.

c. If the coverage under this Coverage Form is provided:

   (1) On a primary basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on a primary basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on a primary basis.

   (2) On an excess basis, we will pay only our share of the "loss" that must be paid under insurance providing coverage on an excess basis. Our share is the proportion that our limit of insurance bears to the total of all applicable limits of insurance for coverage on an excess basis.

2. **Duties In The Event Of Accident, Claim, Suit Or Loss** in the Business Auto and Motor Carrier Coverage Forms and **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** in the Auto Dealers Coverage Form are changed by adding the following:

a. Promptly notify the police if a hit-and-run driver is involved; and

b. Promptly send us copies of the legal papers if a suit is brought.

c. A person seeking Uninsured Motorists Coverage must also notify us, in writing, of a tentative settlement between the "insured" and the insurer of an "uninsured motor vehicle" and allow us 60 days to advance payment in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such "uninsured motor vehicle". This notice must be sent by certified mail and must include:

   (1) Written documentation of economic losses;

   (2) Copies of all medical bills; and

   (3) Written authorization or a court order allowing us to obtain reports from any employers and medical providers.

3. **Transfer Of Rights Of Recovery Against Others To Us** is changed by adding the following:

If we make any payment and the "insured" recovers from another party, the "insured" shall hold the proceeds in trust for us and pay us back the amount we have paid.

Our rights do not apply under this provision with regard to Uninsured Motorists Coverage if we:

a. Have been given written notice of a tentative settlement between an "insured" and the insurer of an "uninsured motor vehicle"; and

b. Fail to advance payment to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of notification.

If we advance payment to the "insured" in an amount equal to the tentative settlement within 60 days after receipt of notification:

a. That payment will be separate from any amount an "insured" is entitled to recover under the provisions of Uninsured Motorists Coverage; and

b. We also have the right to recover the advanced payment.

4. The following condition is added:

**Arbitration**

a. If we and an "insured" disagree whether the "insured" is legally entitled to recover damages from the owner or driver of an "uninsured motor vehicle" or do not agree as to the amount of damages that is recoverable by that "insured", then the matter may be arbitrated. However, disputes concerning coverage under this endorsement may not be arbitrated. Either party may make a written demand for arbitration. In this event, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Each party will pay the expenses it incurs and bear the expenses of the third arbitrator equally.

b. Unless both parties agree otherwise, arbitration will take place in the county in which the "insured" lives. Local rules of law as to arbitration procedure and evidence will apply.

c. Any decision agreed to by the arbitrators will not be binding.

d. If agreement by arbitration is not reached within three months from the date of demand, the "insured" may bring an action against anyone responsible for the use of a vehicle involved in the "accident".

    © Insurance Services Office, Inc., 2015

**F. Additional Definitions**

As used in this endorsement:

1. "Family member" means a person related to an individual Named Insured by blood, marriage or adoption who is a resident of such Named Insured's household, including a ward or foster child.

2. "Occupying" means in, upon, getting in, on, out or off.

3. "Uninsured motor vehicle" means a land motor vehicle or "trailer":

   a. For which no liability bond or policy at the time of an "accident" provides at least the amounts required by the applicable law where a covered "auto" is principally garaged;

   b. That is an underinsured motor vehicle. An underinsured motor vehicle is a motor vehicle or "trailer" for which there is a liability bond or policy at the time of an accident, the liability limits of which are less than the amount of the claim of the person or persons making such claim, regardless of the amount of coverage of either of the parties in relation to each other;

   c. For which an insuring or bonding company denies coverage or is or becomes insolvent; or

   d. That is a hit-and-run vehicle and neither the driver nor owner can be identified.

However, "uninsured motor vehicle" does not include any vehicle:

a. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer who is or becomes insolvent and cannot provide the amounts required by that motor vehicle law; or

b. Designed for use mainly off public roads while not on public roads.

© Insurance Services Office, Inc., 2015            CA 31 43 11 15

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNINSURED AND UNDERINSURED MOTORISTS AMENDMENT

This endorsement modifies insurance provided under the following:

  AUTO DEALERS COVERAGE FORM
  BUSINESS AUTO COVERAGE FORM

The Arbitration Condition is deleted from the Uninsured and Underinsured Motorists Coverage attached to this policy.

**THIS ENDORSEMENT APPLIES TO COVERED AUTOS LICENSED OR PRINCIPALLY GARAGED IN OR GARAGE OPERATIONS CONDUCTED IN: ALABAMA, ARIZONA, ARKANSAS, COLORADO, CONNECTICUT, DELAWARE, IDAHO, INDIANA, KANSAS, LOUISIANA, MAINE, MASSACHUSETTS, MICHIGAN, MINNESOTA, MISSOURI, MONTANA, NEVADA, NEW HAMPSHIRE, NEW MEXICO, NORTH CAROLINA, NORTH DAKOTA, OHIO, OKLAHOMA, OREGON, RHODE ISLAND, SOUTH DAKOTA, UTAH, WASHINGTON AND WISCONSIN.**

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# UNINSURED AND UNDERINSURED MOTORISTS LIMIT OF INSURANCE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

In consideration of the premium charged, the limit for Uninsured and Underinsured Motorists Coverage as provided by your policy is modified as follows:

1.  For all directors, officers, partners or owners of the named insured and their "family members" who qualify as "insureds" under the WHO IS INSURED of the Uninsured and Underinsured Motorists Coverage attached to this policy, the limit of insurance shall apply per "accident" as follows:

    $1,000,000 Uninsured Motorists

    $INCLUDED Underinsured Motorists _____  This limit of insurance is for each "accident" and is the most we will pay for all damages resulting from any one "accident" or "loss" regardless of the number of directors, officers, partners, owners or family members involved unless otherwise stated in the Uninsured and Underinsured Motorists Coverage attached to this policy.

2.  For any other persons qualifying as "insureds" under the WHO IS AN INSURED provision of the applicable coverage, the limit shown below shall apply per "accident". If no limit is shown below, no coverage is afforded to any other person.

    _____  This limit of insurance is for each "accident" and is the most we will pay for all damages resulting from any one "accident" or "loss" regardless of the number of other persons involved unless otherwise stated in the Uninsured and Underinsured Motorists Coverage attached to this policy.

3.  Regardless of the number of covered "autos", "insureds", premiums paid, claims made or vehicles involved in the "accident", the highest limit shown above is the most we will pay for all damages resulting from any one "accident" or "loss" unless otherwise stated in the Uninsured and Underinsured Motorists Coverage attached to this policy. This paragraph does not provide additional coverage or limits not available under paragraphs 1 or 2 above.

4.  For purposes of this endorsement, "family member" means a person related to the director, officer, partner or owner of the named insured by blood, marriage or adoption who is a resident of that individual's household including a ward or foster child.

COMMERCIAL AUTO
CA 23 87 10 13

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM ABOVE MINIMUM STATUTORY LIMITS

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM
SINGLE INTEREST AUTOMOBILE PHYSICAL DAMAGE INSURANCE POLICY

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A. The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury, damage, loss or expense, is enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

    a. That involve the following or preparation for the following:

        (1) Use or threat of force or violence; or

        (2) Commission or threat of a dangerous act; or

        (3) Commission or threat of an act that interferes with or disrupts an electronic, communication, information or mechanical system; and

    b. When one or both of the following apply:

        (1) The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

        (2) It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

2. "Any injury, damage, loss or expense" means any injury, damage, loss or expense covered under any Coverage Form or Policy to which this endorsement is applicable, and includes but is not limited to "bodily injury", "property damage", "personal and advertising injury", "loss", loss of use, rental reimbursement after "loss" or "covered pollution cost or expense", as may be defined under this Coverage Form, Policy or any applicable endorsement.

B. The following exclusion is added:

    **Exclusion Of Terrorism**

    We will not pay for "any injury, damage, loss or expense" caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". "Any injury, damage, loss or expense" is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury, damage, loss or expense. **But this exclusion applies only when one or more of the following are attributed to an incident of "terrorism":**

1. The "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

**3.** The "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

However, with respect to Covered Autos Liability Coverage and Personal Injury Protection Coverage, if applicable, this exclusion applies only to the extent that the limit of such coverage exceeds the state compulsory or financial responsibility law minimum limits for each coverage.

With respect to Uninsured and/or Underinsured Motorists Coverage, if applicable, this exclusion applies only to the extent that the limit of such coverage exceeds the minimum statutory permitted limits for Uninsured and/or Underinsured Motorists Coverage. Those limits are equal to the minimum limit permitted for Covered Autos Liability Coverage.

**C.** In the event of any incident of "terrorism" that is not subject to this exclusion, coverage does not apply to "any injury, damage, loss or expense" that is otherwise excluded under this Coverage Form, Policy or any applicable endorsement.

© Insurance Services Office, Inc., 2013

Insured Copy

COMMERCIAL AUTO
CA 99 48 10 13

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# POLLUTION LIABILITY - BROADENED COVERAGE
# FOR COVERED AUTOS - BUSINESS AUTO AND
# MOTOR CARRIER COVERAGE FORMS

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Covered Autos Liability Coverage** is changed as follows:

1. Paragraph **a.** of the **Pollution** Exclusion applies only to liability assumed under a contract or agreement.

2. With respect to the coverage afforded by Paragraph **A.1.** above, Exclusion **B.6. Care, Custody Or Control** does not apply.

**B. Changes In Definitions**

For the purposes of this endorsement, Paragraph **D.** of the **Definitions** Section is replaced by the following:

**D.** "Covered pollution cost or expense" means any cost or expense arising out of:

1. Any request, demand, order or statutory or regulatory requirement that any "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

2. Any claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

"Covered pollution cost or expense" does not include any cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a. Before the "pollutants" or any property in which the "pollutants" are contained are moved from the place where they are accepted by the "insured" for movement into or onto the covered "auto"; or

b. After the "pollutants" or any property in which the "pollutants" are contained are moved from the covered "auto" to the place where they are finally delivered, disposed of or abandoned by the "insured".

Paragraphs **a.** and **b.** above do not apply to "accidents" that occur away from premises owned by or rented to an "insured" with respect to "pollutants" not in or upon a covered "auto" if:

(1) The "pollutants" or any property in which the "pollutants" are contained are upset, overturned or damaged as a result of the maintenance or use of a covered "auto"; and

(2) The discharge, dispersal, seepage, migration, release or escape of the "pollutants" is caused directly by such upset, overturn or damage.

© Insurance Services Office, Inc., 2011

COMMERCIAL AUTO
CA 23 44 11 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PUBLIC OR LIVERY PASSENGER CONVEYANCE EXCLUSION

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

The following exclusion is added:

**Public Or Livery Passenger Conveyance**

This insurance does not apply to any covered "auto" while being used as a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**B. Changes In Physical Damage Coverage**

The following exclusion is added:

We will not pay for "loss" to any covered "auto" while being used as a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**C. Changes In Auto Medical Payments**

If Auto Medical Payments Coverage is attached, then the following exclusion is added:

**Public Or Livery Passenger Conveyance**

This insurance does not apply to:

"Bodily injury" sustained by an "insured" "occupying" a covered "auto" while it is being used as a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**D. Changes In Uninsured And/Or Underinsured Motorists Coverage**

**1.** If Uninsured and/or Underinsured Motorists Coverage is attached, and:

**a.** Contains, in whole or in part, a public or livery exclusion, then the following exclusion in Paragraph **2.** does not apply.

**b.** Does not contain a public or livery exclusion, then the following exclusion in Paragraph **2.** is added.

**2. Public Or Livery Passenger Conveyance**

This insurance does not apply to any covered "auto" while being used as a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**E. Changes In Personal Injury Protection Coverage**

**1.** If Personal Injury Protection, no-fault or other similar coverage is attached, and:

**a.** Contains, in whole or in part, a public or livery exclusion, then the following exclusion in Paragraph **2.** does not apply.

**b.** Does not contain a public or livery exclusion, then the following exclusion in Paragraph **2.** is added.

**2. Public Or Livery Passenger Conveyance**

This insurance does not apply to any covered "auto" while being used as a public or livery conveyance for passengers. This includes, but is not limited to, any period of time a covered "auto" is being used by an "insured" who is logged into a "transportation network platform" as a driver, whether or not a passenger is "occupying" the covered "auto".

**F. Additional Definitions**

As used in this endorsement:

1. "Occupying" means in, upon, getting in, on, out or off.

2. "Transportation network platform" means an online-enabled application or digital network used to connect passengers with drivers using vehicles for the purpose of providing prearranged transportation services for compensation.

© Insurance Services Office, Inc., 2016

A-0126

Insured Copy

POLICY NUMBER: 9840992

**COMMERCIAL AUTO**
CA 99 10 10 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# DRIVE OTHER CAR COVERAGE -
# BROADENED COVERAGE FOR NAMED INDIVIDUALS

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM
    MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

This endorsement changes the policy effective on the inception date of the policy unless another date is indicated below.

| |
|---|
| **Named Insured:** |
| **Endorsement Effective Date:** 03-01-2020 |

### SCHEDULE

| Name Of Individual: | LARRY VINCENT |
|---|---|
| | ROBERT VINCENT |

| Covered Autos Liability Coverage | Limit: | $ SEE DECLARATIONS | Premium: | $ INCLUDED |
|---|---|---|---|---|
| **Auto Medical Payments** | Limit: | $ | Premium: | $ |
| **Comprehensive** | Deductible: | $        0 | Premium: | $ INCLUDED |
| **Collision** | Deductible: | $       50 | Premium: | $ INCLUDED |
| **Uninsured Motorists** | Limit: | $ SEE DECLARATIONS | Premium: | $ INCLUDED |
| **Underinsured Motorists** | Limit: | $ INCLUDED | Premium: | $ INCLUDED |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | | | |

**Note:** When Uninsured Motorists Coverage is provided at limits higher than the basic limits required by a financial responsibility law, Underinsured Motorists Coverage is included, unless otherwise noted. If Underinsured Motorists Coverage is provided as a separate coverage, make appropriate entry in the Schedule above.

CA 99 10 10 13                © Insurance Services Office, Inc., 2011

A-0130

**A.** This endorsement changes only those coverages where a premium is shown in the Schedule.

**B. Changes In Covered Autos Liability Coverage**

1. Any "auto" you don't own, hire or borrow is a covered "auto" while being used by any individual named in the Schedule or by his or her spouse while a resident of the same household except:

   a. Any "auto" owned by that individual or by any member of his or household.

   b. Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

2. The following is added to **Who Is An Insured:**

   Any individual named in the Schedule and his or her spouse, while a resident of the same household, are "insureds" while using any covered "auto" described in Paragraph **B.1.** of this endorsement.

**C. Changes In Auto Medical Payments And Uninsured And Underinsured Motorists Coverages**

The following is added to **Who Is An Insured:**

Any individual named in the Schedule and his or her "family members" are "insureds" while "occupying" or while a pedestrian when being struck by any "auto" you don't own except:

Any "auto" owned by that individual or by any "family member".

**D. Changes In Physical Damage Coverage**

Any private passenger type "auto" you don't own, hire or borrow is a covered "auto" while in the care, custody or control of any individual named in the Schedule or his or her spouse while a resident of the same household except:

1. Any "auto" owned by that individual or by any member of his or her household.

2. Any "auto" used by that individual or his or her spouse while working in a business of selling, servicing, repairing or parking "autos".

**E. Additional Definition**

As used in this endorsement:

"Family member" means a person related to the individual named in the Schedule by blood, marriage or adoption who is a resident of the individual's household, including a ward or foster child.

   © Insurance Services Office, Inc., 2011   CA 99 10 10 13

COMMERCIAL AUTO
CA 04 49 11 16

# THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# PRIMARY AND NONCONTRIBUTORY -
# OTHER INSURANCE CONDITION

This endorsement modifies insurance provided under the following:

> AUTO DEALERS COVERAGE FORM
> BUSINESS AUTO COVERAGE FORM
> MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A.** The following is added to the **Other Insurance** Condition in the Business Auto Coverage Form and the **Other Insurance - Primary And Excess Insurance Provisions** in the Motor Carrier Coverage Form and supersedes any provision to the contrary:

This Coverage Form's Covered Autos Liability Coverage is primary to and will not seek contribution from any other insurance available to an "insured" under your policy provided that:

**1.** Such "insured" is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to such "insured".

**B.** The following is added to the **Other Insurance** Condition in the Auto Dealers Coverage Form and supersedes any provision to the contrary:

This Coverage Form's Covered Autos Liability Coverage and General Liability Coverages are primary to and will not seek contribution from any other insurance available to an "insured" under your policy provided that:

**1.** Such "insured" is a Named Insured under such other insurance; and

**2.** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to such "insured".

   © Insurance Services Office, Inc., 2016

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## LIMITED WORLDWIDE COVERAGE FOR HIRED AUTOS

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

With respect to coverage provided under this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**SECTION IV - BUSINESS AUTO CONDITIONS of the Business Auto Coverage Form** and **SECTION IV - CONDITIONS of the Auto Dealers Coverage Form** are changed as follows:

Condition **B.7(5).** is changed to read as follows:

**e.**   Anywhere in the world if:

   **(1)**   A covered "auto" of the private passenger type, pick-up truck or van with a gross vehicle weight of 10,000 pounds or less is leased, hired, rented or borrowed without a driver for a period of 30 days or less; and

   **(2)**   The "insured's" responsibility to pay damages is determined in a "suit" on the merits, in the United States of America, the territories and possessions of the United States of America, Puerto Rico, or Canada or in a settlement we agree to.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## ADDITIONAL INSURED BY CONTRACT ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

A.   WHO IS AN INSURED for "bodily injury" and "property damage" liability is amended to include:

Any person or organization other than a joint venture, for which you have agreed by written contract to procure bodily injury or property damage "auto" liability insurance arising out of operation of a covered "auto" with your permission. However, this additional insurance does not apply to:

(1)   The owner or anyone else from whom you hire or borrow a covered "auto". This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.

(2)   Your "employee" if the covered "auto" is owned by that "employee" or a member of his or her household.

(3)   Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing, parking or storing "autos" unless that business is yours.

(4)   Anyone other than your "employees", partners (if you are a partnership), members (if you are a limited liability company), or a lessee or borrower or any of their "employees", while moving property to or from a covered "auto".

(5)   A partner (if you are a partnership), or a member (if you are a limited liability company) for a covered "auto" owned by him or her or a member of his or her household.

B.   The coverage extended to any additional insured by this endorsement is limited to, and subject to all terms, conditions, and exclusions of the Coverage Part to which this endorsement is attached.

In addition, coverage shall not exceed the terms and conditions that are required by the terms of the written agreement to add any insured, or to procure insurance.

C.   The limits of insurance applicable to such insurance shall be the lesser of the limits required by the agreement between the parties, or the limits provided by this policy.

D.   Additional exclusions.   The insurance afforded to any person or organization as an insured under this endorsement does not apply:

1.   To "loss" which occurs prior to the date of your contract with such person or organization;

2.   To "loss" arising out of the sole negligence of any person or organization that would not be an insured except for this endorsement.

3.   To "loss" for any leased or rented "auto" when the lessor or his or her agent takes possession of the leased or rented "auto" or the policy period ends, whichever occurs first.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## BLANKET WAIVER OF TRANSFER OF RIGHTS OF RECOVERY

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE PART

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

In the event of any payment for a loss under this Business Auto Coverage Part arising out of your ongoing operations, we agree to waive our rights under the TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US condition against any person or organization, its subsidiaries, directors, agents or employees, for which you have agreed by written contract, prior to the occurrence of any loss, to waive such rights, except when the payment results from the sole negligence of that person or organization, its subsidiaries, directors, agents or employees.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## STATED AMOUNT COVERAGE

This endorsement modifies insurance provided under the following:

    BUSINESS AUTO COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

Coverage applies to the following described "autos" for which a specific premium charge is indicated.

### SCHEDULE

| Unit No. | Description | Stated Amount | Comprehensive Ded. | Comprehensive Prem. | Collision Ded. | Collision Prem. | Spec. Causes Ded. | Spec. Causes Prem. |
|---|---|---|---|---|---|---|---|---|
| 9 | 2019 DYNAMAX FORCE MOTORHOME   1FVACXFE6JHJY7596 | $210,000 | $1,000 | INC | $1,000 | INC | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

The amount shown in the Schedule is not necessarily the amount you will receive at the time of "loss" for the described vehicle. Please refer to the PHYSICAL DAMAGE COVERAGE Limit of Insurance and Deductible provisions in the Business Auto Coverage Part.

We will not pay more than the Stated Amount shown in the Schedule for the covered "auto" described in this endorsement.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

A-0139

Insured Copy

POLICY NUMBER: 9840992

COMMERCIAL AUTO
CA 01 21 10 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# LIMITED MEXICO COVERAGE

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by this endorsement.

**WARNING**

AUTO ACCIDENTS IN MEXICO ARE SUBJECT TO THE LAWS OF MEXICO ONLY - **NOT** THE LAWS OF THE UNITED STATES OF AMERICA. THE REPUBLIC OF MEXICO CONSIDERS ANY AUTO ACCIDENT A **CRIMINAL OFFENSE** AS WELL AS A CIVIL MATTER.

IN SOME CASES THE COVERAGE PROVIDED UNDER **THIS ENDORSEMENT MAY NOT BE RECOGNIZED BY THE MEXICAN AUTHORITIES** AND WE MAY NOT BE ALLOWED TO IMPLEMENT THIS COVERAGE AT ALL IN MEXICO. YOU SHOULD CONSIDER PURCHASING AUTO COVERAGE FROM A LICENSED MEXICAN INSURANCE COMPANY BEFORE DRIVING INTO MEXICO.

THIS ENDORSEMENT DOES **NOT** APPLY TO ACCIDENTS OR LOSSES WHICH OCCUR OUTSIDE OF 25 MILES FROM THE BOUNDARY OF THE UNITED STATES OF AMERICA.

### SCHEDULE

| Mexico Coverage | $ INCLUDED | Premium |
|---|---|---|
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**A. Coverage**

1. Paragraph **7. Policy Period, Coverage Territory** of the **General Conditions** is amended by the addition of the following:

    The coverage territory is extended to include Mexico but only for:

    **a.** "Accidents" or "losses" occurring within 25 miles of the United States border; and

    **b.** Trips into Mexico of 10 days or less.

2. The **Other Insurance** Condition in the Business Auto and Auto Dealers Coverage Forms and the **Other Insurance - Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are replaced by the following:

    The insurance provided by this endorsement will be excess over any other collectible insurance.

**B. Physical Damage Coverage** is amended by the addition of the following:

If a "loss" to a covered "auto" occurs in Mexico, we will pay for such "loss" in the United States. If the covered "auto" must be repaired in Mexico in order to be driven, we will not pay more than the actual cash value of such "loss" at the nearest United States point where the repairs can be made.

**C. Additional Exclusions**

For the purposes of this endorsement the following additional exclusions are added:

This insurance does not apply:

1. If the covered "auto" is not principally garaged and principally used in the United States.

2. To any "insured" who is not a resident of the United States.

CA 01 21 10 13                © Insurance Services Office, Inc., 2011                A-0180 Page 1 of 1

Insured Copy

COMMERCIAL AUTO
CA 01 32 10 13

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

# OKLAHOMA CHANGES

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM
MOTOR CARRIER COVERAGE FORM

With respect to coverage provided by this endorsement, the provisions of the Coverage Form apply unless modified by the endorsement.

**A. Changes In Covered Autos Liability Coverage**

1. Paragraph **C. Limit Of Insurance** in the Business Auto and Motor Carrier Coverage Forms and Paragraph **D.5. Limit Of Insurance - Covered Autos Liability** in the Auto Dealers Coverage Form are changed by adding the following:

   Covered Autos Liability Coverage is provided in this Coverage Part in accordance with coverage required by the Compulsory Insurance Law of Oklahoma.

2. Paragraph **2.b.(4)** of the **Who Is An Insured** provision of the Auto Dealers Coverage Form does not apply.

**B. Changes In Conditions**

1. Paragraph **c.(2)** of the **Duties In The Event Of Accident, Claim, Suit Or Loss** Condition in the Business Auto and Motor Carrier Coverage Forms and Paragraph **c.(2)** of the **Duties In The Event Of Accident, Claim, Offense, Suit, Loss Or Acts, Errors Or Omissions** Condition in the Auto Dealers Coverage Form are replaced by the following:

   **(2)** Take all reasonable steps, at our expense, to protect the covered "auto" from further damage. Also, keep a record of your expenses for consideration in the settlement of the claim.

2. The **Other Insurance** Condition in the Auto Dealers and Business Auto Coverage Forms and the **Other Insurance - Primary And Excess Insurance Provisions** Condition in the Motor Carrier Coverage Form are changed by adding the following:

   When two policies providing liability coverage apply to an "auto" and:

   **a.** One provides coverage to a named insured who is an authorized motor vehicle dealer; and

   **b.** The other provides coverage to a person not engaged in that business; and

   **c.** At the time of an "accident" a person described in **b.** is operating the "auto", then that person's liability insurance is primary and the dealer's liability insurance is excess over any insurance available to that person, provided:

      **(1)** The person is operating the "auto" with the permission of the dealer;

      **(2)** The change in financial responsibility is evidenced by a release signed by the person operating the "auto"; and

      **(3)** No fee or lease charge has been made by the dealer for the use of the "auto".

**FEDERATED MUTUAL INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## SUMMARY OF STATE MINIMUM AUTO LIABILITY LIMITS

For a covered "auto" licensed or principally garaged in the state shown below, this endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

The following schedule displays, by state, the minimum auto liability limits required under the state's financial responsibility or compulsory liability insurance law.

Limits shown below apply to the particular state's financial responsibility, compulsory liability, minimum limits or similar language in regards to auto liability. These limits are subject to change according to state law mandate.

## SCHEDULE

|  | Minimum Liability Limits | |
| --- | --- | --- |
| State | Split Limits[a] | Combined[b] |
| Alabama | 25/50/25 | 75,000 |
| Alaska | 50/100/25 | 125,000 |
| Arizona | 15/30/10 | 40,000 |
| Arkansas | 25/50/25 | 75,000 |
| California | 15/30/5 | 35,000 |
| Colorado | 25/50/15 | 65,000 |
| Connecticut | 25/50/25 | 75,000 |
| Delaware | 25/50/10 | 60,000 |
| Dist. of Columbia | 25/50/10 | 60,000 |
| Florida | 10/20/10 | 30,000 |
| Georgia | 25/50/25 | 75,000 |
| Hawaii | 20/40/10 | 50,000 |
| Idaho | 25/50/15 | 65,000 |
| Illinois | 25/50/20 | 70,000 |
| Indiana | 25/50/25 | 75,000 |
| Iowa | 20/40/15 | 55,000 |
| Kansas | 25/50/25 | 75,000 |
| Kentucky | 25/50/10 | 60,000 |
| Louisiana | 15/30/25 | 55,000 |
| Maine | 50/100/25 | 125,000 |
| Maryland | 30/60/15 | 75,000 |
| Massachusetts | 20/40/5 | 45,000 |
| Michigan | 20/40/10 | 50,000 |
| Minnesota | 30/60/10 | 70,000 |
| Mississippi | 25/50/25 | 75,000 |
| Missouri | 25/50/10 | 60,000 |

Includes copyrighted material of Insurance Services Office Inc., with its permission.

CA-F-118 (11-01)      Policy Number: 9840992      Transaction Effective Date: 03-01-2020

| State | Minimum Liability Limits | |
| | Split Limits[a] | Combined [b] |
| --- | --- | --- |
| Montana | 25/50/20 | 70,000 |
| Nebraska | 25/50/25 | 75,000 |
| Nevada | 25/50/20 | 70,000 |
| New Hampshire | 25/50/25 | 75,000 |
| New Jersey | 15/30/5 | 35,000 |
| New Mexico | 25/50/10 | 60,000 |
| New York | 25/50/10 | 60,000 |
| | Wrongful Death 50/100 | |
| North Carolina | 30/60/25 | 85,000 |
| North Dakota | 25/50/25 | 75,000 |
| Ohio | 25/50/25 | 75,000 |
| Oklahoma | 25/50/25 | 75,000 |
| Oregon | 25/50/20 | 70,000 |
| Pennsylvania | 15/30/5 | 35,000 |
| Rhode Island | 25/50/25 | 75,000 |
| South Carolina | 25/50/25 | 75,000 |
| South Dakota | 25/50/25 | 75,000 |
| Tennessee | 25/50/15 | 65,000 |
| Texas | 30/60/25 | 85,000 |
| Utah | 25/65/15 | 80,000 |
| Vermont | 25/50/10 | 60,000 |
| Virginia | 25/50/20 | 70,000 |
| Washington | 25/50/10 | 60,000 |
| West Virginia | 25/50/25 | 75,000 |
| Wisconsin | 25/50/10 | 60,000 |
| Wyoming | 25/50/20 | 70,000 |

a. Split Limits are in thousands. The first number shown is the per person bodily injury limit; the second number is the per accident bodily injury limit; and the third number is the per accident property damage limit.

b. Combined single limit of insurance is the most an insurer will pay in any one accident regardless of the components (bodily injury, property damage) of the loss.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CA-F-118 (11-01)      Policy Number: 9840992      Transaction Effective Date: 03-01-2020

A-0139

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CRANE LOAD CAPACITY EXCLUSION

This endorsement modifies insurance provided under the following:

AUTO DEALERS COVERAGE FORM
BUSINESS AUTO COVERAGE FORM

The following EXCLUSION is added to PHYSICAL DAMAGE COVERAGE:

We will not pay for "loss" caused by the weight of a load exceeding the registered lifting or supporting capacity of any "crane".

**Additional Definitions:**

As used in this endorsement:

"Crane" means a vehicle and/or machine used for lifting, shifting, lowering and/or moving heavy objects or materials by means of a projecting swinging arm or hoisting apparatus.

Includes copyrighted material of Insurance Services Offices, Inc., with its permission

**FEDERATED MUTUAL INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BUSINESS AUTO AMENDATORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM

A. **SECTION I - COVERED AUTOS** is changed as follows:

1. All references in this Section to **Symbol 2** are changed as follows:

   2A = **Owned "autos" only.** Only those "autos" you own (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units you own). This includes those "autos" whose ownership you acquire after the policy begins.

   2B = **Owned "autos" other than "trailers" you own.** Only those "autos" you own other than "trailers", including such "autos" whose ownership you acquire after the policy begins.

   2C = **Owned "trailers" only.** Only the "trailers" you own, including those whose ownership you acquire after the policy begins.

2. All references in this Section to **Symbol 3** are changed as follows:

   3A = **Owned private passenger "autos" only.** Only the private passenger "autos" you own. This includes those private passenger "autos" whose ownership you acquire after the policy begins.

   3B = **Owned private passenger "autos" and pickups, panels and vans less than 10,000 pounds gross vehicle weight only.** Only "autos" of the described types you own, including "autos" of the described types whose ownership you acquire after the policy begins (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units of the described types you own).

3. All references in this Section to **Symbol 4** are changed as follows:

   4A = **Owned "autos" other than private passenger "autos" only.** Only those "autos" you own which are not of the private passenger types (and for Covered Autos Liability Coverage any "trailer" you don't own while attached to power units you own). This includes those "autos" not of the private passenger type, whose ownership you acquire after the policy begins.

   4B = **Owned "autos" other than private passenger "autos" and pickups, panels and vans less than 10,000 pounds gross vehicle weight.** Only "autos" of the described types you own, including "autos" of the described types whose ownership you acquire after the policy begins (and for Covered Autos Liability Coverage any "trailers" you don't own while attached to power units of the described types you own).

4. Paragraph **C.3.** is deleted and the following is substituted therefor:

   3. Any "auto" you do not own while used with the permission of its owner as a temporary substitute for a covered "auto" which is out of normal use because of its:

      **a.** breakdown;

      **b.** repair;

      **c.** servicing;

      **d.** "loss"; or

      **e.** destruction

      All coverages applicable to the temporary substitute "auto" are the same coverages which are applicable to the covered "auto" which is out of service, including Physical Damage coverage.

5. Wherever the terms "owned autos" or "covered autos you own" are used in this coverage form, except in **SECTION IV - BUSINESS AUTO CONDITIONS B.5. Other Insurance,** these terms shall include within their meaning:

   Any "auto" leased to you under a written lease agreement which provides for your exclusive use of the "auto" for a period of not less than 6 consecutive months.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

**B.  SECTION II - COVERED AUTOS LIABILITY COVERAGE** is changed as follows:

   **1.** The following paragraph is added to Section **A.1** Who is an insured:

      **d.** Any organization you newly acquire or form, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

         **i.** Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier;

         **ii.** Coverage under this provision does not apply to "bodily injury" or "property damage" resulting from an "accident" that occurred before you acquired or formed the organization.

   **2.** Exclusion **B.5. Fellow Employee** is deleted.

**C.  SECTION III- PHYSICAL DAMAGE COVERAGE** is changed as follows:

   **1.** The phrase "its equipment" in paragraph **A.1.** is defined to mean, subject to the **Exclusions,** the following:

      **a.** Permanently installed parts and accessories in or on the "auto" including detachable special purpose body attached to or removed from your covered "auto".

      **b.** Contents kept in the covered "auto" which are normally factory installed or are common to the "auto's" operation. Examples of covered contents include such items as: car jack, floor mats, spare tire and tire chains.

   **2.** **COVERAGE A.2. Towing** is deleted.

   **3.** Paragraph **4.a. Transportation Expenses** is deleted and replaced by the following:

      **a.  Transportation Expenses**

      We will pay up to $50 per day up to a maximum of $1,500 for temporary transportation expense incurred by you because of the total theft of a covered "auto" of the private passenger type. We will pay only for those covered "autos" for which you carry either Comprehensive or Specified Causes of Loss Coverage. We will pay for temporary transportation expenses incurred during the period beginning 48 hours after the theft and ending, regardless of the policy's expiration, when the covered "auto" is returned to use or we pay for it's "loss".

   **4.** The following is added to **4. Coverage Extensions:**

      **c.  Hired Auto Physical Damage**

      If hired "autos" are covered "autos" for Liability Coverage, but not covered "autos" for Physical Damage, and this policy also provides Physical Damage Coverage for an owned "auto", then the Physical Damage Coverage is extended to "autos" that you hire, rent or borrow subject to the following:

         **i.** The most we will pay for "loss" in any one "accident" to a hired, rented or borrowed "auto" is the lessor of:

            **a)** $100,000

            **b)** The actual cash value of the damaged or stolen "auto"

            **c)** The cost of repairing or replacing the damaged or stolen property with other property of like kind and quality

         **ii.** An adjustment for depreciation and physical condition will be made in determining actual cash value in the event of a total "loss".

         **iii.** If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

         **iv.** A deductible equal to the highest Physical Damage deductible applicable to any owned covered "auto".

         **v.** This Coverage Extension does not apply to:

            **a)** Any "auto" that is hired, rented or borrowed with a driver, or

            **b)** Any "auto" that is hired, rented or borrowed from your "employee".

   **5.** The following is added to **D. Deductible**

   No deductible applies to glass damage if the glass is repaired rather than replaced.

**D.  SECTION IV BUSINESS AUTO CONDITIONS** is changed as follows:

   **1.** The following is added to paragraph **B.2. Concealment, Misrepresentation or Fraud:**

   The unintentional failure to disclose any hazard existing at this policy's inception will not prejudice your rights under this insurance. However:

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CA-F-5 (04-19)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020

A-0142

    **a.**  Once you discover that any hazard has not been disclosed to us, you must disclose it to us as soon as reasonably possible; and

    **b.**  This provision does not affect our right to collect additional premium or to exercise our rights of cancellation or nonrenewal in accordance with applicable insurance laws, codes or regulations.

**E.**  **SECTION V - DEFINITIONS** is changed as follows:

    **C.**  "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from bodily injury, sickness or disease sustained by that person.

**F.**  If you have both Equipment Dealers Stock Floater Coverage and Garagekeepers Coverage issued by us, the definition of "customer's auto" as it applies to the **GARAGEKEEPERS COVERAGE** endorsement is changed to read as follows:

"Customer's auto" means a land motor vehicle, "trailer" or semi- trailer designed for use on public roads lawfully within your possession for service, repair, storage or safekeeping, with or without the vehicle owner's knowledge or consent. A "customer's auto" also includes any such vehicle left in your care by your "employees" and members of their households who pay for services performed.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

CA-F-5 (04-19)        Policy Number: 9840992        Transaction Effective Date: 02-01-2020

A-0143



## COMMERCIAL PACKAGE
## POLICY CHANGE ENDORSEMENT

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

Policy Effective        03-01-2020

## Business Auto Revisions

Add Additional Interest

        Vehicle #:  11
        2020 INTL MV607 VIN:  3HAEUMMLXLL402357
            PENSKE TRUCK LEASING CO LP
            & PENSKE LEASING & RENTAL CO
            RT 10 GREEN HILLS PO BOX 563
            READING,PA 19603
            Additional Insured Lessor

Add Form(s)

        CA-F-33 (10-13) Additional Insured (Lessor) with Loss Payable Clause

                    No Endorsement Charge

The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

SECRETARY              PRESIDENT

If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)        Policy Number:  9840992        Transaction Effective Date:  03-09-2020
                      Issue Date:  03-09-2020                              A-0144

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ADDITIONAL INSURED (LESSOR) WITH LOSS PAYABLE CLAUSE

This endorsement modifies insurance provided under the following:

    AUTO DEALERS COVERAGE FORM
    BUSINESS AUTO COVERAGE FORM

**Insured:**
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK   74115

**POLICY PERIOD: from** 03-01-2020    **to** 03-01-2021
WE INSURE THE "AUTO" DESCRIBED BELOW FOR THE COVERAGES INDICATED:

| Unit No. | Vehicle Description | Vehicle Identification Number (VIN) | Liability Limit | PIP Limit | Comp. Ded. | Coll. Ded. | Spec. Causes Ded. |
|---|---|---|---|---|---|---|---|
| 11 | 2020 INTL MV607 | 3HAEUMMLXLL402357 | $1,000,000 | | $1,000 | $1,000 | |

The most we will pay for any one "accident" or "loss" for Liability and/or Personal Injury Protection is the limit shown. Comprehensive, Collision, and Specified Causes of Loss coverages are on an actual cash value or cost of repair basis, whichever is less, minus the deductible shown for each covered "auto." Coverage is only applicable when an entry is made in the limit or deductible column.

SECRETARY

PENSKE TRUCK LEASING CO LP
& PENSKE LEASING & RENTAL CO
RT 10 GREEN HILLS PO BOX 563
READING PA   19603

PRESIDENT

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
CA-F-33 (10-13)      Policy Number:9840992      Transaction Effective Date:03-09-2020

A-0145

## APPLICABLE COVERAGE MODIFICATIONS:

**A. Coverage**

1. Any "leased auto" designated or described in the Schedule will be considered a covered "auto" you own and not a covered "auto" you hire or borrow.

2. For a "leased auto" described in this endorsement, **Who Is An Insured** is changed to include as an "insured" the lessor named in this endorsement. However, the lessor is an "insured" only for "bodily injury" or "property damage" resulting from the acts or omissions by:

    a. You;

    b. Any of your "employees" or agents; or

    c. Any person, except the lessor or any "employee" or agent of the lessor, operating a "leased auto" with the permission of any of the above.

3. The coverages provided under this endorsement apply to any "leased auto" described in the Schedule until the expiration date shown in the Schedule, or when the lessor or his or her agent takes possession of the "leased auto", whichever occurs first.

**B. Loss Payable Clause**

1. We will pay, as interest may appear, you and the lessor named in this endorsement for "loss" to a "leased auto".

2. The insurance covers the interest of the lessor unless the "loss" results from fraudulent acts or omissions on your part.

3. If we make any payment to the lessor, we will obtain his or her rights against any other party.

**C. Cancellation**

1. If we cancel the policy, we will mail notice to the lessor in accordance with the Cancellation Common Policy Condition.

2. If you cancel the policy, we will mail notice to the lessor.

3. Cancellation ends this agreement.

**D.** The lessor is not liable for payment of your premiums.

**E. Additional Definition**

As used in this endorsement:

"Leased auto" means an "auto" leased or rented to you, including any substitute, replacement or extra "auto" needed to meet seasonal or other needs, under a leasing or rental agreement that requires you to provide direct primary insurance for the lessor.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
CA-F-33 (10-13)          Policy Number:9840992          Transaction Effective Date: 03-09-2020

A-0146



**FEDERATED INSURANCE®**

# COMMERCIAL PACKAGE
# POLICY CHANGE ENDORSEMENT

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

Policy Effective        03-01-2020

## Business Auto Revisions

```
Delete Additional Interest

     Vehicle #:   9
     2019 DYNAMAX FORCE MOTORHOME   VIN:  1FVACXFE6JHJY7596
          VAST BANK, NA DBA VALLEY NATIONAL BANK
          12401 E 86TH ST N
          OWASSO,OK 74055
          Loss Payable


Delete Form(s)

     CA-F-9 (06-93) Loss Payable Clause And Certificate


                              No Endorsement Charge
```

The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

_____          _____
**SECRETARY**                       **PRESIDENT**

If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)          Policy Number:  9840992          Transaction Effective Date:  03-12-2020
                        Issue Date:  03-12-2020

A-0147

FEDERATED MUTUAL INSURANCE COMPANY

Home Office

121 East Park Square

Owatonna, MN  55060

(507) 455-5200

## Deletion Of Loss Payee

Name of Insured:

FIXTURES AND DRYWALL COMPANY

OF OKLAHOMA INC

5531 E ADMIRAL PL

TULSA OK  74115-8411

This is to notify you that the loss payable certificate forming a part of the indicated policy naming you loss payee is hereby cancelled for the following vehicle(s).

INSURED - Please attach this endorsement to your policy.

Description of vehicle(s):

Vehicle #9 2019 DYNAMAX FORCE MOTORHOME  1FVACXFE6JHJY7596

SECRETARY

**If this information is incorrect, please advise us at once.**

VAST BANK, NA DBA VALLEY

NATIONAL BANK

12401 E 86TH ST N

OWASSO OK   74055

PRESIDENT

**If you have any questions, please contact your Producer.**

IL-F-8.5 (07-95)                    Policy Number: 9840992                    Transaction Effective Date: 08-12-2020



**COMMERCIAL PACKAGE**
**POLICY CHANGE ENDORSEMENT**

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

Policy Effective        03-01-2020

## Business Auto Revisions

Add Additional Interest

        Vehicle #:  9
        2019 DYNAMAX FORCE MOTORHOME   VIN:  1FVACXFE6JHJY7596
            VAST BANK, NA DBA VALLEY NATIONAL BANK
            13112 SOUTH MEMORIAL DR
            BIXBY,OK 74008
            Loss Payable

Add Form(s)

        CA-F-9 (06-93) Loss Payable Clause And Certificate

                        No Endorsement Charge

The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

SECRETARY                    PRESIDENT

If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)          Policy Number:  9840992          Transaction Effective Date:  03-12-2020
                        Issue Date:  03-12-2020                                    A-0149

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE AND CERTIFICATE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM

**Insured:**
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK   74115

**POLICY PERIOD:  from**   03-01-2020      **to**   03-01-2021

THIS CERTIFIES THAT THE "AUTO" DESCRIBED BELOW IS INSURED BY US FOR THE COVERAGES INDICATED:

| Unit No. | Vehicle Description | Vehicle Identification Number (VIN) | Comp. Ded. | Coll. Ded. | Spec. Causes Ded. | Stated Amount Limit |
|---|---|---|---|---|---|---|
| 9 | 2019 DYNAMAX FORCE MOTORHOME | 1FVACXFE6JHJY7596 | $1,000 | $1,000 | | $210,000 |

Coverages are on an ACTUAL CASH VALUE or cost of repair basis, whichever is less, minus the deductible shown for each covered "auto."  If a STATED AMOUNT is indicated, the most we will pay for any one "accident" or "loss" is the limit shown.  Coverage is only applicable when an entry is made in the deductible or limit column.

LOSS PAYABLE CLAUSE

**A.** We will pay you and the loss payee named in this endorsement for a covered "loss" to a covered "auto", as interest may appear.

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy by providing at least 10 days advance written notice, or more, as may be allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest.  If we cancel the policy, we will mail you and the loss payee the same advance notice.

**D.** If we make any payment to the loss payee, we will obtain their rights against any other party.

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

SECRETARY

PRESIDENT

VAST BANK, NA DBA VALLEY
NATIONAL BANK
13112 SOUTH MEMORIAL DR
BIXBY OK   74008

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CA-F-9 (06-93)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020

Insured Copy

4-713 JAMES D KNIGHT



## COMMERCIAL PACKAGE
## POLICY CHANGE ENDORSEMENT

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

Policy Effective      03-01-2020

## Business Auto Revisions

Delete Additional Interest

       Vehicle #:  1
       2004 GMC WT5500 TRK VIN:  J8DF5C13X47700156
            VALLEY NATIONAL BANK
            4812 E 81ST ST
            TULSA,OK 74137
            Loss Payable

Delete Additional Interest

       Vehicle #:  7
       2015 FRHT BOX TRUCK  VIN:  3ALACWDT7FDGH9321
            VALLEY NATIONAL BANK
            4812 E 81ST ST
            TULSA,OK 74137
            Loss Payable


Delete Form(s)

       CA-F-9 (06-93) Loss Payable Clause And Certificate


                        No Endorsement Charge




The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

SECRETARY                    PRESIDENT

If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)          Policy Number:  9840992          Transaction Effective Date:  03-13-2020
                        Issue Date:  03-16-2020                                      A-0151

FEDERATED MUTUAL INSURANCE COMPANY
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

## Deletion Of Loss Payee

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115-8411

This is to notify you that the loss payable certificate forming a part of the indicated policy naming you loss payee is hereby cancelled for the following vehicle(s).

INSURED - Please attach this endorsement to your policy.

Description of vehicle(s):
Vehicle #1 2004 GMC WT5500 TRK  J8DF5C13X47700156
Vehicle #7 2015 FRHT BOX TRUCK  3ALACWDT7FDGH9321

SECRETARY

**If this information is incorrect, please advise us at once.**

VALLEY NATIONAL BANK
4812 E 81ST ST
TULSA OK   74137

PRESIDENT
**If you have any questions, please contact your Producer.**

IL-F-8.5 (07-95)        Policy Number: 9840992        Transaction Effective Date: 08-13-2020



# COMMERCIAL PACKAGE
# POLICY CHANGE ENDORSEMENT

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

Policy Effective        03-01-2020

## Business Auto Revisions

Add Additional Interest

        Vehicle #:  1
        2004 GMC WT5500 TRK VIN:  J8DF5C13X47700156
            VAST BANK, NA DBA VALLEY NATIONAL BANK
            13112 SOUTH MEMORIAL DR
            BIXBY,OK 74008
            Loss Payable

Add Additional Interest

        Vehicle #:  7
        2015 FRHT BOX TRUCK  VIN:  3ALACWDT7FDGH9321
            VAST BANK, NA DBA VALLEY NATIONAL BANK
            13112 SOUTH MEMORIAL DR
            BIXBY,OK 74008
            Loss Payable

Add Form(s)

        CA-F-9 (06-93) Loss Payable Clause And Certificate

                            No Endorsement Charge

The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

SECRETARY                PRESIDENT

If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)          Policy Number:  9840992              Transaction Effective Date:  03-13-2020
                        Issue Date:  03-16-2020                                          A-0153

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

## LOSS PAYABLE CLAUSE AND CERTIFICATE

This endorsement modifies insurance provided under the following:

BUSINESS AUTO COVERAGE FORM
GARAGE COVERAGE FORM

**Insured:**
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK   74115

**POLICY PERIOD:  from**   03-01-2020     **to**   03-01-2021

THIS CERTIFIES THAT THE "AUTO" DESCRIBED BELOW IS INSURED BY US FOR THE COVERAGES INDICATED:

| Unit No. | Vehicle Description | Vehicle Identification Number (VIN) | Comp. Ded. | Coll. Ded. | Spec. Causes Ded. | Stated Amount Limit |
|---|---|---|---|---|---|---|
| 1 | 2004 GMC WT5500 TRK | J8DF5C13X47700156 | $1,000 | $1,000 | | |
| 7 | 2015 FRHT BOX TRUCK | 3ALACWDT7FDGH9321 | $1,000 | $1,000 | | |

Coverages are on an ACTUAL CASH VALUE or cost of repair basis, whichever is less, minus the deductible shown for each covered "auto."  If a STATED AMOUNT is indicated, the most we will pay for any one "accident" or "loss" is the limit shown.  Coverage is only applicable when an entry is made in the deductible or limit column.

### LOSS PAYABLE CLAUSE

**A.** We will pay you and the loss payee named in this endorsement for a covered "loss" to a covered "auto", as interest may appear.

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy by providing at least 10 days advance written notice, or more, as may be allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest.  If we cancel the policy, we will mail you and the loss payee the same advance notice.

**D.** If we make any payment to the loss payee, we will obtain their rights against any other party.

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

SECRETARY

PRESIDENT

VAST BANK, NA DBA VALLEY
NATIONAL BANK
13112 SOUTH MEMORIAL DR
BIXBY OK   74008

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CA-F-9 (06-93)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020



## COMMERCIAL PACKAGE
## POLICY CHANGE ENDORSEMENT

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

Policy Effective        03-01-2020

## Business Auto Revisions

```
Delete Additional Interest

     Vehicle #:  1
     2004 GMC WT5500 TRK VIN:  J8DF5C13X47700156
          VALLEY NATIONAL BANK
          4812 E 81ST ST
          TULSA,OK 74137
          Loss Payable

Add Additional Interest

     Vehicle #:  1
     2004 GMC WT5500 TRK VIN:  J8DF5C13X47700156
          VAST BANK, NA DBA VALLEY NATIONAL BANK
          4812 E 81ST ST
          TULSA,OK 74137
          Loss Payable

Delete Additional Interest

     Vehicle #:  7
     2015 FRHT BOX TRUCK  VIN:  3ALACWDT7FDGH9321
          VALLEY NATIONAL BANK
          4812 E 81ST ST
          TULSA,OK 74137
          Loss Payable
```

Continued on Next Page

The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

SECRETARY              PRESIDENT

If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)          Policy Number:  9840992          Transaction Effective Date:  03-11-2020
                        Issue Date:  03-18-2020                                           A-0155



**COMMERCIAL PACKAGE
POLICY CHANGE ENDORSEMENT**

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

Policy Effective        03-01-2020

## Business Auto Revisions

Add Additional Interest

      Vehicle #:  7
      2015 FRHT BOX TRUCK  VIN:  3ALACWDT7FDGH9321
        VAST BANK, NA DBA VALLEY NATIONAL BANK
        4812 E 81ST ST
        TULSA,OK 74137
        Loss Payable

Add Form(s)

      CA-F-9 (06-93) Loss Payable Clause And Certificate

Delete Form(s)

      CA-F-9 (06-93) Loss Payable Clause And Certificate

                      No Endorsement Charge

The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

SECRETARY                    PRESIDENT

If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)              Policy Number:  9840992              Transaction Effective Date:  03-11-2020
                     Issue Date:  03-18-2020                    A-0156

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# LOSS PAYABLE CLAUSE AND CERTIFICATE

This endorsement modifies insurance provided under the following:

  BUSINESS AUTO COVERAGE FORM
  GARAGE COVERAGE FORM

**Insured:**
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK   74115

**POLICY PERIOD:  from**   03-01-2020     **to**   03-01-2021

THIS CERTIFIES THAT THE "AUTO" DESCRIBED BELOW IS INSURED BY US FOR THE COVERAGES INDICATED:

| Unit No. | Vehicle Description | Vehicle Identification Number (VIN) | Comp. Ded. | Coll. Ded. | Spec. Causes Ded. | Stated Amount Limit |
|---|---|---|---|---|---|---|
| 1 | 2004 GMC WT5500 TRK | J8DF5C13X47700156 | $1,000 | $1,000 | | |
| 7 | 2015 FRHT BOX TRUCK | 3ALACWDT7FDGH9321 | $1,000 | $1,000 | | |

Coverages are on an ACTUAL CASH VALUE or cost of repair basis, whichever is less, minus the deductible shown for each covered "auto."  If a STATED AMOUNT is indicated, the most we will pay for any one "accident" or "loss" is the limit shown.  Coverage is only applicable when an entry is made in the deductible or limit column.

LOSS PAYABLE CLAUSE

**A.** We will pay you and the loss payee named in this endorsement for a covered "loss" to a covered "auto", as interest may appear.

**B.** The insurance covers the interest of the loss payee unless the "loss" results from conversion, secretion or embezzlement on your part.

**C.** We may cancel the policy by providing at least 10 days advance written notice, or more, as may be allowed by the CANCELLATION Common Policy Condition.

Cancellation ends this agreement as to the loss payee's interest.  If we cancel the policy, we will mail you and the loss payee the same advance notice.

**D.** If we make any payment to the loss payee, we will obtain their rights against any other party.

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

SECRETARY

PRESIDENT

VAST BANK, NA DBA VALLEY
NATIONAL BANK
4812 E 81ST ST
TULSA OK   74137

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CA-F-9 (06-93)          Policy Number: 9840992          Transaction Effective Date: 03-01-2020

FEDERATED MUTUAL INSURANCE COMPANY

Home Office

121 East Park Square

Owatonna, MN  55060

(507) 455-5200

## Deletion Of Loss Payee

Name of Insured:

FIXTURES AND DRYWALL COMPANY

OF OKLAHOMA INC

5531 E ADMIRAL PL

TULSA OK  74115-8411

This is to notify you that the loss payable certificate forming a part of the indicated policy naming you loss payee is hereby cancelled for the following vehicle(s).

INSURED - Please attach this endorsement to your policy.

Description of vehicle(s):

Vehicle #1 2004 GMC WT5500 TRK  J8DF5C13X47700156

Vehicle #7 2015 FRHT BOX TRUCK  3ALACWDT7FDGH9321

**SECRETARY**

**If this information is incorrect, please advise us at once.**

VALLEY NATIONAL BANK

4812 E 81ST ST

TULSA OK   74137

**PRESIDENT**

**If you have any questions, please contact your Producer.**

IL-F-8.5 (07-95)          Policy Number: 9840992          Transaction Effective Date: 08-13-2020



# COMMERCIAL PACKAGE
# POLICY CHANGE ENDORSEMENT

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

Policy Effective        03-01-2020

## Business Auto Revisions

```
Delete Commercial Vehicle          Return Premium:  $887

    Vehicle #:  2
    2005 GMC 2500 VAN                  VIN:  1GTGG25V651170276

    Return Certified Acts of Terrorism Premium Total      $1

                   Total Endorsement Credit      $888

              This will appear on your next bill
```

The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

SECRETARY            PRESIDENT

If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)        Policy Number:  9840992        Transaction Effective Date:  03-25-2020
                      Issue Date:  04-14-2020                                A-0159

Insured Copy

4-713 JAMES D KNIGHT



### COMMERCIAL PACKAGE
### POLICY CHANGE ENDORSEMENT

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN  55060
(507) 455-5200

Name of Insured:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK  74115

Policy Effective        03-01-2020

## Business Auto Revisions

Add Commercial Vehicle                    Additional Premium:  $1,027
Add Liability Coverage
Add Collision Coverage
Add Comprehensive Coverage

    Vehicle #:  12
    2015 FORD ESCAPE                    VIN:  1FMCUOG79FUA19129
      TULSA-TULSA, OK 74115
      Type:  Commercial Auto
      Class:  01489                    Cost New:  $24,760
      Collision Deductible:  $1,000
      Comprehensive Deductible:  $1,000

    Additional Certified Acts of Terrorism Premium Total          $2

              Total Endorsement Charge      $1,029

              This will appear on your next bill

The above changes to your policy have been made.
All other conditions and provisions remain unchanged.

SECRETARY                PRESIDENT

If you have any questions,
please contact your
Producer.

IL-F-4 (09-99)          Policy Number:  9840992          Transaction Effective Date:  05-26-2020
                        Issue Date:  05-26-2020                                    A-0160

# EXHIBIT "B"



**FEDERATED MUTUAL INSURANCE COMPANY**
121 East Park Square, Owatonna, MN 55060
(507) 455-5200

# DECLARATIONS
# COMMERCIAL UMBRELLA LIABILITY POLICY

MUTUAL COMPANY PARTICIPATING NONASSESSABLE POLICY

Policy No. 9840993

Account No. 376-020-4

Item 1. Named Insured and Address:
FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK   74115

CERTIFIED TO BE A TRUE AND CORRECT
COPY OF THE ORIGINAL POLICY

*Joanne Foxford*

Item 2. Policy Period:  (Mo. Day Yr.)
From  03-01-2020    to 03-01-2021
    12:01 A.M., standard time at the address of the named insured as stated herein.

The named insured is:
    Corporation

Business of named insured is:

| | | |
|---|---|---|
| Item 3. | **$6,000,000** | Occurrence Limit |
| Item 4. | **$6,000,000** | Aggregate Limit |
| Item 5. | **$8,908** | Annual Premium |

CERTIFIED ACTS OF
TERRORISM PREMIUM:                          **$36**

Item 6.   **Schedule of Underlying Insurance Policies.**

| Type of Insurance | Limits of Liability | | Insurer - Federated unless otherwise indicated. |
|---|---|---|---|
| | Per Occurrence | Aggregate | |
| **GENERAL LIABILITY** | | | |
| [X] Commercial General Liability | **$1,000,000** | **$2,000,000** | |
| [ ] Businessowners | | | |
| [ ] Dwelling | | | |
| [ ] Dwelling | | | |
| [ ] Dwelling | | | |
| **AUTO LIABILITY** | | | |
| [X] Business Auto | **$1,000,000** | | |
| [ ] Auto Dealers Coverage Form | | | |
| [ ] Businessowners | | | |
| [ ] Personal Auto | | | |
| **OTHER UNDERLYING INSURANCE** | | | |
| [ ] Equipment Dealers Stock Floater, Coverage B - Property of Others | | | |
| [ ] Garagekeepers | | | |
| [ ] Legal Liability - Building | | | |

| EMPLOYERS LIABILITY | Limits of Liability | |
|---|---|---|
| [X] Employers Liability | $1000000/1000000/1000000 | |
| [ ] State Fund | | |
| [ ] Self-insured Work Comp | | |

Endorsement(s) attached hereto:    See Schedule of Forms and Endorsements Attached

MUTUALS - PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY: No Contingent Liability:
This policy is nonassessable.  The policyholder is a member of the Company and shall participate,  to the extent and upon the conditions  fixed and determined by the  Board  of  Directors in  accordance with  the provisions of law, in the distribution of dividends so fixed and determined.
MUTUAL - MEMBERSHIP AND VOTING NOTICE:
The insured is notified  that  by virtue of this policy,  he or she is a member of the  Federated  Mutual  Insurance Company of Owatonna, Minnesota, and is entitled to vote either in person or by proxy at any and all meetings of said Company.  The Annual Meetings are held in its Home Office in Owatonna,  Minnesota, on the third Tuesday of April in each year at ten o'clock A.M.

   **In Witness Whereof,** the Company has caused this policy to be executed and attested.


**SECRETARY**                    **PRESIDENT**


This policy consists of: (1) this Declarations; (2) the Schedule of Forms and Endorsements, if attached; and (3) all forms and endorsements listed on this Declarations or, if attached, the Schedule of Forms and Endorsements.

CU-F-1 (01-17)              Policy Number: 9840993              Transaction Effective Date: 03-01-2020

A-0163

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# COMMERCIAL UMBRELLA LIABILITY POLICY

ADDITIONAL NAMED INSUREDS ENDORSEMENT

The Named Insured shown in the Declarations includes the person(s) or organization(s) designated below, subject to the following additional policy conditions:

1. The Named Insured shown in the Declarations is authorized to act for additional named insured(s) in all matters relating to this insurance.

2. If the Named Insured shown in the Declarations becomes insolvent or bankrupt, the additional named insured(s) agree to pay us any premium for this insurance.

3. This endorsement will not waive any rights of recovery as a claimant which would be valid, if not shown as an additional named insured.

4. Knowledge or discovery by any insured (including any partner or officer) shall be considered knowledge or discovery made by all insureds.

5. The Named Insured shown in the Declarations declares that all firms named in the policy (named insureds and additional named insureds) are owned or financially controlled by the same interests.

**Names of Additional Named Insureds:**

| Entity No. | Name of Insured | Entity Type | F.E.I.N |
|---|---|---|---|
| 1 | FIXTURES AND DRYWALL COMPANY OF OKLAHOMA INC | Corporation | 73-1112460 |
| 1* | FADCO INC | Corporation | 73-1112460 |
| 2 | FADCO OF ARKANSAS LLC | Limited Liability Co. | 26-4407293 |
| 3 | VINCENT MILLWORKS LLC | Limited Liability Co. | 11-3771401 |

* Additional trade name of the legal entity

A-0164

**FEDERATED INSURANCE COMPANIES**

# TERRORISM RISK INSURANCE ACT

# POLICYHOLDER DISCLOSURE NOTICE

Coverage for acts of terrorism is included in your policy. You are hereby notified that under the Terrorism Risk Insurance Act, as amended in 2015, the definition of act of terrorism has changed. As defined in Section 102(1) of the Act: The term "act of terrorism" means any act or acts that are certified by the Secretary of the Treasury - in consultation with the Secretary of Homeland Security, and the Attorney General of the United States - to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property, or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of certain air carriers or vessels or the premises of a United States mission; and to have been committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

Where coverage is provided by this policy for losses resulting from certified acts of terrorism, such losses may be partially reimbursed by the United States Government under a formula established by the Terrorism Risk Insurance Act, as amended. However, your policy may contain other exclusions which might affect your coverage, such as an exclusion for nuclear events. Under the formula, the United States Government generally reimburses 85% through 2015; 84% beginning on January 1, 2016; 83% beginning on January 1, 2017; 82% beginning on January 1, 2018; 81% beginning on January 1, 2019 and 80% beginning on January 1, 2020, of covered terrorism losses exceeding the statutorily established deductible paid by the insurance company providing the coverage.

The portion of your annual premium that is attributable to coverage for certified acts of terrorism is shown in the Declarations Page of your policy.

The Terrorism Risk Insurance Act, as amended, contains a $100 billion cap that limits U.S. Government reimbursement as well as insurers' liability for losses resulting from certified acts of terrorism when the amount of such losses exceeds $100 billion in any one calendar year. If the aggregate insured losses for all insurers exceed $100 billion, your coverage may be reduced.

Insured Copy

## SCHEDULE OF FORMS AND ENDORSEMENTS

| Title as on Form or Endorsement | Form Edition |
|---|---|
| Additional Named Insureds Endorsement | CU-F-3 (10-08) |
| Terrorism Risk Insurance Act Policyholder Disclosure Notice | IL-F-38 (02-15) |
| Waiver Of Subrogation | CU-F-112 (10-08) |
| Designated Additional Insured and Primary and Noncontributory Endorsement | CU-F-127 (07-18) |
| Commercial Umbrella Coverage Form | CU-F-2 (10-08) |
| *Special Endorsement | CU-F-5 (10-08) |
| Personal Use of Company Owned Auto or Watercraft - Designated Individuals | CU-F-109 (12-11) |
| Fungi or Bacteria Exclusion | CU-F-64 (07-09) |
| Exclusion Of Punitive Damages Related To A Certified Act Of Terrorism | CU-F-91 (01-15) |
| Cap on Losses From Certified Acts Of Terrorism | CU-F-92 (01-15) |
| Cond Excl - Terrorism Involving Nucl, Bio, or Chem Terrorism | CU-F-93 (01-15) |
| Oklahoma Changes | CU-F-119 (07-12) |
| Non-employment Related Discrimination or Harassment Coverage | CU-F-120 (07-13) |
| Oklahoma Changes-Cancellation And Nonrenewal | IL-F-56 (OK) (09-17) |

WF-50 (08-78)          Policy Number: 9840993          Transaction Effective Date: 03-01-2020

A-0166

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# WAIVER OF SUBROGATION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

In the event of any payment under this policy, the Company agrees to waive its right under the subrogation condition against:

```
ROBINS & MORTON GROUP
6900 DALLAS PKWY STE 100
PLANO TX   75024
```

its subsidiaries, directors, agents or employees, except when the payment results from the sole negligence of

```
ROBINS & MORTON GROUP
6900 DALLAS PKWY STE 100
PLANO TX   75024
```

its subsidiaries, agents or employees.

**Insured:**

FIXTURES AND DRYWALL COMPANY
OF OKLAHOMA INC
5531 E ADMIRAL PL
TULSA OK   74115

**FEDERATED MUTUAL INSURANCE COMPANY**
Home Office
121 East Park Square
Owatonna, MN   55060
(507) 455-5200

CU-F-112 (10-08)          Policy Number: 9840993          Transaction Effective Date: 03-01-2020

A-0167

**FEDERATED MUTUAL INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## DESIGNATED ADDITIONAL INSURED AND PRIMARY AND NONCONTRIBUTORY ENDORSEMENT

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

### SCHEDULE

Name of Person(s) or Organization(s):
ROBINS & MORTON GROUP
6900 DALLAS PKWY STE 100
PLANO TX    75024

**A.** Each person or organization shown in the Schedule is an additional insured for **A.** Excess Liability Coverages, but only to the extent that person or organization qualifies as an additional insured under Paragraph **A.2.** in Section **IV.** Who Is An Insured.

**B.** With respect to any person or organization shown in the Schedule and qualifying as an additional insured as described in **A.** above, paragraph **J.** Other Insurance of Section **VII.** Conditions is deleted and replaced by the following:

    **J.** Other Insurance

    The coverage provided under this policy is excess over any other insurance or self insurance which covers any part of the injury or damage except insurance written specifically as excess coverage over the limits of this policy.

    However, with respect to any person or organization shown in the Schedule and qualifying as an additional insured under Paragraph **A.2.** in Section **IV.** Who Is An Insured, the coverage provided under this policy is primary to and will not seek contribution from any other insurance available to that additional insured provided that:

    **(1)** The additional insured is a Named Insured under such other insurance; and

    **(2)** You have agreed in writing in a contract or agreement that this insurance would be primary and would not seek contribution from any other insurance available to the additional insured.

All other terms, conditions and exclusions remain unchanged.

## COMMERCIAL UMBRELLA LIABILITY POLICY

### THIS POLICY IS NON-ASSESSABLE



FEDERATED MUTUAL
**INSURANCE COMPANY**
HOME OFFICE: OWATONNA
MINNESOTA  55060

**This policy is valid only when a Commercial Umbrella Liability Declarations is attached.**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties, and what is and is not covered.

Throughout this policy the words "you", "your" and "yours" refer to the Named Insured shown in the Declarations, and any other person or organization qualifying as a Named Insured in **SECTION IV. WHO IS AN INSURED**. The words "we", "us" and "our" mean the Company providing this insurance.

The word "insured" means any person or organization qualifying as an insured under **SECTION IV. WHO IS AN INSURED**.

Other words and phrases that appear in quotation marks have special meaning. Refer to **SECTION VI. DEFINITIONS**.

### SECTION I. COVERAGES

#### A. EXCESS LIABILITY COVERAGES

We will pay on behalf of the insured those sums the insured becomes legally obligated to pay as damages that are in excess of the applicable limits of "underlying insurance" because of "bodily injury", "property damage" or "personal and advertising injury":

   **1.** that occurs during the policy period shown on the Commercial Umbrella Liability Declarations; and

   **2.** that is covered by "underlying insurance".

In the event of reduction or exhaustion of the aggregate limits of liability under "underlying insurance" by reason of losses paid thereunder, this policy will, subject to the terms and conditions of the "underlying insurance":

   **a.** in the event of reduction, continue in force as excess of the reduced "underlying insurance"; and

   **b.** in the event of exhaustion, continue in force as "underlying insurance".

If the limit of insurance available to the insured under the applicable "underlying insurance" is greater than the amount stated in the Declarations, this policy will apply as excess of the greater amount.

#### B. ADDITIONAL LIABILITY COVERAGES

Except as excluded under SECTION III., we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages:

   **1.** because of an "allegation" of discrimination or harassment. The discrimination or harassment must have occurred during the policy period shown on the Commercial Umbrella Liability Policy Declarations and not be:

   **a.** intentionally committed by you, or by any partner or executive officer, or at your or their direction; or

   **b.** directly or indirectly related to the employment, prospective employment, or leasing of any person or persons to perform work for any insured.

   **2.** from an "occurrence" during the policy period shown on the Commercial Umbrella Liability Policy Declarations arising from "bodily injury" or "property damage" from the use, loading or unloading of an "aircraft" if such "aircraft" is:

   **a.** not owned or operated by or rented or loaned to any insured; or

   **b.** chartered with a crew by or on behalf of any insured and not owned by any insured.

However, any "aircraft" being operated by any person in the course of employment by any insured or owned by such person is not covered.



A-0166

## SECTION II. DEFENSE

**A.** With respect to the insurance afforded by this policy, if no insurer of an "underlying insurance" policy is obligated to do so, we will have the right and duty to defend any suit against the insured seeking damages because of "bodily injury", "property damage" or "personal and advertising injury" even if any of the allegations of the suit are groundless, false or fraudulent. We may make any investigation and settlement of any claim or suit we deem expedient. We will not, however, be obligated to defend any suit or respond to any claim for damages after the applicable limit of this insurance has been exhausted.

**B.** With respect to any claim or suit we defend, we will pay the following to the extent that they are not covered by "underlying insurance":

1. All expenses we incur.

2. All costs taxed against the insured in the suit.

3. The cost of appeal bonds or bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

4. All reasonable expenses incurred by the insured at our request, including actual loss of earnings up to $250 a day because of time off from work.

5. Pre-judgment interest awarded against the insured on that part of the judgment we pay under this policy. If we make an offer to pay the applicable limit of insurance, we will not pay any pre-judgment interest based on that period of time after the offer.

6. All interest on the full amount of any judgment under this policy that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

These payments will not reduce the Limit of Insurance.

**C.** In any country where we may be prevented by law or otherwise from carrying out this agreement, we will pay any expense incurred with our written consent in accordance with this agreement.

## SECTION III. EXCLUSIONS

**A.** With respect to **A. EXCESS LIABILITY COVERAGES**, in addition to all exclusions contained within the applicable "underlying insurance" the following exclusions also apply and this insurance does not apply to:

1. Punitive damages awarded against an insured unless insurable by applicable law and covered by "underlying insurance".

2. Any claim or obligation under any uninsured motorists or underinsured motorists laws, unless this policy is endorsed to provide such insurance.

3. Any claim or obligation under any automobile no fault or first party personal injury laws.

4. Any claim or obligation under the Employer's Retirement Income Security Act of 1974 as now or hereafter amended.

5. Any coverage extensions that have separate limits stated in the "underlying insurance" policies. However, this excess coverage does apply to legal liability coverage provided by:

   **a.** Legal Liability - Building, or

   **b.** Garagekeepers, or

   **c.** Equipment Dealers Stock Floater, Coverage B - Property of Others,

   when you select a limit for that coverage and that coverage is scheduled as "underlying insurance". Coverage is not afforded for any coverage extensions or sublimits within **a., b.,** or **c.** above.

**B.** With respect to **B. ADDITIONAL LIABILITY COVERAGES** this insurance does not apply to:

1. **FINES OR PENALTIES** - civil or criminal fines or penalties, non-monetary relief or matters which may be deemed uninsurable according to the applicable law.

2. **INTENTIONAL ACTS** - "bodily injury", "property damage", or "personal and advertising injury" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "personal and advertising injury" resulting from the use of reasonable force to protect persons or property.

3. **LAWS** - liability imposed on the insured under any of the following laws:

   **a.** any workers compensation, unemployment compensation, disability benefits, or similar law;

   **b.** Employer's Retirement Income Security Act of 1974 as now or hereafter amended.

   Part **a.** of this exclusion does not apply to liability of others you assume under a contract.

4. **NUCLEAR ENERGY** - nuclear energy liability excluded by the Nuclear Energy Liability Exclusion printed elsewhere in this policy or an attachment thereto.

CU-F-2 (10-08)     Policy Number: 9840993     Transaction Effective Date: 03-01-2020   A-00176

5. **DAMAGE TO PROPERTY**
   "Property damage" to:

   a. Property you own, rent, or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

   b. Property loaned to you;

   c. Personal property in the care, custody or control of the insured;

   Paragraphs **a.**, **b.**, and **c.** of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days.

   Paragraphs **b.** and **c.** of this exclusion do not apply to liability assumed under a sidetrack agreement.

6. **WAR** - "Bodily injury" or "property damage", however caused, arising, directly or indirectly, out of:

   a. War, including undeclared or civil war; or

   b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

   c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

7. **LEAD AND ASBESTOS** - any injury, damage, loss, cost, payment or expense, including but not limited to, defense and investigation, of any kind arising out of, resulting from, caused by or contributed to by the actual or alleged presence or actual, alleged or threatened dispersal, release, ingestion, inhalation or absorption of asbestos or lead, asbestos or lead compounds or asbestos or lead which is or was contained or incorporated into any material or substance. This exclusion applies, but is not limited to:

   a. Any supervision, instructions, recommendations, warnings or advice given in connection with the above;

   b. Any obligation to share damages, losses, costs, payments or expenses with or repay someone else who must make payment because of such injury or damage, loss, cost, payment or expense; or

   c. Any request, order or requirement to abate, mitigate, remediate, contain, remove or dispose of asbestos or lead, asbestos or lead compounds or materials or substances containing asbestos or lead.

8. **PUNITIVE DAMAGES** - punitive damages awarded against an insured unless insurable by applicable law.

9. **POLLUTANTS** -

   a. "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

   (1) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured. However, this subparagraph does not apply to:

   (a) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot produced by or originating from equipment that is used to heat, cool or dehumidify the building, or equipment that is used to heat water for personal use, by the building's occupants or their guests;

   (b) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

   (c) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire;

   (2) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

   (3) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(a)  Any insured; or

(b)  Any person or organization for whom you may be legally responsible; or

(4)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(a)  "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of mobile equipment or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them.

This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids, are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

(b)  "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(c)  "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a hostile fire.

(5)  At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

The term premises as used herein includes any tanks, piping, pumps or dispensers which are or were at any time owned, leased or installed by any insured, wherever located except at residences primarily used for dwelling purposes.

b.  Any loss, cost or expense arising out of any:

(1)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(2)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or suit by or on behalf of a governmental authority.

Subparagraph **a.(1)** and **(4)** of this exclusion do not apply to "bodily injury" or "property damage" caused by heat, smoke or fumes from a hostile fire. As used herein, a hostile fire means one which becomes uncontrollable or breaks out from where it was intended to be.

This Pollution Exclusion applies even if such irritant or contaminant has a function in your business, operations, premises, site or location.

**10.  PHYSICAL MODIFICATIONS**

Liability costs or expenses incurred by any insured to modify any building or property in order to make said building or property more accessible or accommodating to any disabled person.

**SECTION IV. WHO IS AN INSURED**

**A.** With respect to **A. EXCESS LIABILITY COVERAGES**, refer to the applicable "underlying insurance" to determine who is an insured. However:

**1.** with respect to the ownership, maintenance, use, loading or unloading of an auto, self-propelled machine or watercraft, the following are not insureds even if covered by the "underlying insurance":

**a.** Any employee of yours not acting within the scope of their employment or any other person using an auto, self-propelled machine or watercraft which you entrusted to that employee.

**b.** Any customer of yours, or any other person using an auto, self-propelled machine or watercraft which you entrusted to a customer.

**2.** Additional insureds on the "underlying insurance" are not additional insureds on the Commercial Umbrella Policy. However, if:

**a.** the Named Insured is required by the terms of a written contract to name a person or organization as an additional insured; and

**b.** that written contract was executed prior to the commencement of the activity called for in the contract; then

the person or organization specified in the written contract is an additional insured on the Commercial Umbrella Policy subject to the terms and conditions of the additional insured endorsement on the "underlying insurance".

**B.** Each of the following is an insured under **B. ADDITIONAL LIABILITY COVERAGES** to the extent set forth below:

**1.** You, the Named Insured shown in the Declarations.

**2.** If you are a corporation, the following are also considered to be Named Insureds:

**a.** any subsidiary company acquired or formed during the policy period; and

**b.** any other entity controlled and actively managed by you or your subsidiary if the control and active management was acquired during the policy period, but only if:

**(1)** this policy is endorsed to add such subsidiary or other entity within ninety (90) days of its formation or acquisition by you, and

**(2)** such subsidiary or other entity is not insured under any other liability or indemnity policy.

**3.** Your executive officers and directors, but only with respect to their duties as your officers and directors.

**4.** Your stockholders, but only with respect to their liability as your stockholders.

**5.** Your employees, other than your executive officers, but only for acts within the scope of their employment by you.

**6.** If you are an individual, you are an insured but only for the conduct of a business of which you are the sole proprietor, and your spouse is an insured for the conduct of such a business.

**7.** If you are a partnership or joint venture:

**a.** the partnership or joint venture so named;

**b.** any partner or member thereof, but only with respect to their liability as a partner or member; and

**c.** the spouse of any partner, but only with respect to liability as a spouse of a partner.

**8.** If you are designated in the Declarations as a limited liability company, you are an insured. Your members are also insureds, but only with respect to their liability as members. Your managers are insureds, but only with respect to their duties as your managers.

Except with respect to our Limit of Insurance, the insurance afforded applies separately to each insured against whom claim is made or suit is brought.

CU-F-2 (10-08)        Policy Number: 9840993        Transaction Effective Date: 03-01-2020

A-0173

## SECTION V. LIMITS OF INSURANCE

**A.** The Occurrence Limit stated in the Declarations is the most we will pay for each ″accident″, ″allegation″, or ″occurrence″ regardless of the number of:

  **1.** insureds;

  **2.** claims made or suits brought;

  **3.** persons or organizations making claims or bringing suit; or

  **4.** ″underlying insurance″ policies or types of applicable underlying coverage.

However, with regards to a person or organization qualifying as an additional insured under this policy, whether endorsed as such or not, the most we will pay on behalf of the additional insured is the lesser of the following:

  **1.** the Occurrence Limit stated in the Declarations, or

  **2.** the amount by which the minimum amount of coverage specifically stated in a written contract exceeds the limit of the ″underlying insurance″.

**B.** There is no limit to the number of ″accidents″, ″allegations″, or ″occurrences″ during the policy period for which claims may be made, except that we will not pay more than the Aggregate Limit stated in the Declarations for all claims during the policy period which arise out of:

  **1.** the products-completed operations hazard as defined within the applicable ″underlying insurance″;

  **2.** work you performed as defined within the applicable ″underlying insurance″;

  **3.** products as defined within the applicable ″underlying insurance″; or

  **4.** ″bodily injury″ by disease sustained by your employees arising out of and in the course of their employment by you.

The aggregate limit of our liability applies separately to **4** above.

## SECTION VI. DEFINITIONS

The following definitions apply to this policy:

**A.** ″Accident″ includes continuous or repeated exposure to the same conditions resulting in ″bodily injury″ or ″property damage″.

**B.** ″Advertisement″ means a notice that is broadcast or published to the general public or specific market segments about your goods, products or services for the purpose of attracting customers or supporters. For the purposes of this definition:

  **1.** Notices that are published include material placed on the Internet or on similar electronic means of communication; and

  **2.** Regarding web-sites, only that part of a website that is about your goods, products or services for the purpose of attracting customers or supporters is considered an advertisement.

**C.** ″Aircraft″ means any heavier than air or lighter than air vehicle designed to transport persons or property through the air.

**D.** ″Allegation″ means:

  **1.** the lodging of a written complaint or charge:

    **a.** with you or one of your employees; or

    **b.** with any government agency; or

  **2.** your receipt of a summons for the commencement of a civil action.

**E.** ″Bodily Injury″:

  **1.** With regards to **SECTION I. COVERAGES, A. EXCESS LIABILITY COVERAGES**, refer to the definition contained within the applicable ″underlying insurance″.

  **2.** With regards to **SECTION I. COVERAGES, B. ADDITIONAL LIABILITY COVERAGES**, the following definition applies:

    ″Bodily injury″ means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

**F.** ″Occurrence″ means an ″accident″, including continuous or repeated exposure to substantially the same general harmful conditions.

**G.** ″Personal and Advertising Injury″:

  **1.** With regards to **SECTION I. COVERAGES, A. EXCESS LIABILITY COVERAGES**, refer to the definition contained within the applicable ″underlying insurance″.

  **2.** With regards to **SECTION I. COVERAGES, B. ADDITIONAL LIABILITY COVERAGES**, the following definition applies:

    ″Personal and Advertising Injury″ means injury, including consequential ″bodily injury″, arising out of one or more of the following offenses:

    **1.** False arrest, detention or imprisonment;

    **2.** Malicious prosecution;

CU-F-2 (10-08)     Policy Number: 9840993     Transaction Effective Date: 03-01-2020

A-0174

3. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

4. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

5. Oral or written publication, in any manner, of material that violates a person's right of privacy;

6. The use of another's advertising idea in your "advertisement"; or

7. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

H. "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

I. "Property Damage":

1. With regards to **SECTION I. COVERAGES, A. EXCESS LIABILITY COVERAGES**, refer to the definition contained within the applicable "underlying insurance".

2. With regards to **SECTION I. COVERAGES, B. ADDITIONAL LIABILITY COVERAGES**, the following definition applies:

"Property damage" means:

1. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

2. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For the purpose of this insurance, electronic data is not tangible property.

As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

J. "Underlying insurance" means policies of insurance listed in the Schedule of Underlying Insurance Policies in the Declarations.

## SECTION VII. CONDITIONS

A. **Appeals**

If the insured or any insurer who provides the applicable "underlying insurance" elects not to appeal a judgment which exceeds the "underlying insurance" limit, we may elect to do so at our own expense. We will be liable for the taxable costs and disbursements and interest incidental thereto, but in no event shall this provision increase our liability beyond our applicable Limit of Insurance.

B. **Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of any obligations under this policy.

C. **Cancellation or Nonrenewal**

1. The first Named Insured shown in the Declarations may cancel this policy by surrender thereof to us or to any of our authorized agents or by mailing to us advance written notice of cancellation.

2. We may cancel this policy by mailing to the first Named Insured written notice of cancellation at least:

a. 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

b. 30 days before the effective date of cancellation if we cancel for any other reason permitted by the laws or regulations applicable in your state.

3. We will mail our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If we decide not to renew this policy, we will mail to you written notice of nonrenewal at least 30 days before the expiration date.

7. If notice is mailed, proof of mailing will be sufficient proof of notice.

A-0175

**D.   Changes**

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized to make changes in the terms of this policy with our consent. This policy's terms can be amended or waived only by endorsement issued by us and made a part of this policy.

**E.   Conformity With The Law**

The terms of this policy which are in conflict with the law of the state wherein this policy is issued are hereby amended to conform to such law.

**F.   Duties In The Event Of Occurrence, Claim Or Suit**

1.   You must see to it that we are notified promptly of an "accident", "allegation" or "occurrence" which may result in a claim. Notice should include:

   a.   how, when and where the "accident", "allegation" or "occurrence" took place; and

   b.   the names and addresses of any injured persons and witnesses.

   Notice of an "accident", "allegation" or "occurrence" is not notice of a claim.

2.   If a claim is made or suit is brought against any insured, you must see to it that we receive prompt written notice of the claim or suit.

3.   You and any other involved insured must:

   a.   immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or suit;

   b.   authorize us to obtain records and other information;

   c.   cooperate with us in the investigation, settlement or defense of the claim or suit; and

   d.   assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may apply.

4.   You or anyone else representing your business will not, except at your own cost, voluntarily make a payment, assume any obligation, enter into any settlement agreement, or incur any expense, other than for first aid, without our consent.

**G.   Examination Of Your Books And Records**

We may examine and audit your books and records as they relate to this policy at any time during the policy period and up to three years afterward.

**H.   Legal Action Against Us**

No person or organization has a right under this policy:

1.   To join us as a party or otherwise bring us into a suit asking for damages from an insured; or

2.   To sue us on this policy unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this policy or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

**I.   Maintenance Of Underlying Insurance**

1.   While this policy is in effect, you will maintain in force the "underlying insurance" as collectible insurance, except for reduction of aggregate limits solely as the result of payment of claims during the policy period.

2.   If you neglect to maintain the "underlying insurance" as required, this policy will be construed as though such "underlying insurance" was in force and collectible at the time of the "accident" or "occurrence".

3.   If the "underlying insurance" becomes uncollectible due to the insolvency of the insurer of "underlying insurance", this policy will be construed as though such "underlying insurance" was in force and collectible at the time of the "accident" or "occurrence".

**J.   Other Insurance**

The coverage provided under this policy is excess over any other insurance or self insurance which covers any part of the injury or damage except insurance written specifically as excess coverage over the limits of this policy.

**K.   Premiums**

The first Named Insured shown in the Declarations:

1.   is responsible for the payment of all premiums; and

2.   will be the payee for any return premiums we pay.

**L.   Representations**

By accepting this policy, you agree:

   a.   The statements in the Declarations are accurate and complete;

   b.   Those statements are based upon representations you made to us;

   c.   We have issued this policy in reliance upon your representations; and

   d.   This policy embodies all agreements existing between you and us or any of our agents relating to this insurance.

A-00176

**M.  Transfer Of Rights Of Recovery Against Others To Us**

If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring suit or transfer those rights to us and help us enforce them.

**N.  Transfer Of Your Right And Duties Under This Policy**

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is

appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

**O.  Two Or More Umbrella Policies Issued By Us**

If this policy and any other umbrella policy issued by us or any company affiliated with us:

**1.**  applies to the same "accident", "allegation" or "occurrence"; and

**2.**  affords coverage from two or more umbrella policies to any insured or combination of insureds,

the aggregate maximum Limit of Insurance under all umbrella policies shall not exceed the highest applicable Limit of Insurance under any one umbrella policy.

**MUTUALS - PARTICIPATION CLAUSE WITHOUT CONTINGENT LIABILITY: No Contingent Liability:**

This policy is nonassessable. The policyholder is a member of the Company and shall participate, to the extent and upon the conditions fixed and determined by the Board of Directors in accordance with the provisions of law, in the distribution of dividends so fixed and determined.

**MUTUALS - MEMBERSHIP AND VOTING NOTICE:**

The insured is notified that by virtue of this policy, he or she is a member of the Federated Mutual Insurance Company of Owatonna, Minnesota, and is entitled to vote either in person or by proxy at any and all meetings of said Company. The Annual Meetings are held in its Home Office in Owatonna, Minnesota, on the first and third Tuesday of April in each year at ten o'clock A.M.

**In Witness Whereof,**        the Company has caused this policy to be executed and attested, and, if required by state law, this policy shall not be valid unless countersigned by a duly authorized representative of the Company.

SECRETARY                              PRESIDENT

## NUCLEAR ENERGY LIABILITY EXCLUSION

### (BROAD FORM)

(This is the exclusion referred to in SECTION III. EXCLUSION E. - NUCLEAR ENERGY)

1. This policy does not apply:

   a. Under any Liability Coverage, to "bodily injury" or "property damage"

      (1) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) resulting from the "hazardous properties" or "nuclear material" and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   c. Under any Liability Coverage, to "bodily injury" or "property damage" resulting from the "hazardous properties" of "nuclear material", if

      (1) the "nuclear material" (a) is at any "nuclear facility" owned by, or operated by or on behalf of, an insured or (b) has been discharged or dispersed therefrom;

      (2) the "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      (3) the "bodily injury" or "property damage" arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility", but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this endorsement:

   "hazardous properties" include radioactive, toxic or explosive properties.

   "nuclear material" means "source material", "special nuclear material" or "by-product material".

   "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

   "waste" means any waste material (a) containing "by-product material" other than the tailings or waste produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and (b) resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility".

   "nuclear facility" means

   a. any "nuclear reactor"

   b. any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing "spent fuel", or (3) handling, processing or packaging waste

   c. any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235; or

   d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

   and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operation.

   "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

   "property damage" includes all forms of radioactive contamination of property.

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

45 DAY CANCELLATION AND NONRENEWAL & 10 DAY NOTICE DUE TO
NON-PAYMENT OF PREMIUM.

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

CU-F-112 WAIVER OF SUBROGATION

ROBINS & MORTON GROUP
6900 DALLAS PKWY STE 100
PLANO TX 75024

CUSTOM CABINET MANUFACTURING & INSTALLATION. ADDITIONAL INSUREDS
INCLUDE THE ROBINS & MORTON GROUP, INTEGRIS HEALTH, AND HKS INC.

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

CU-F-127 DESIGNATED ADDITIONAL INSURED AND PRIMARY AND
NONCONTRIBUTORY ENDORSEMENT

ROBINS & MORTON GROUP
6900 DALLAS PKWY STE 100
PLANO TX 75024

CUSTOM CABINET MANUFACTURING & INSTALLATION. ADDITIONAL INSUREDS
INCLUDE THE ROBINS & MORTON GROUP, INTEGRIS HEALTH, AND HKS INC.

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PERSONAL USE OF COMPANY OWNED AUTO, SELF-PROPELLED MACHINE OR WATERCRAFT - DESIGNATED INDIVIDUALS

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION IV. WHO IS AN INSURED**, Part A. is deleted and replaced with the following:

A.  With respect to **A. EXCESS LIABILITY COVERAGES**, refer to the applicable "underlying insurance" to determine who is an insured. However:

1.  With respect to the ownership, maintenance, use, loading or unloading of an auto, self-propelled machine or watercraft, the following are not insureds even if covered by the "underlying insurance":

    a.  Any employee of yours not acting within the scope of their employment or any other person using an auto, self-propelled machine or watercraft which you entrusted to that employee. However, this exclusion does not apply to:

        (1)  Any individual named in this endorsement, or his or her spouse who is a resident of the same household, or his or her family member for whom coverage is provided in the underlying Drive Other Car Coverage endorsement; or

        (2)  If there is no underlying Drive Other Car Coverage, any individual named in this endorsement, or his or her spouse who is a resident of the same household.

    b.  Any customer of yours or any other person using an auto, self-propelled machine or watercraft which you entrusted to a customer.

2.  Additional insureds on the "underlying insurance" are not additional insureds on the Commercial Umbrella Policy. However:

    a.  If the Named Insured is required by the terms of a written contract to name a person or organization as an additional insured and that written contract was executed prior to the commencement of the activity called for in the contract then the person or organization specified in the written contract is an additional insured on the Commercial Umbrella Policy subject to the terms and conditions of the additional insured endorsement on the "underlying insurance"; or

    b.  If any individual named in this endorsement, his or her spouse who is a resident of the same household, or his or her family member for whom coverage is provided under this endorsement is an additional insured under the "underlying insurance" for an auto, self-propelled machine or watercraft, the individual named in this endorsement, his or her spouse who is a resident of the same household, or his or her family member is also an additional insured on the Commercial Umbrella Policy subject to the terms and conditions of the additional insured endorsement on the "underlying insurance".

## NAME OF INDIVIDUAL

LARRY VINCENT

ROBERT VINCENT

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FUNGI OR BACTERIA EXCLUSION

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

With respect to **A. EXCESS LIABILITY COVERAGES** and **B. ADDITIONAL LIABILITY COVERAGES** this policy does not apply to:

1. "Bodily injury", "property damage" or "personal and advertising injury" which would not have occurred, in whole or in part, but for the actual, alleged or threatened inhalation of, ingestion of, contact with, exposure to, existence of, or presence of, any "fungi" or bacteria on or within a building or structure, including its contents, regardless of whether any other cause, event, material or product contributed concurrently or in any sequence to such injury or damage.

2. Any loss cost, or expenses arising out of the abating, testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, remediating or disposing of, or in any way responding to, or assessing the effects of, "fungi" or bacteria, by any insured or by any other person or entity.

This exclusion does not apply to any "fungi" or bacteria that are, are on, or are contained in, a good or product intended for bodily consumption.

The following definition is added to the **Section VI. Definitions:**

"Fungi" means any type or form of fungus, including mold or mildew, and any mycotoxins, spores, scents, or byproducts produced or released by fungi, but does not include any fungi intended to be edible.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

## EXCLUSION OF PUNITIVE DAMAGES RELATED TO A CERTIFIED ACT OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** The following exclusion is added:

This insurance does not apply to:

**TERRORISM PUNITIVE DAMAGES**

Damages arising, directly or indirectly, out of a "certified act of terrorism" that are awarded as punitive damages.

**B.** The following definition is added:

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**C.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CU-F-91 (01-15)          Policy Number: 9840993          Transaction Effective Date: 03-01-2020

A-0184

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** If aggregate insured losses attributable to terrorist acts certified under the federal Terrorism Risk Insurance Act exceed $100 billion in a calendar year and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

"Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in accordance with the provisions of the federal Terrorism Risk Insurance Act, to be an act of terrorism pursuant to such Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

**1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

**2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**B.** The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CU-F-92 (01-15)          Policy Number: 9840993          Transaction Effective Date: 03-01-2020

A-0185

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# CONDITIONAL EXCLUSION OF TERRORISM INVOLVING NUCLEAR, BIOLOGICAL OR CHEMICAL TERRORISM (RELATING TO DISPOSITION OF FEDERAL TERRORISM RISK INSURANCE ACT)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

**A.** Applicability Of The Provisions Of This Endorsement

1. The provisions of this endorsement will become applicable commencing on the date when any one or more of the following first occurs. But if your policy (meaning the policy period in which this endorsement applies) begins after such date, then the provisions of this endorsement become applicable on the date your policy begins.

   **a.** The federal Terrorism Risk Insurance Program ("Program"), established by the Terrorism Risk Insurance Act, has terminated with respect to the type of insurance provided under this Coverage Part; or

   **b.** A renewal, extension or replacement of the Program has become effective without a requirement to make terrorism coverage available to you and with revisions that:

   **(1)** Increase our statutory percentage deductible under the Program for terrorism losses. (That deductible determines the amount of all certified terrorism losses we must pay in a calendar year, before the federal government shares in subsequent payment of certified terrorism losses.); or

   **(2)** Decrease the federal government's statutory percentage share in potential terrorism losses above such deductible; or

   **(3)** Redefine terrorism or make insurance coverage for terrorism subject to provisions or requirements that differ from those that apply to other types of events or occurrences under this policy.

2. If the provisions of this endorsement become applicable, such provisions:

   **a.** Supersede any terrorism endorsement already endorsed to this policy that addresses "certified acts of terrorism" and/or "other acts of terrorism", but only with respect to an incident(s) of terrorism (however defined) which results in injury or damage that occurs on or after the date when the provisions of this endorsement become applicable (for claims made policies, such an endorsement is superseded only with respect to an incident of terrorism (however defined) that results in a claim for injury or damage first being made on or after the date when the provisions of this endorsement become applicable); and

   **b.** Remain applicable unless we notify you of changes in these provisions, in response to federal law.

3. If the provisions of this endorsement do NOT become applicable, any terrorism endorsement already endorsed to this policy, that addresses "certified acts of terrorism" and/or "other acts of terrorism", will continue in effect unless we notify you of changes to that endorsement in response to federal law.

**B.** The following definitions are added and apply under this endorsement wherever the term terrorism, or the phrase any injury or damage, are enclosed in quotation marks:

1. "Terrorism" means activities against persons, organizations or property of any nature:

   **a.** That involve the following or preparation for the following:

   **(1)** Use or threat of force or violence; or

   **(2)** Commission or threat of a dangerous act; or

   **(3)** Commission or threat of an act that interferes with or disrupts an electronic, communication, information, or mechanical system; and

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CU-F-93 (01-15)          Policy Number: 9840993          Transaction Effective Date: 03-01-2020

A-0188

**b.** When one or both of the following applies:

   **(1)** The effect is to intimidate or coerce a government or the civilian population or any segment thereof, or to disrupt any segment of the economy; or

   **(2)** It appears that the intent is to intimidate or coerce a government, or to further political, ideological, religious, social or economic objectives or to express (or express opposition to) a philosophy or ideology.

**2.** ″Any injury or damage″ means any injury or damage covered under any Coverage Part or underlying insurance to which this endorsement is applicable, and includes but is not limited to ″bodily injury″, ″property damage″, ″personal and advertising injury″, ″injury″ or ″environmental damage″ as may be defined in any applicable Coverage Part or underlying insurance.

**C.** The following exclusion is added:

**EXCLUSION OF TERRORISM**

We will not pay for ″any injury or damage″ caused directly or indirectly by ″terrorism″, including action in hindering or defending against an actual or expected incident of ″terrorism″. ″Any injury or damage″ is excluded regardless of any other cause or event that contributes concurrently or in any sequence to such injury or damage. **But this exclusion applies only when one or more of the following are attributed to an incident of ″terrorism″:**

**1.** The ″terrorism″ is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation or radioactive contamination; or

**2.** Radioactive material is released, and it appears that one purpose of the ″terrorism″ was to release such material; or

**3.** The ″terrorism″ is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

**4.** Pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the ″terrorism″ was to release such materials.

The terms and limitations of any terrorism exclusion, or the inapplicability or omission of a terrorism exclusion, do not serve to create coverage for injury or damage that is otherwise excluded under this Coverage Part.

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

CU-F-93 (01-15)　　　Policy Number: 9840993　　　Transaction Effective Date: 03-01-2020

A-0187

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OKLAHOMA CHANGES

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

The following is added to SECTION VII - CONDITIONS:

**P.**  We will not provide coverage in any case of fraud by you as it relates to this policy or any claim under this policy.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

Insured Copy

**FEDERATED INSURANCE COMPANIES**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY**

## NON-EMPLOYMENT RELATED DISCRIMINATION OR HARASSMENT COVERAGE

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA LIABILITY POLICY

**SECTION I. COVERAGES,** Part **B. ADDITIONAL LIABILITY COVERAGES,** paragraphs **1., 1.a.** and **1.b.** are deleted and replaced by the following:

**1.** because of an "allegation" of discrimination or harassment. The discrimination or harassment must have occurred during the policy period shown on the Commercial Umbrella Liability Policy Declarations or within 36 months immediately prior to the first consecutive Commercial Umbrella Liability Policy issued by us and not be:

   **a.** intentionally committed by you, or by any partner or executive officer, or at your or their direction; or

   **b.** directly or indirectly related to the employment, prospective employment, or leasing of any person or persons to perform work for any insured.

For any "allegation" of discrimination or harassment which occurred within 36 months immediately prior to the first consecutive Commercial Umbrella Liability Policy issued by us, all of the following additional conditions must apply:

   **a.** The insured had no prior knowledge of the "allegation";

   **b.** When the "allegation" occurred, a claims-made policy was in force and included coverage for non-employment related discrimination and harassment; and

   **c.** No other insurance applies.

The following is added to **Section V - LIMIT OF INSURANCE:**

**C.** The limit of insurance for any "allegation" which occurred within 36 months immediately prior to the first consecutive Commercial Umbrella Liability Policy issued by us shall be limited to whichever is less of the following:

   **1.** the prior claims-made policy limits; or

   **2.** the Occurrence Limit stated in this policy's Declarations and subject to this policy's Aggregate Limit.

**FEDERATED MUTUAL INSURANCE COMPANY**

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# OKLAHOMA CHANGES - CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

BUSINESS ERRORS AND OMISSIONS POLICY
COMMERCIAL UMBRELLA LIABILITY POLICY
EMPLOYMENT RELATED PRACTICES LIABILITY POLICY
PRINTERS ERRORS AND OMISSIONS LIABILITY POLICY

The following conditions are deleted in their entirety:

The **Cancelling this Policy During the Policy Period** condition of the Business Errors and Omissions Policy; and

The **Cancellation or Nonrenewal** condition of the Commercial Umbrella Liability Policy; and

The **Cancellation** condition of the Employment Related Practices Liability Policy; and

The **Cancellation** condition of the Printers Errors and Omissions Liability Policy.

**A.** The following condition is added:

**Cancellation**

**1.** The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

**2.** We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

  **a.** 10 days before the effective date of cancellation if we cancel for nonpayment of premium; or

  **b.** 30 days before the effective date of cancellation if we cancel for any other reason.

After coverage has been in effect for more than 45 business days or after the effective date of a renewal of this policy, no notice of cancellation will be issued by us unless it is based on at least one of the following reasons:

  **(1)** Nonpayment of premium;

  **(2)** Discovery of fraud or material misrepresentation in the procurement of the insurance or with respect to any claims submitted under it;

  **(3)** Discovery of willful or reckless acts or omissions by you that increase any hazard insured against;

  **(4)** The occurrence of a change in the risk that substantially increases any hazard insured against after insurance coverage has been issued or renewed;

  **(5)** A violation of any local fire, health, safety, building, or construction regulation or ordinance with respect to any covered property or its occupancy that substantially increases any hazard insured against;

  **(6)** A determination by the Insurance Commissioner that the continuation of the policy would place us in violation of the insurance laws of this state;

  **(7)** Your conviction of a crime having as one of its necessary elements an act increasing any hazard insured against; or

  **(8)** Loss of or substantial changes in applicable reinsurance.

**3.** We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

**4.** Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

**6.** If notice is mailed, proof of mailing will be sufficient proof of notice.

**B.** The following conditions are added and supersede any provisions to the contrary:

**1. Nonrenewal**

  **a.** If we elect not to renew this policy, we will mail or deliver written notice of nonrenewal to the first Named Insured at least 45 days before:

    **(1)** The expiration date of this policy; or

Page 1 of 2
Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IL-F-56 (OK) (09-17)          Policy Number: 9840993          Transaction Effective Date: 03-01-2020

A-0190

      **(2)** An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

  **b.** Any notice of nonrenewal will be mailed or delivered to the first Named Insured at the last mailing address known to us.

  **c.** If notice is mailed:

      **(1)** It will be considered to have been given to the first Named Insured on the day it is mailed.

      **(2)** Proof of mailing will be sufficient proof of notice.

  **d.** If notice of nonrenewal is not mailed or delivered at least 45 days before the expiration date or an anniversary date of this policy, coverage will remain in effect until 45 days after notice is given. Earned premium for such extended period of coverage will be calculated pro rata based on the rates applicable to the expiring policy.

  **e.** We will **not** provide notice of nonrenewal if:

      **(1)** We, or another company within the same insurance group, have offered to issue a renewal policy; or

      **(2)** You have obtained replacement coverage or have agreed in writing to obtain replacement coverage.

  **f.** If we have provided the required notice of nonrenewal as described in **B.1.a.** above, and thereafter extend the policy for a period of 90 days or less, we will **not** provide an additional nonrenewal notice with respect to the period of extension.

**2.** **Premium Or Coverage Changes At Renewal**

  **a.** If we elect to renew this policy, we will give written notice of any premium increase, change in deductible, or reduction in limits or coverage, to the first Named Insured, at the last mailing address known to us.

  **b.** Any such notice will be mailed or delivered to the first Named Insured at least 45 days before:

      **(1)** The expiration date of this policy; or

      **(2)** An anniversary date of this policy, if it is written for a term longer than one year or with no fixed expiration date.

  **c.** If notice is mailed:

      **(1)** It will be considered to have been given to the first Named Insured on the day it is mailed.

      **(2)** Proof of mailing will be sufficient proof of notice.

  **d.** If the first Named Insured accepts the renewal, the premium increase or coverage changes will be effective the day following the prior policy's expiration or anniversary date.

  **e.** If notice is not mailed or delivered at least 45 days before the expiration date or anniversary date of this policy, the premium, deductible, limits and coverage in effect prior to the changes will remain in effect until:

      **(1)** 45 days after notice is given; or

      **(2)** The effective date of replacement coverage obtained by the insured;

  whichever occurs first.

  If the first Named Insured then elects **not** to renew, any earned premium for the resulting extended period of coverage will be calculated pro rata at the lower of the new rates or rates applicable to the expiring policy.

  **f.** We will **not** provide notice of the following:

      **(1)** Changes in a rate or plan filed pursuant to the Property and Casualty Competitive Loss Cost Rating Act applicable to an entire class of business;

      **(2)** Changes which are based upon the altered nature or extent of the risk insured; or

      **(3)** Changes in policy forms filed with or approved by the Insurance Commissioner and applicable to an entire class of business.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.

IL-F-56 (OK) (09-17)        Policy Number: 9840993        Transaction Effective Date: 03-01-2020

A-0191

# EXHIBIT "C"

A-0192

**FEDERATED INSURANCE COMPANIES**

## OKLAHOMA UNINSURED MOTORISTS COVERAGE LAW

Oklahoma law gives you the right to buy Uninsured Motorist coverage in the same amount as your bodily injury liability coverage. THE LAW REQUIRES US TO ADVISE YOU OF THIS VALUABLE RIGHT FOR THE PROTECTION OF YOU, MEMBERS OF YOUR FAMILY, AND OTHER PEOPLE WHO MAY BE HURT WHILE RIDING IN YOUR INSURED VEHICLE. YOU SHOULD SERIOUSLY CONSIDER BUYING THIS COVERAGE IN THE SAME AMOUNT AS YOUR LIABILITY INSURANCE COVERAGE LIMIT.

Uninsured Motorist coverage, unless otherwise provided in your policy, pays for bodily injury damages to you, members of your family who live with you, and other people riding in your car who are injured by: (1) an uninsured motorist, (2) a hit-and-run motorist, or (3) an insured motorist who does not have enough liability insurance to pay for bodily injury damages to any insured person. Uninsured Motorist coverage, unless otherwise provided in your policy, protects you and family members who live with you while riding in any vehicle or while a pedestrian. THE COST OF THIS COVERAGE IS SMALL COMPARED WITH THE BENEFITS!

You may make one of four choices about Uninsured Motorist Coverage:

1. You may buy Uninsured Motorist coverage equal to your bodily injury liability coverage for $ _____ for _____ months.

2. You may buy Uninsured Motorist coverage in the amount of $25,000 for each person injured, not to exceed $50,000 for two or more persons injured in one occurrence (the smallest coverage which Oklahoma law allows) or $50,000 single limit in any one occurrence for $ _____ for _____ months.

3. You may buy Uninsured Motorist coverage in an amount less than your bodily injury liability coverage but more than the minimum levels.

4. You may reject Uninsured Motorist coverage.

Please indicate below what Uninsured Motorist coverage you want:

_____ I want the same amount of Uninsured Motorist Coverage as my bodily injury liability coverage.

_____ I want minimum Uninsured Motorist coverage ($25,000 per person/$50,000 per occurrence) or $50,000 single limit in any one occurrence.

_____ I want Uninsured Motorist coverage in the following amount:

$ _____ per person/$ _____ per occurrence or $ _____ single limit.

_____ I want to reject Uninsured Motorist coverage.

Signature _____ Stephanie Geddings – Corporate Secretary   Date 2/28/18
Proposed Insured

THIS FORM IS NOT A PART OF YOUR POLICY AND DOES NOT PROVIDE COVERAGE.

*Fixtures and Drywall Company of Oklahoma Inc. Acct# 376-0204*

Includes copyrighted material of Insurance Services Office, Inc. with its permission.
F80-104 PT.2 (OK) (04-05)     Policy Number:                Transaction Effective Date: 03/01/2018

A-0193

# EXHIBIT "D"

A-0194

## OKLAHOMA COMMERCIAL AUTO COVERAGE OPTION FORM

Name of Applicant or Policyholder   FIXTURES & DRYWALL COMPANY OF OKLAHOMA INC.

City   TULSA                                     State   OK          Account Number   376-020-4

### UNINSURED MOTORIST INSURANCE INCLUDING UNDERINSURED MOTORIST INSURANCE

Oklahoma law requires that Uninsured Motorist Insurance must be provided under every auto liability policy issued, delivered, renewed or extended in the state of Oklahoma with respect to a motor vehicle registered or principally garaged in the state for limits at least equal to the state financial responsibility requirements.

Higher Limits, **not to exceed your policy's Bodily Injury Liability limit,** may be purchased, or you may reject this coverage. This may be done by indicating your desired option below and returning this form with your signature. **All named insureds must sign this form.** If no other option is selected, your policy will be issued with basic limits applying to Uninsured Motorist Insurance.

Limit Options

Limit for directors, officers, partners, or owners of the named insured and family members who qualify as insureds

- ☐ $50,000
- ☐ $100,000
- ☐ $300,000
- ☐ $500,000
- ☑ $1,000,000

Limit for any other person who qualifies as an insured

- ☐ $50,000
- ☐ $100,000
- ☐ $300,000
- ☐ $500,000
- ☐ $1,000,000

☑ I hereby REJECT Uninsured Motorist Insurance and Underinsured Motorist Insurance for this group of persons only.

☐ I hereby REJECT all Uninsured Motorist Insurance and Underinsured Motorist Insurance.

Signature _____ Stephanie Geddings - Corporate Secretary   Date  2/28/18

Signature _____   Date _____

Your Policy will remain as issued unless you return this form indicating a change.

FEDERATED MUTUAL INSURANCE COMPANY
FEDERATED SERVICE INSURANCE COMPANY
HOME OFFICE: OWATONNA, MINNESOTA 55060

**FEDERATED INSURANCE**®

Includes copyrighted material of Insurance Services Office, Inc. with its permission.

F80-104 PT.1 (OK-C.A.) (04-05)     Policy Number:               Transaction Effective Date:  3/1/2018

A-0195

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NANCY ANAYA-SMITH, next of kin of MICHAEL BRIAN SMITH, deceased, Plaintiff/Counter-Defendant, vs. FEDERATED MUTUAL INSURANCE COMPANY, Defendant/Counterclaimant. | Case No. Civ-20-565-D The Hon. Timothy DeGiusti |

**PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE
TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Plaintiff replies and responds to Defendant's Response and Counter Motion for Summary Judgment as follows.

## I.   FEDERATED'S UM EXCLUSIONARY PROVISION ATTEMPTS TO CHANGE THE POLICY PROVISION OF WHO IS INSURED IN CONTRAVENTION OF 36 O.S. § 3636 .

Federated says coverage does not exist because "the policy speaks for itself." The Policy terms are contrary to Oklahoma law, and are thus invalid. Federated concludes that because Oklahoma UM law "does not mandate any UM/UIM coverage, but instead gives the [corporate] named insured the right to determine what coverage it wants to purchase and what coverage it does not want to purchase," it is permitted to provide UM coverage to some insureds but not others. This is inaccurate. The UM statutes requires motor vehicle insurance policies to "provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages from owners or

A-0196

operators of uninsured motor vehicles".[1] It does not say such coverage can be offered for the protection of *some* persons insured thereunder, but not others. Applying the plain, ordinary meaning of the words used in the statute, UM coverage is coextensive with liability coverage. Oklahoma requires that UM coverage be available to "persons insured thereunder", which Mr. Smith was.

At the time of the wreck, Mr. Smith was using the FADCO vehicle with permission, in the course of his employment. It is undisputed that Mr. Smith was an insured under the liability policy. Federated's Policy defines who is an "insured" for purposes of UM coverage. When the named insured is designated as a corporation, like FADCO, an insured is "[a]nyone 'occupying' a covered 'auto'.[2] A plain reading of the Policy shows UM coverage is not restricted to some, but rather is available to "anyone". Because Mr. Smith was "occupying" a covered "auto" at the time of his death, he was an insured for purposes of UM coverage.

While ignoring the plain language of the UM statute that requires UM coverage "for the protection of persons insured thereunder", Federated places undue emphasis on the language "exercise the option not to purchase uninsured motorist coverage." Relying solely on the language of 36 O.S. § 3636, it claims the phrase allows a named insured to purchase UM/UIM coverage for some insureds, but not others. Federated's interpretation of the UM statute misses the mark.

---

[1] 36 O.S. § 3636(B).
[2] Defendant's Exhibit "A", Doc. No. 18-2, p. 42.

36 O.S. § 3636(G) states that "[a]fter selection of limits, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured" the insurer is no longer required to notify the insured of its options at later policy renewals. That, of course, has nothing to do with our issue. The full context of § 3636(G) discusses an insured's options for UM coverage, saying the insured may "initially reject coverage or select[] lower limits". There is no discussion of Federated's proposed third option of providing UM for some, but not all insureds, and no Oklahoma Court has interpreted the statute to grant that option.

Mr. Smith was riding in a covered auto when he was killed, and clearly fits the definition of an insured under the terms of the policy. It is not until the limits for UM coverage are described in Form CA-F-93, on page 46 of 82 total pages, that Mr. Smith is purportedly removed from coverage. Because he was an insured, Mr. Smith is entitled to the stated UM coverage, $1 million. Federated's policy attempts to provide nothing in UM benefits to Mr. Smith, which is against Oklahoma public policy.

Federated argues that, although Mr. Smith is an insured under the plain language of the UM policy, its form CA-F-93 supersedes that language and no coverage is provided to him. Federated tries to distinguish its policy from those in other UM case law by claiming coverage is not afforded to Mr. Smith not due to an exclusion, but because he was never afforded UM coverage in the first place. Federated is wrong because Mr. Smith fits into the policy's definition of "insured", and its argument is an attempt to evade clear Oklahoma precedent. "Oklahoma courts have repeatedly held once a person is insured under an

A-0198

uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and impermissibly limit uninsured motorist coverage are void as violative of the public policy espoused by 36 O.S. §3636".[3] Federated denies that the UM Selection form (Form CA-F-93 (10-13)) "is part of, or included in, the insurance policy."[4] Nowhere in the language of the policy is any exception or qualification made that coverage is available only to directors, officers, partners or owners and their family members. Thus, the form is an attempt to remove coverage where it already exists pursuant to the Policy language. This contravenes Oklahoma Public Policy, and operates as an improper UM exclusion.

## II.   FEDERATED'S CITATION TO AUTHORITY FROM OUTSIDE JURISDICTIONS IS NEITHER BINDING NOR PERSUASIVE.

Federated cites "numerous other jurisdictions" that have upheld the terms in an "identical option form" to that in Mr. Smith's case. These other jurisdictions have caselaw and statutory frameworks quite different from Oklahoma's.

Federated cites several cases where the insureds still supplied *some* UM coverage to their employees within the statutory limit, leaving its argument on shaky ground. In *Hlasnick v. Federated*, the purchaser of a Federated policy in North Carolina opted to buy more UM insurance for the "directors, officers, partners, or owners," but not "other persons insured".[5] The same provision was present in *Crouch v. Federated* in Georgia,[6] *Worley v.*

---

[3] *Russell v. Am. States Ins. Co.*, b, 311 (10th Cir. 1987).
[4] Defendant's Response and Counter-Motion, Doc. 18, p.4 ¶ 8.
[5] *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 241–42; 539 S.E.2d 274, 275–76.
[6] 257 Ga. App. 604, 604–05, 571 S.E.2d 574, 575–76 (2002).

4

*Fender* in Illinois,[7] and *Wiley v. Universal Underwriters Ins. Co.* in Pennsylvania.[8] The Pennsylvania case *Rarick v. Federated*[9] and the Colorado case *Jarrell v. Viking Insurance Company of Wisconsin*,[10] both of which upheld similar provisions rejecting UM coverage entirely for different classes of insureds, cite robust case law from those respective state courts allowing election of UM coverage for *some* insureds. Conversely, Oklahoma courts have not—and under the current UM statute, cannot—rule in this way.

Some of the out-of-state cases Federated cites that uphold tiered exclusions are distinguishable because the state courts specifically invalidate public policy arguments for insurance cases. In *Federated v. Vaughn*, the Alabama Supreme Court upheld Federated's tiered exclusion, rejecting the plaintiff's "public-policy" argument regarding the "purpose" of Alabama's UM statute ("to maximize the number of persons who can recover UM benefits") on the grounds that Alabama's UM statute did not "qualify or restrict" the right of the insured, Farmers Tractor Company, to reject coverage, and that the Court "may not interfere with Farmers' freedom of contract based on" a public policy argument.[11] The Georgia Court of Appeals rejected a similar argument in *Jones v. Federated*.[12] By comparison, Oklahoma courts do not view public policy arguments in the insurance and

---

[7] 79 N.E.3d 173 (Ill. App. 5th Dist. 2017).

[8] 2017 WL 495794 (E.D. Pa. Feb. 6, 2017).

[9] 352 F.Supp.3d 590, 601 – 02 (E.D. Pa. Jul. 10, 2018).

[10] 2017 WL 1154025 (D. Colo. Mar. 28, 2017).

[11] *Federated Mut. Ins. Co. v. Vaughn*, 961 So. 2d 816, 819–20 (Ala. 2007).

[12] *Jones v. Federated Mut. Ins. Co.*, 346 Ga. App. 237, 243–44, 816 S.E.2d 105, 110 – 11 (2018).

A-0200

UM context with such derision. The Oklahoma Supreme Court has said as much, having found UM exclusionary language invalid on public policy grounds in numerous cases.[13]

Federated also attempts to apply the Delaware Supreme Court's holding in *Stoms v. Federated* as persuasive to Oklahoma law. This is not the case. The UM statute in Delaware is fundamentally different from that in Oklahoma. Courts in Delaware have explicitly permitted insurers to offer different levels of UM coverage for different drivers of the same vehicle, and have upheld exclusions limiting UM coverage to drivers residing in the insured's home.[14] Oklahoma has held this type of exclusion invalid,[15] and has not explicitly permitted offering of different levels of UM coverage for different drivers. Federated has not and cannot point to any Oklahoma ruling, statutory language, or public policy saying that UM coverage that applies only to "directors, officers, partners, owners, [or] family members" is valid under the UM statute.

## III. FEDERATED CANNOT ASSUME ITS UM POLICY FRAMEWORK IS VALID BECAUSE THE OKLAHOMA INSURANCE DEPARTMENT APPROVED ITS FORMS.

The specific tiered form attached to Federated's policy has never been upheld by an Oklahoma court authorized by an Oklahoma statute. Federated argues that because the Oklahoma Insurance Commissioner approved the form giving FADCO the option to exclude coverage, that somehow validates the option form.

---

[13] *See Russell*, *supra*, n. 3, *State Farm Mut. Auto. Ins. Co. v. Wendt*, 195 OK 75, 708 P. 2d 581, *Cothren v. Emasco Insurance Company*, 1976 OK 137, 555 P. 2d 1037.

[14] *Toms v. Federated Service Ins. Co.*, 125 A. 3d 1102, fn. 18.

[15] *See Morris v. America First Ins. Co.*, 2010 OK 35, 240 P. 3d 661, *State Farm Mut. Auto. Ins. Co. v. Wendt*, 195 OK 75, 708 P. 2d 581, *Cothren v. Emasco Insurance Company*, 1976 OK 137, 555 P. 2d 1037.

A-0201

Federated is mistaken. In *Barnett v. Merchant's Life Insurance Co.*, a life insurance company relied on the provisions in a rider to exclude coverage for a Marine who died of bronchopneumonia in a French hospital.[16] The rider provided that risks involving military service "are . . . not assumed under said policy," that servicemembers had to pay an extra premium, and if a deceased servicemember did not pay the extra premium before his death, his liability was limited to "legal reserve thereon, less any indebtedness to the company," also excluding "disability benefits or double indemnity."[17] The Marine's widow sued, arguing the policy violated an Oklahoma statute providing that an insurance policy alone determines the entire contract.[18] The insurance company claimed that since the insurance commissioner approved the form, it was still enforceable, but the Oklahoma Supreme Court disagreed:

> It is plain that the rider attached to the policy is prohibited under the provisions of the statute, *supra*, and that the agreement contained in the application to attach the rider is in violation of the statute. The courts uniformly hold that where a contract violates the positive legislation of the state it will not be enforced. . . . The fact that the insurance commissioner approved the form of policy with the rider attached does not in any way sustain the contention of counsel for the defendant. The insurance commissioner has no power or authority to approve a form of policy that violates a statute or constitutional provision.[19]

In the UM coverage context, the Court reaffirmed *Barnett* in *Chambers v. Walker*.[20] There, the Court cited another case, *Mutual Benefit Life Insurance Co. v. Welch*, that stated:

---

[16] *Barnett v. Merch's Life Ins. Co.*, 1922 OK 182, ¶ 2, 208 P. 271, 271–72.

[17] *Id.*, ¶ 4, 208 P. at 272.

[18] *Id.*, ¶ 7, 208 P. at 272.

[19] *Id.*, ¶¶ 9–10, 208 P. at 273.

[20] 1982 OK 128, 653 P.2d 931.

A-0202

".... Although in the first instance the Insurance Commissioner has the right and it is his duty to construe the law in determining the sphere within which he has a right to act, yet it is at last and ultimately the duty of the courts to say whether he has acted within the powers so conferred on him by the law."[21]

The Court cited *Welch* to bolster its holding that a policy provision reducing an insurer's UM coverage (in that case, by the amount of worker's compensation benefits paid) violates the UM statute and is thus invalid.[22] The same is true here. Oklahoma law does not permit insurers to use coverage exclusions that attempt to limit a UM policy's coverage to less than that of the UM statute. Even though Federated tries to assert that the policy form's exclusion of coverage would be applicable and enforceable under Oklahoma law, it cannot do so.

## IV.   PLAINTIFF IS ENTITLED TO THE FULL $1,000,000 IN UM COVERAGE.

Federated further contends that if FADCO's UM rejection is invalid, only the statutory minimum limits should be available to Plaintiff. In support of this argument, Federated relies on a case where coverage was imputed where it did not exist. In *Boerstler v, Hoover*, the insurer, Truck Insurance Exchange Co., sent a UM coverage letter to Boerstler's employer who selected coverage but did not sign the form.[23] In both *Boerstler* and the case on which it relies, the insurer violated § 3636 by not getting a signed selection of UM coverage. For that reason, UM coverage was imputed in an amount equal to the

---

[21] *Mutual Benefit Life Ins. Co. v. Welch*, 1917 OK 627, ¶ 21, 175 P. 45, 50, quoted in *Chambers*, 1982 OK 128, ¶ 14, 653 P.2d at 935.
[22] *Chambers*, 1982 OK 128, ¶ 16, 653 P.2d at 936.
[23] *Boerstler*, 1997 OK 106, ¶¶ 3–4, 943 P.2d 614, 615–16.

A-0203

limits selected and paid for. Normally, coverage is imputed when no coverage is selected and, therefore, no premium is paid. See: *May v. Nat. Union Fire Ins. Co. of Pittsburg, Pa.*[24] But here, coverage is not being "imputed." Federated offered, received payments for, and provided $1 million UM coverage. It did so in an attempt to provide UM coverage to some, but not all insureds, which it cannot do under Oklahoma law. Because this UM scheme is not permitted, the UM coverage bargained for must be provided to all insureds, including Mr. Smith.

**V.   THE VEHICLE IN WHICH MR. SMITH WAS A PASSENGER WAS UNINSURED.**

The fact that liability coverage may have existed does not necessarily mean the vehicle was insured when that liability coverage is inaccessible to the injured party. As is the case here. Plaintiff cannot bring a claim in district court against Mr. Smith's employer, FADCO, or the driver, his co-employee.[25] The Oklahoma Supreme Court in *Torres v. Kansas City Fire and Marine Ins. Co.*[26] and *Barfield v. Barfield*[27] held, <u>under circumstances identical to the present case that the employer's vehicle was uninsured</u>. The Supreme Court noted in *Barfield* that the employer and co-employees were "immune from liability *for negligence* in a civil tort action, as the employees' heirs at law have already

---

[24] 1996 OK 52, 918 P.2d 43.

[25] *See Sade v. Northern Natural Gas Co.*, 458 F. 2d 210 (10th Cir. 1972) ("Under Oklahoma law…, an injured employee's exclusive remedy is the filing of a claim for compensation benefits against his employer…and the injured employee has no right to proceed in negligence against either his employer or the latter's employees.").

[26] 1993 OK 32, 849 P.2d 40.

[27] 1987 OK 72, 742 P.2d 1107.

A-0204

received death benefits from this employer pursuant to the provisions of the Workers' Compensation Act."[28]

### CONCLUSION

There are no material facts in dispute, and the evidence presented shows that Plaintiff is entitled to Summary Judgment that there is $1 million UM coverage, as a matter of law. Plaintiff's Motion for Summary Judgment should be granted, and Defendant's Counter-Motion denied. Should the Court have doubt that the Oklahoma Supreme Court meant in these cases, this Court should certify a question to the Oklahoma Supreme Court.

WILLIAM C. MCLAIN, OBA #19349
DANIEL B. GRAVES, OBA #16656
RACHEL GUSMAN, OBA #22161
4137 S. Harvard Ave., Suite F
Tulsa, OK 74135
Telephone: (918) 359-6600
Facsimile: (918) 359-6605

REX TRAVIS, OBA #9081
MARGARET TRAVIS, OBA #14424
CASEY LAWSON, OBA #33947
info@travislawoffice.com
P.O. Box 1336
Oklahoma City, OK 73101-1336
Telephone: (405) 236-5400
Facsimile: (405) 236-5499

By
s/ Rex Travis
_____
Attorneys for plaintiff/counter-defendant

### CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of October 2020, I electronically transmitted the foregoing Plaintiff's Answer to Defendant's Counterclaim to the Clerk of Court using the ECF System for filing. Based on the current records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

s/ Rex Travis
_____

---

[28] *Barfield*, *supra*, 742 P. 2d at 1111, 1987 OK 71 at ¶ 11 (emphasis in original).

A-0205

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| NANCY ANAYA-SMITH, next of kin of MICHAEL BRIAN SMITH, deceased, <br><br> Plaintiff, <br><br> vs. <br><br> FEDERATED MUTUAL INSURANCE COMPANY, <br><br> Defendants. | Case No. CIV-20-565-D |

## DEFENDANT FEDERATED'S REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

### ARGUMENT

Plaintiff's opposition to Federated's summary judgment motion incorrectly frames the issue. Plaintiff urges the Court to treat this case as though Federated has inserted an exclusion into FADCO's policy that is not authorized by statute. Plaintiff therefore wants to Court to rule that such exclusion is void, and that the policy's $1,000,000 of UM coverage thus applies to Mr. Smith. But the entire argument is based on a false premise. This is not a case involving an exclusion. Instead, FADCO, as the named insured, chose not to purchase UM coverage for persons like Mr. Smith. It was not compelled to purchase the coverage, because UM coverage is optional in Oklahoma. FADCO did purchase such optional coverage for its officers, directors, and owners. Properly framed, the question before the court is whether Oklahoma statutes prohibit a named insured from choosing to purchase optional coverage for certain persons. As explained in Federated's motion, and further below, Oklahoma statutes do not foreclose named insureds from purchasing optional coverage for some, while opting not to purchase it for others.

A-0206

I.    **Federated's policy and offer of UM coverage were in full compliance with the Oklahoma Uninsured Motorists Act ("UMA").**

Plaintiff's response to Federated's motion argues Federated is relying upon an "exclusionary provision" that contravenes the UMA.  For this argument to succeed, the Court would have to conclude both that the UMA mandates coverage, and that there is an "exclusion" that causes the policy to omit that mandated coverage.  The problem for plaintiff is that neither of these is true.  UM coverage is purely optional under the UMA.  And there is no "exclusion" that causes the policy to omit mandated coverage.

Plaintiff's argument confuses the distinction between a statute that mandates an offer of UM coverage, as Oklahoma's does, with a statute that mandates UM coverage, something that Oklahoma's does not.  Oklahoma's UMA required only that Federated offer UM coverage.  It did.  The UMA granted the named insured the right not to purchase UM coverage, a right that FADCO exercised.  The policy, through form CA-F-93, unambiguously reflects FADCO's exercise of the statutory option not to purchase UM coverage for any person who qualifies as an insured, other than its owners, officers, and directors.[1]

Thus, Federated is not attempting to rely upon an "exclusion" that eliminates compulsory insurance coverage.  Rather, FADCO's policy simply does not provide UM

---

[1] Plaintiff's response states that "Federated denies that the UM Selection form (Form CA-F-93 (10-13)) 'is part of, or included in, the insurance policy'" and further states "Nowhere in the language of the policy is any exception or qualification made that coverage is available only to directors, officers, partners, or owners and their family members."  (Doc. 21, at p.4)  These statements are entirely erroneous and demonstrate confusion over FADCO's selection form, on the one hand, and the policy endorsement that effectuates that selection on the other.  FADCO executed a selection form that purchased UM coverage only for officers, directors, owners, etc., while rejecting it for anyone else qualifying as an insured. (Doc. 18-5, Powers Declaration, Ex. D)  The policy then included endorsement form CA-F-93 (10-13), which reflected that selection by unambiguously stating that UM coverage is provided only for officers, directors, and owners who qualify as insureds. (Doc. 18-2, Powers Declaration, Ex. A, FEDPOL0046)  The UM selection form executed by FADCO (Doc. 18-5) is not part of the policy, but endorsement form CA-F-93 (Doc.18-2, FEDPOL0046) plainly is part of the  policy.  Thus, plaintiff is erroneous in stating that Federated "denies" that form CA-F-93 is part of the policy, and is also erroneous in stating that the policy contains no language reflecting FADCO's decision to purchase coverage only for officers, directors, etc.

A-0207

coverage to Mr. Smith because FADCO exercised its statutory right not to purchase it. This case is not about the validity or invalidity of an exclusion. Nor is it about whether a policy contravenes a statute by omitting mandatory coverage. This case is about giving effect to the named insured's (FADCO's) statutory right to decide what optional coverage it wants to purchase, and what it does not want to purchase.

Federated satisfied the statutory "offer" requirement by presenting FADCO with its options. As the Named Insured, FACDO exercised its statutory right to select, reject, or opt not to purchase UM coverage by executing Federated's options forms. Plaintiff's response does not take issue with the UM rejection/selection forms that were executed by the Named Insured in this case. She does not contend that they were deficient under the UMA, or that the Named Insured failed to make a knowing decision to purchase coverage only for a limited class of individuals. In fact, Plaintiff's response does not even mention the rejection/selection forms.

Instead, Plaintiff's argument rests on the assertion that, under the UMA, an insured is faced with an "all or nothing" decision. Plaintiff's position is that a Named Insured must either purchase UM coverage for everyone who qualifies as an "insured" or for no one at all. But there is no language in the UMA to support that argument. Plaintiff singularly refers to that part of 36 O.S. § 3636(B) stating that UM coverage is "for protection of persons insured thereunder." On that basis, Plaintiff then argues that the UM coverage must therefore extend to all persons insured under the policy. Such argument, however, ignores the rest of the statute. More specifically, it ignores the fact that UM coverage is ***not compulsory***. The statute grants the named insured the right not to purchase the coverage. 36 O.S. § 3636(G). The fact that UM coverage is optional necessarily means a named insured cannot be compelled to buy it.

In referring to the "persons insured thereunder" language, Plaintiff is again pulling statutory language out of context. This language, when read in context of the statute as a whole, is plainly not mandating UM coverage for "persons insured thereunder", because

A-0208

the statute elsewhere expressly grants the named insured the right to select, reject, or opt not to purchase UM coverage.  Where the statute as a whole makes it clear that UM coverage is optional, the "persons insured thereunder" language does not prohibit a named insured from purchasing coverage for some insureds, while rejecting it for others. Indeed, numerous courts have had no difficulty concluding as much even where the statutes they were interpreting contained the same "persons insured thereunder" language found Oklahoma's statute.  Jones v. Federated Mut. Ins. Co., 816 S.E.2d 105 (Ga. App. 2018) (interpreting GA. Stat. § 33-7-11); Federated Mut. Ins. Co. v. Vaughn, 961 So.2d 816 (Ala. 2007) (interpreting Ala. Code § 32-7-23); Jarrell v. Viking Insurance Company of Wisconsin 2017 WL 1154025 (D. Colo. 2017) (interpreting Colo. Stat. § 10-4-609); Stoms v. Federated Service Ins. Co., 125 A.3d 1102 (Del. 2015) (interpreting 18 Del. C. § 3902(a)).  In each of these cases, the relevant statute included the same "persons insured thereunder" language.  And in each of these cases the court held that the statute did not prohibit a named insured from deciding to purchase UM/UIM coverage for some insureds while rejecting it for others.

Where, as here, the statute does not mandate any UM coverage at all, it is obviously not against public policy for a corporate named insured to decide to purchase UM coverage for its owners, officers, and directors who qualify as an insured, while opting not to purchase the coverage for others.  When the statute is read as a whole, it is clear that the "public policy" adopted by the Oklahoma legislature with respect to UM coverage is one recognizing that named insureds should have the choice in deciding what to purchase.  Under the statute's plain language, the named insured has the right to select, reject, or exercise the option not to purchase UM coverage.

Plaintiff's response does not meaningfully address the fact that the clear language of §3636(G) provides a named insured with those three options.  Plaintiff's response sidesteps the statute's reference to the "exercise of the option not to purchase."  To accept Plaintiff's "persons insured thereunder" argument, this Court would have to ignore and

A-0209

completely strike the third option. Oklahoma courts are bound to give meaning to all of the words used in a statute. Estes v. ConocoPhillips Co., 184 P.3d 518, 525 (Okla. 2008). This third option applies to precisely the situation here. In particular, FADCO elected to purchase UM coverage for some (officers, directors, and owners), while exercising "the option not to purchase" UM coverage for others. Because UM coverage is entirely optional, there is no basis whatsoever for invalidating the named insured's purchasing decision in this case.

Contrary to Plaintiff's argument, the issue presented in this case does not involve an allegedly obscure exclusion to coverage, "buried" in a policy, of which the named insured may not have been aware. Instead, this case involves a commercial auto liability policy, issued to a sophisticated business entity, who was specifically on notice of the coverage that it was purchasing, and who made a knowing election of such coverage. Mr. Smith was not a named insured on the policy and had no right to select or reject UM/UIM coverage. As the Named Insured, FADCO had the right to decide what coverage it wanted to purchase and pay for. Moreover, there can be no argument that Mr. Smith had any knowledge of the Federated policy prior to the loss, or had any knowledge of FADCO's coverage. FADCO, as the Named Insured, made a knowing and informed selection of the coverage that it wanted to purchase. It chose not to purchase UM coverage for individuals like Mr. Smith. To impute coverage in this case would be to thwart the contractual intent of the actual parties to the contract.

## II.     Federated's citation to foreign authority may not be binding, but it is most certainly persuasive.

As explained in Federated's motion, numerous other courts have held that, following a statutorily mandated offer of UM/UIM coverage, named insureds are entitled to purchase coverage for some who qualify as an insured, but reject coverage for all others. Plaintiff suggests that Federated's reliance on foreign authority is on "shaky ground" because the cases involved situations where the policy provided *some* UM

A-0210

coverage to employees.  But plaintiff is incorrect in offering this as distinction for the following cases:  Jones v. Federated Mut. Ins. Co., 816 S.E.2d 105 (Ga. App. 2018); Federated Mut. Ins. Co. v. Vaughn, 961 So.2d 816 (Ala. 2007); Jarrell v. Viking Ins. Co. of Wisconsin, 2017 WL 1154025 (D. Colo. 2017); Rarick v. Federated Service Ins. Co., 325 F.Supp.3d 590 (E.D. Pa. 2018); Wiley v. Universal Underwriters Ins. Co., 2017 WL 495794 (E.D. Pa. 2017).  Like this case, the named insureds in those cases rejected coverage for some insureds, while purchasing it forth others.  Because the applicable UM/UIM statutes allowed the rejection of coverage, such purchasing decisions did not contravene the statute.  Plaintiff appears to suggest that some cases, such as Stoms, involved a "fundamentally different" UM statute.  Again, that is simply not the case.  The common rational for all of these decisions is that the applicable UM statute, like Oklahoma's, made UM/UIM coverage optional and allowed the named insured to reject such coverage.  Where that is the case, there is simply no public policy basis for invalidating a named insured's decision to purchase optional coverage for some insureds, while rejecting it for others.

Moreover, underpinning each of these decisions is a fundamental acknowledgement that public policy would not be served by imposing an "all or nothing" approach towards UM/UIM coverage.  The increased premium associated with such "all or nothing" approach would actually undercut public policy, by driving insureds to reject coverage entirely and leaving everyone without such coverage. This is especially true for commercial insureds, some of which own and insure hundreds of vehicles.  Forcing corporate named insureds to choose between paying large premiums for all occupants of a fleet of vehicles, or to forego coverage entirely for anyone at all, cannot be the public policy in Oklahoma.

A-0211

**III.    The fact that the Oklahoma Insurance Department consented to Federated's use of the Form CA-F -93 is persuasive.**

Federated acknowledges courts have the ultimate say regarding whether a particular form or policy provision is in compliance with Oklahoma statutes. Nevertheless, the fact that the Oklahoma Department of Insurance – the department charged with regulating insurance policies – accepted and approved the Federated split-limit form is clearly persuasive.  *See* 36 O.S. § 3610 (prohibiting insurers from using policy forms without approval of the Insurance Commissioner).  Automobile insurance coverage (and policy forms related thereto), is tightly regulated in Oklahoma.  The Oklahoma regulator's decision to accept the split-limit form is certainly an acknowledgement by the regulators that named insureds (especially sophisticated businesses who are purchasing commercial policies) have the right to exercise their option not to purchase UM coverage for some, while purchasing it for others. Moreover, as discussed above, such an approach is entirely consistent with the acknowledged public policy in Oklahoma, which is to make UM coverage optional and to give named insureds the option of deciding what to purchase and what not to purchase.

**IV.    Plaintiff's attempts to distinguish the <u>Boerstler</u> decision fail.**

Solely in the alternative, Federated has argued that if UM coverage is found to exist for Mr. Smith in this matter, the Oklahoma Supreme Court's decision in <u>Boerstler</u> means that only the minimum statutory limits of coverage are imputed into Federated's policy. <u>Boerstler v. Hoover,</u> 943 P.2d 614, 616 (Okla. 1997). In that case, the Supreme Court firmly pronounced that when UM coverage is imputed into a policy for failure to comply with the UMA, "the mandate of § 3636 is satisfied by imputation of the minimum limits of UM coverage required by statute. To impute a higher amount of UM coverage would go beyond the mandate of § 3636." <u>Id</u>.

Plaintiff attempts to distinguish this clear and binding precedent by arguing that she is not attempting to "impute" UM coverage.  She claims, instead, to be attempting to invalidate an "exclusion" to such coverage.  But that is simply not the case.  This is not a

situation where an exclusionary term contravenes a provision in 36 O.S. § 3636.  Rather, this case involves a situation where the named insured exercised a right expressly granted by § 3636.  Plaintiff is arguing that, despite the fact that the named insured did not purchase UM coverage for persons such as Mr. Smith, coverage must nevertheless be provided.  In short, it is absolutely clear that Plaintiff is attempting to impute coverage.

Plaintiff's argument that coverage must be provided in the amount of $1,000,000 directly contradicts the public policy of Oklahoma as expressed by Boerstler's holding that where coverage does not exist, and a technical violation of the UMA occurs, the statute only requires that the policy extend minimum limits.  Boerstler, 943 P.2d at 616. Here, there can be no dispute that FADCO did not purchase, and the policy does not provide, UM coverage to persons other than officers, directors, and owners.  Plaintiff's entire case, however, is predicated on the position that the UMA mandates that coverage be extended to all persons who qualify as an insured, even if the named insured did not purchase such coverage.  If plaintiff's argument is accepted (which is should not be for reasons discussed above), then Boerstler is directly applicable and controlling because coverage that was not purchased is nevertheless being imputed into the policy.  Under that decision, coverage is limited to the minimum statutory amount.

Plaintiff also argues that this matter is distinguishable from Boerstler because, in that case, no premiums were paid for UM coverage. But plaintiff is incorrect.  Although it is true FADCO decided to purchase UM coverage for some, and paid a premium for such coverage, FADCO did not purchase UM coverage for Mr. Smith, and it most certainly did not pay a premium for such coverage. As explained in Federated's motion (Doc. 18, p. 19), and supported by the Powers Declaration (Doc. 18-1, ¶¶ 12-13), the expense of purchasing UM coverage for individuals like Mr. Smith would have resulted in approximately a 500% increase in premium to FADCO. Thus, if the Court were to determine that UM/UIM coverage exists, the situation would be identical to that addressed in Boerstler; such coverage would be "imputed" into the policy, and

8

A-0213

Oklahoma's public policy as announced in that decision would be met by extending only the minimum limits of coverage.

**V.     The FADCO vehicle was not uninsured.**

Plaintiff's response completely skips over the fact that the Torres and Barfield decisions did not address Federated's argument here – that the FADCO vehicle was not "uninsured".   Torres v. Kansas Fire and Marine Ins. Co., 849 P.2d 407 (Okla. 1993); Barfield v. Barfield, 742 P.2d 1107 (Okla. 1987).   Neither decision addresses the "availability" of liability insurance on the at-fault driver's vehicle. The fact that these decisions do not address this issue is assumedly because the commercial auto policies excluded coverage for bodily injury to fellow employees, thus meaning the vehicles were uninsured.  As such, the existence or nonexistence of "available" insurance coverage was not at issue, and was therefore not addressed in those decisions.

Here, the FADCO vehicle was insured (to the tune of $7,000,000) at the time of the accident with respect to Mr. Smith's injuries and Mr. Clark's alleged liability. The fact that the workers compensation exclusivity bar prevents Plaintiff from suing Mr. Clark does not address the issue of whether the FADCO vehicle was "uninsured." The Torres and Barfield Courts' holdings that the injured employee was still legally entitled to recover against the immune co-employee do not address the threshold issue here – whether the vehicle was "uninsured." The FADCO vehicle involved here was not an "uninsured" motor vehicle.

**VI.    Plaintiff had no response to Federated's motion for summary judgment on her bad faith claim.**

Noticeably absent from Plaintiff's Response is any discussion or argument relevant to her bad faith claim. This is probably so because, as Oklahoma courts have routinely held, simply denying a claim does not give rise to a bad faith claim.  There must be no legitimate dispute between the parties for such claim to exist.  Plaintiff's failure to

A-0214

respond is an acknowledgement that her claim for bad faith is fatally flawed and should be dismissed. Fed. R. Civ. P. 56(e)(3), LCvR56.1(e).

## CONCLUSION

Plaintiff concludes with a single-sentence invitation to the Court to certify a question(s) to the Oklahoma Supreme Court.  Where, as here, existing state law provides a clear path for resolution of the case, certification is not warranted.  This is true even if "no state supreme court precedent is directly on point." *See* Meier v. Chesapeake Operating L.L.C., 778 Fed.Appx. 561, 564-65 (10th Cir. 2019) (denying certification based on conclusion that the federal court could "pursue a 'clear and principled course' here without troubling the Oklahoma Supreme Court for guidance").  The Oklahoma statute at issue here plainly makes UM coverage optional, and grants a right to the named insured to decide what coverage it wants to purchase and what coverage is does not want to purchase.  FADCO, as the named insured, made a clear decision on what UM coverage is wanted to purchase, and what coverage it did not want to purchase.  The policy provisions at issue are clear and unambiguous in effectuating that decision.  Both parties acknowledge by their competing requests for summary judgment that no *material* factual dispute exists.  Existing Oklahoma statutes and case law provide adequate guidance to this Court to resolve the issues currently before it.  Federated and FADCO contracted in a manner that fully comports with the Oklahoma UMA and Federated is therefore entitled to judgment as a matter of law from this Court without further proceedings.

Respectfully submitted,

*/s/Eric A. Moen*
Bart J. Robey, OBA No. 19926
Eric A. Moen, OBA No. 31155
Chubbuck Duncan & Robey, P.C.
1329 N. Classen Drive
Oklahoma City, Oklahoma 73103
Phone: 405-236-8282
bjrobey@chubbucklaw.com
eamoen@chubbucklaw.com
**Attorneys for Defendant and Counterclaimant**
**Federated Mutual Insurance Company**

A-0215

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of October 2020, I electronically transmitted the attached documents to the court clerk's office using the CM/ECF system for filing and thereby transmitted a notice of electronic filing to the following CM/ECF registrants:

Chad McLain
Dan Graves
Rachel Gusman
4137 S. Harvard Ave., Suite F
Tulsa, OK  74135
Telephone:  (918) 359-6600
Facsimile: (918) 359-6605

Rex Travis
Margaret Travis
Casey Lawson
info@travislawoffice.com
P.O. Box 1336
Oklahoma City, OK  73101-1336
Telephone:  (405) 236-5400
Facsimile:  (405) 236-5499

/s/Eric A. Moen

A-0216

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

NANCY ANAYA-SMITH, next of kin of
MICHAEL BRIAN SMITH, deceased,
    Plaintiff/Counter-Defendant,

vs.

FEDERATED MUTUAL INSURANCE
COMPANY,
    Defendant/Counterclaimant.

Case No. Civ-20-565-D
The Hon. Timothy DeGiusti

## SUGGESTION OF ADDITIONAL AUTHORITY

Plaintiff suggests the Court consider as additional authority *Lane v. Progressive N. Ins. Co.*[1] A copy of the Opinion is attached for the Court's convenience.

Respectfully submitted,

s/ Rex Travis
REX TRAVIS, OBA #9081
MARGARET TRAVIS, OBA #14424
CASEY LAWSON, OBA #33947
info@travislawoffice.com
P.O. Box 1336
Oklahoma City, OK 73101-1336
Telephone: (405) 236-5400
Facsimile: (405) 236-5499
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 1st. day of July 2021, I electronically transmitted the foregoing *Suggestion of Additional Authority* to the Clerk of Court using the ECF System for filing. Based on the current records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

s/ Rex Travis

---

[1] 2021 OK 40

A-0217



**ORIGINAL**

**2021 OK 40**

IN THE SUPREME COURT OF THE STATE OF OKLAHOMA

FILED
SUPREME COURT
STATE OF OKLAHOMA

JUN 29 2021

JOHN D. HADDEN
CLERK

ELISSA LANE; and KYLE STONE,
as father and next friend of L.S., a minor,

    Plaintiffs/Appellants,

vs.

PROGRESSIVE NORTHERN
INSURANCE COMPANY,

    Defendant/Appellee.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. 118,638

FOR OFFICIAL PUBLICATION

| Rec'd (date) | 6-29-11 | |
|---|---|---|
| Posted | | |
| Mailed | | |
| Distrib | | |
| Publish | ✓ yes | no |

## CERTIFIED QUESTION FROM THE UNITED STATES COURT OF APPEALS FOR THE TENTH CIRCUIT

¶ 0    The United States Court of Appeals for the Tenth Circuit certified a question of state law to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S. 2011 §§ 1601–1611.

## CERTIFIED QUESTION ANSWERED

Rex Travis, Margaret Travis, Travis Law Office, Oklahoma City, Oklahoma, for Plaintiffs/Appellants.

Brad L. Roberson, Dawn M. Goeres, Roberson, Kolker, Cooper & Goeres, P.C., Edmond, Oklahoma, for Defendant/Appellee.

**GURICH, J.**

¶ 1    The United States Court of Appeals for the Tenth Circuit certified to

this Court the following question of law:

> Does Progressive's UM Exclusion—which operates to deny uninsured motorist coverage to insureds who recover at least the statutorily mandated minimum in the form of liability coverage—contravene Oklahoma's Uninsured Motorist Statute, codified at 36 O.S. § 3636?[1]

---

[1] We have not substantively reformulated the question of law certified to us, although it is within our discretion to do so. *See* 20 O.S. 2011 § 1602.1. We have altered the question only to conform it to this Court's citation conventions.

1

A-0218

¶ 2    We answer with a "yes": Progressive's UM Exclusion violates the terms of 36 O.S. § 3636.  Through this statute, Oklahoma requires insurers to supply uninsured-motorist coverage in addition to standard liability coverage. Where a policyholder has chosen to purchase uninsured-motorist coverage and the insurer has included it in the insurance contract in accord with section 3636— as here—our public policy requires protection up to the contracted-for limits. Because of the sweeping nature of the UM Exclusion contained in the insurance policy at issue, Progressive found a way to entirely avoid providing the promised coverage.  In other words, Progressive's UM Exclusion violates public policy because an insurer in Oklahoma cannot deprive its policyholder of uninsured-motorist coverage *for which a premium has been paid* through an exclusion that effectively erases its policyholder's choice to purchase that coverage in the first place.  We conclude that Progressive's UM Exclusion contravenes section 3636 and is therefore void as against public policy.

### Facts and Procedural History

¶ 3    The federal court's certification order presents the underlying facts.  In answering a certified question, this Court will not presume facts presented outside the certification order.  *Gov't Emps. Ins. Co. v. Quine*, 2011 OK 88, ¶ 14, 264 P.3d 1245, 1249.  "[O]ur examination is confined to resolving legal issues."  *Id.* Nonetheless, the Court may "consider uncontested facts supported by the record."

A-0219

*Siloam Springs Hotel, LLC v. Century Sur. Co.*, 2017 OK 14, ¶ 2, 392 P.3d 262, 263.

¶ 4    In 2017, the plaintiffs—Lane and Stone—were injured in a serious single-car rollover accident in Canadian County, Oklahoma while riding as passengers in a car driven by Stewart, a nonparty who was a minor at the time of the accident.  Progressive Northern Insurance Company had insured the driver's vehicle under a policy issued to the parents of Stewart.  Premiums were paid for both liability and uninsured-motorist coverage.  The driver's policy provided liability coverage of $100,000 per person, with a $300,000 limit per accident (labeled under the policy as Part I—Liability to Others).  Additionally, the policy provided uninsured-motorist coverage of $100,000 per person, with a $300,000 limit per accident (designated in the policy as Part III—Uninsured Motorist Coverage).  Both Lane and Stone recovered the $100,000-per-person liability limit—but their injuries were substantial, and their damages exceeded $100,000.  In light of their extensive injuries, Lane and Stone sought additional uninsured-motorist coverage from Progressive.  Relying on an exclusion in the policy—referred to herein as the UM Exclusion—Progressive denied their claims.

¶ 5    Progressive's UM Exclusion states that uninsured-motorist coverage will not apply to "bodily injury sustained by an insured person where liability coverage for bodily injury in an amount equal to or greater than the minimum limits of liability required by the motor vehicle financial responsibility law of Oklahoma is available for said bodily injury under Part I—Liability to Others."  In essence, the

3

A-0220

provision operates to exclude uninsured-motorist coverage when the insured receives liability coverage in an amount equal to or greater than the minimum limits of liability prescribed under Oklahoma law.   Because Lane and Stone both recovered $100,000 under the policy's liability coverage—which is greater than the Oklahoma statutory minimum of $25,000[2]—Progressive denied their uninsured-motorist claims by relying on the UM Exclusion.

¶ 6    Following Progressive's refusal to pay, Lane and Stone sued for breach of contract and bad faith in federal district court in the Western District of Oklahoma.  Progressive moved for a judgment on the pleadings, arguing its denial of uninsured-motorist coverage was warranted based on the UM Exclusion.  In opposition to the motion, Lane and Stone asserted that Progressive's UM Exclusion is void as a matter of public policy under state law.   Finding that Oklahoma law permits the UM Exclusion, the federal district court granted judgment in favor of Progressive.  Lane and Stone appealed to the Tenth Circuit Court of Appeals, which certified to us the controlling, first-impression question of whether our uninsured-motorist-coverage statute—36 O.S. § 3636—forbids the type of UM Exclusion at issue.

### Analysis

¶ 7    The federal court's certified question asks us to decide whether the public policy underlying a provision of the Oklahoma Insurance Code, 36 O.S.

---

[2] *See* 36 O.S. Supp. 2016 § 3636(B), (H)–(K); 47 O.S. Supp. 2016 §§ 7-103(2)(b), 7-324(B)(2).

A-0221

§ 3636, voids a specific exclusion of uninsured-motorist coverage.[3]  This question

is one of first impression and is governed by "no controlling Oklahoma precedent."

*Barrios v. Haskell Cty. Pub. Facilities Auth.*, 2018 OK 90, ¶ 6 n.6, 432 P.3d 233,

236 n.6.

¶ 8    Uninsured-motorist coverage is an important part of automobile-

insurance coverage available to insureds in Oklahoma.  An entire section of the

Oklahoma Insurance Code is dedicated to defining the coverage and providing

protections for policyholders.  In pertinent part, our statute provides:

> A. No policy insuring against loss resulting from liability imposed by
> law for bodily injury or death suffered by any person arising out of the
> ownership, maintenance or use of a motor vehicle shall be issued,
> delivered, renewed, or extended in this state with respect to a motor
> vehicle registered or principally garaged in this state *unless the policy
> includes the coverage described in subsection B of this section.*
>
> B. The policy referred to in subsection A of this section shall provide
> coverage therein or supplemental thereto for the protection of persons
> insured thereunder who are legally entitled to recover damages from
> owners or operators of uninsured motor vehicles and hit-and-run
> motor vehicles because of bodily injury, sickness or disease, including
> death resulting therefrom.   *Coverage shall be not less than the
> amounts or limits prescribed for bodily injury or death for a policy
> meeting the requirements of Section 7-204 of Title 47 of the Oklahoma
> Statutes, as the same may be hereafter amended; provided, however,
> that increased limits of liability shall be offered and purchased if
> desired, not to exceed the limits provided in the policy of bodily injury
> liability of the insured. . . .   The uninsured motorist coverage shall be*

---

[3] In assessing whether to answer a certified federal question of law, we are guided by twin
considerations: "(1) Would the answer be dispositive of an issue in pending litigation in the
certifying court?"; and "(2) Is there established and controlling law on the subject matter?"  *Barrios
v. Haskell Cty. Pub. Facilities Auth.*, 2018 OK 90, ¶ 6 n.6, 432 P.3d 233, 236 n.6.

5

A-0222

upon a form approved by the Insurance Commissioner as otherwise provided in the Insurance Code . . . . [4]

C. For the purposes of this coverage the term "uninsured motor vehicle" shall include an insured motor vehicle where the liability insurer thereof is unable to make payment with respect to the legal liability of its insured within the limits specified therein because of insolvency.  For the purposes of this coverage the term "uninsured motor vehicle" shall also include an insured motor vehicle, the liability limits of which are less than the amount of the claim of the person or

---

[4] The form's standard language is set forth in 36 O.S. § 3636(H), as follows:

Oklahoma law gives you the right to buy Uninsured Motorist coverage in the same amount as your bodily injury liability coverage.  THE LAW REQUIRES US TO ADVISE YOU OF THIS VALUABLE RIGHT FOR THE PROTECTION OF YOU, MEMBERS OF YOUR FAMILY, AND OTHER PEOPLE WHO MAY BE HURT WHILE RIDING IN YOUR INSURED VEHICLE.  YOU SHOULD SERIOUSLY CONSIDER BUYING THIS COVERAGE IN THE SAME AMOUNT AS YOUR LIABILITY INSURANCE COVERAGE LIMIT.

Uninsured Motorist coverage, unless otherwise provided in your policy, pays for bodily injury damages to you, members of your family who live with you, and other people riding in your car who are injured by: (1) an uninsured motorist, (2) a hit-and-run motorist, or (3) an insured motorist who does not have enough liability insurance to pay for bodily injury damages to any insured person.  Uninsured Motorist coverage, unless otherwise provided in your policy, protects you and family members who live with you while riding in any vehicle or while a pedestrian. THE COST OF THIS COVERAGE IS SMALL COMPARED WITH THE BENEFITS!

You may make one of four choices about Uninsured Motorist Coverage by indicating below what Uninsured Motorist coverage you want:

_____ I want the same amount of Uninsured Motorist coverage as my bodily injury liability coverage.

_____ I want minimum Uninsured Motorist coverage $25,000.00 per person/$50,000.00 per occurrence.

_____ I want Uninsured Motorist coverage in the following amount:

$_____ per person/$_____ per occurrence.

_____ I want to reject Uninsured Motorist coverage.

6

A-0223

persons making such claim, *regardless of the amount of coverage of either of the parties in relation to each other.*

\* \* \*

G. A named insured or applicant shall have the right to reject uninsured motorist coverage in writing.  The form signed by the insured or applicant which initially rejects coverage or selects lower limits shall remain valid for the life of the policy and the completion of a new selection form shall not be required when a renewal, reinstatement, substitute, replacement, or amended policy is issued to the same-named insured by the same insurer or any of its affiliates. Any changes to an existing policy, regardless of whether these changes create new coverage, do not create a new policy and do not require the completion of a new form.

36 O.S. Supp. 2016 § 3636(A)–(C), (G) (emphasis added).[5]

¶ 9    "Every provision of every Oklahoma statute 'is presumed to have been intended for some useful purpose and every provision should be given effect.'" *Hamilton v. Northfield Ins. Co.*, 2020 OK 28, ¶ 8, 473 P.3d 22, 26 (quoting *Darnell v. Chrysler Corp.*, 1984 OK 57, ¶ 5, 687 P.2d 132, 134).  Before the Oklahoma Legislature amended section 3636 in 1979, the statutory text did not clearly address underinsured-motorist coverage.  *See* 36 O.S. Supp. 1979 § 3636(C).  But the 1979 amendment "significantly expanded the uninsured motorist provision to include underinsured motorist coverage." *Russell v. Am. States Ins. Co.*, 813 F.2d 306, 309 (10th Cir. 1987) (per curiam).  Pre-1979, the statute measured recovery by the available amount of per-person liability coverage.  *See id.*  Since the 1979 amendment, the statute has measured recovery by the value of the claim. 36 O.S.

---

[5] The current version of section 3636 went into effect on November 1, 2014 and is the version that applies to the Progressive policy at issue.

A-0224

§ 3636(C).  Further, the Legislature proscribed insurers' ability to set-off uninsured-motorist coverage by the insured's collected liability benefits.  *See* 36 O.S. Supp. 1979 § 3636(E); *Burch v. Allstate Ins. Co.*, 1998 OK 129, ¶ 16, 977 P.2d 1057, 1064 ("When § 3636 was amended in 1979, the Legislature prohibited the reduction of a § 3636 claim by a set-off of benefits from the tortfeasor's liability policy.").

¶ 10   Our Legislature plainly differentiates between liability and uninsured-motorist coverage.  The terms of 47 O.S. § 7-324 mandate the contents and coverage of a motor-vehicle-liability insurance policy within the Financial Responsibility chapter of the Oklahoma Highway Safety Code.  Separately, 36 O.S. § 3636 (as part of the Oklahoma Insurance Code) requires insurers to include uninsured-motorist coverage within or supplemental to all motor-vehicle-liability policies, unless properly rejected by the named insured.  *Id.* § 3636(B), (G).  If the insured does not affirmatively decline uninsured-motorist coverage, the insurer *must* provide both the uninsured-motorist coverage and the liability coverage. Pursuant to section 3636, the Legislature specified that the minimum amounts of liability and uninsured-motorist coverage must be identical.  *See id.* § 3636(B) (cross-referencing "the amounts or limits prescribed . . . for a policy" under 47 O.S. § 7-204).  The Legislature did not, however, conflate or otherwise combine the coverages: liability coverage and uninsured-motorist coverage remain distinct.

8

A-0225

¶ 11   The insurance policy that Progressive issued to Stewart's parents requires close examination.[6]  It contains discrete sections relating to motor-vehicle liability (titled "Part I—Liability to Others") *and* to uninsured-motorist coverage (clearly designated as "Part III—Uninsured Motorist Coverage").   Following a preamble and a section listing general definitions, the policy sets out the terms for bodily-injury liability coverage:

### PART I—LIABILITY TO OTHERS

**INSURING AGREEMENT**

> If **you** pay the premium for this coverage, **we** will pay damages for **bodily injury** and **property damage** for which an **insured person** becomes legally responsible because of an accident.

The policy next defines who qualifies as an insured:

**ADDITIONAL DEFINITION**

> When used in this Part I:
> "**Insured person**" means:
> a. **you**, a **relative**, or a **rated resident** with respect to an accident arising out of the ownership, maintenance or use of an **auto** or a **trailer**;
> b. any person with respect to an accident arising out of that person's use of a **covered auto** with the permission of **you**, a **relative**, or a **rated resident** . . . .

Part II of the policy deals with coverage for medical payments; its construction is outside the scope of this opinion.

---

[6] Progressive attached the insurance policy—entitled "Oklahoma Auto Policy"—as an exhibit to its January 28, 2019 answer to plaintiff Lane's complaint filed in the Western District of Oklahoma. The 30-page policy is included in the joint appendix submitted by the parties on appeal to the Tenth Circuit.

A-0226

¶ 12   This leads to Part III of the policy, which contains both the coverage—and the exclusion of coverage—at the center of this dispute.  It begins:

### PART III—UNINSURED MOTORIST COVERAGE

**INSURING AGREEMENT**

If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** because of **bodily injury**:
1. sustained by an **insured person**;
2. caused by an accident; and
3. arising out of the ownership, maintenance or use of an **uninsured motor vehicle**.

As before, this section of the policy goes on to define who is an insured:

**ADDITIONAL DEFINITIONS**

When used in this Part III:
1. "**Insured person**" means:
a. **you**, a **relative**, or a **rated resident**;
* * *
c. any person **occupying**, but not operating, a **covered auto**[.]
* * *
2. "**Uninsured motor vehicle**" means a land motor vehicle or trailer of any type:
* * *
d. to which a bodily injury liability bond or policy applies at the time of the accident, but the sum of all applicable limits of liability for bodily injury is less than the **insured person's** damages.[7]

But this coverage provision is then directly followed by Progressive's UM Exclusion:

---

[7] Progressive does not dispute that each plaintiff is an "insured person" and the vehicle involved in the accident is an "uninsured motor vehicle" for purposes of Part III's uninsured-motorist coverage.  Although the policy lists seven separate exclusions for uninsured-motorist coverage under Part III, the only uninsured-motorist exclusion at issue is Exclusion 6.

A-0227

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS PART III.**

Coverage under this Part III will not apply:
* * *
6. to **bodily injury** sustained by an insured person where liability coverage for **bodily injury** in an amount equal to or greater than the minimum limits of liability required by the motor vehicle financial responsibility law of Oklahoma is available for said **bodily injury** under Part I—Liability to Others[.][8]

¶ 13   "An insurance coverage contract required by Section 3636 must be liberally construed in favor of the object to be accomplished."  *May v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 1996 OK 52, ¶ 13, 918 P.2d 43, 48.  And the "primary purpose of including uninsured motorist coverage in an insurance policy is to protect the insured from the effects of personal injury resulting from an accident with an uninsured/underinsured motorist."  *State Farm Auto Ins. Co. v. Greer*, 1989 OK 110, ¶ 6, 777 P.2d 941, 942.  This compels the conclusion that Progressive's UM Exclusion violates section 3636: the exclusion does not merely modify the scope of available uninsured-motorist coverage—it outright negates that coverage.  While the policyholder holds an option to accept uninsured-motorist coverage, the insurer carries an obligation to provide it.  Section 3636 requires uninsured-motorist coverage separate from liability coverage, whether it is

---

[8] The parties do not dispute that liability coverage for bodily injury in an amount greater than the minimum limits of liability required by the motor-vehicle-financial-responsibility law of Oklahoma is available under the liability coverage provided in Part I of the policy.  As previously noted, the minimum limit of liability coverage required under the Oklahoma Statutes is $25,000.  *See* 47 O.S. 2011 §§ 7-103(2)(b), 7-324(B)(2).

11

A-0228

provided within or supplemental to the basic liability policy. Progressive's blanket exclusion effectively ensures that only one form of coverage—for motor-vehicle liability—will ever be available, even though its policyholder has paid for both.

¶ 14   We apply "critical scrutiny" to "policy provisions which purport to dilute the legislatively mandated uninsured motorist coverage." *State Farm Mut. Auto. Ins. Co. v. Wendt*, 1985 OK 75, ¶ 4, 708 P.2d 581, 583. "[O]nce a person is insured under an uninsured motorist policy, subsequent exclusions inserted by the insurer in the policy which dilute and impermissi[b]ly limit uninsured motorist coverage are void as violative of the public policy espoused by" section 3636. *Id.*; *see also Bernal v. Charter Cty. Mut Ins. Co.*, 2009 OK 28, ¶ 7 n.10, 209 P.3d 309, 312 n.10 (stating that "subsequent exclusions inserted by the insurer in the policy which dilute and impermissibly limit UM coverage are void as violative of the public policy" underlying section 3636).[9] Underinsured-motorist coverage becomes necessary when an insured's damages (resulting from injury) exceed the underinsured driver's liability limits. In this case, the plaintiffs' significant injuries necessarily required that they have access beyond those liability limits—and in an amount obviously greater than the statutory minimum of $25,000 in liability coverage. Because the UM Exclusion *never* allows an insured the benefit of the bargained-for underinsured-motorist coverage, it cannot withstand the "critical scrutiny"

---

[9] *See also Brown v. United Servs. Auto. Ass'n*, 1984 OK 55, ¶ 6, 684 P.2d 1195, 1198 ("It is settled in Oklahoma that insurance policy provisions and definitions which purport to condition, limit or dilute the provisions of the uninsured motorist statute are void and unenforceable.").

A-0229

required of exclusionary provisions under Oklahoma law.  *Wendt*, 1985 OK 75, ¶ 4, 708 P.2d at 583.

¶ 15   In *Ball v. Wilshire Insurance Co.*, we acknowledged that "[a] salient feature of our UM legislation, distinguishing it from compulsory liability insurance, is the latitude given to the policyholder or applicant to accept or reject UM coverage." 2009 OK 38, ¶ 28, 221 P.3d 717, 726–27.   Although we have recognized that "the legislative intent with respect to UM coverage . . . could arguably be satisfied with the acceptance of UM insurance with agreed-upon exclusions from coverage," we have made it equally clear that an exclusion becomes impermissible when it fails to "protect and enforce the policyholder's choice to purchase" that protection.  *See id.* ¶¶ 28–29, 221 P.3d at 727; *see also Hartline v. Hartline*, 2001 OK 15, ¶ 16, 39 P.3d 765, 771 ("Even in the absence of a violation of a law's express provision, an exclusion may nonetheless be invalid for nonconformity to the *policy of the law*.").   In this case, Progressive's UM Exclusion cannot be reconciled with the public policy articulated through section 3636.  *See Hamilton*, 2020 OK 28, ¶ 8, 473 P.3d at 26 (implicit in our interpretation of statutes is the "championing [of] the broad public policy purposes underlying them") (quotation omitted)).

¶ 16   This Court's jurisprudence is clear about what that public policy is: "The purpose of Oklahoma's statutory scheme is to 'assure each [UM insured] person the full contracted coverage' for which a premium has been paid." *Burch*, 1998 OK 129, ¶ 16, 977 P.2d at 1064 (alteration in original) (quoting *Bohannan v.*

13

A-0230

*Allstate Ins. Co.*, 1991 OK 64, ¶ 13, 820 P.2d 787, 792).  Here, the policyholders—

the parents of a teenage driver—purchased (and paid premiums for) coverage

that, by definition, included the plaintiffs in this case.  The fact that the plaintiffs are

classified as Class 2, as opposed to Class 1, insureds does not alter our analysis.[10]

This is because "coverage in each case stems not from owning an automobile, but

from falling within the definition of an 'insured' under any given insurance contract."

*Shepard v. Farmers Ins. Co.*, 1983 OK 103, ¶ 7, 678 P.2d 250, 252.  People buy

insurance because accidents (often, serious ones) are an unavoidable fact of life.

It is entirely reasonable for an Oklahoma family to anticipate the unpleasant

possibility that their novice driver might take out the family car, get into an

automobile accident, and injure her passengers.  It is commendable to seek out

and obtain insurance that gives protection beyond a policy's basic liability limits in

the event of that major injury.  Our Legislature not just expressly—but *strongly*—

encourages Oklahoma residents to do so.[11]

---

[10] Named insureds and resident relatives are Class 1 insureds; Class 2 insureds—such as the plaintiffs in this case—are individuals insured under a policy by virtue of their occupancy or permissive use of a covered vehicle.  *Am. Econ. Ins. Co. v. Bogdahn*, 2004 OK 9, ¶ 12, 89 P.3d 1051, 1054–55.

[11] The statute includes strong and unequivocal language requiring Oklahoma insurance companies to advise their proposed insureds on the importance of obtaining uninsured-motorist coverage.  36 O.S. § 3636(H) (directing insurers to provide forms containing the following—or substantially similar—language: "Oklahoma law gives you the right to buy Uninsured Motorist coverage in the same amount as your bodily injury liability coverage.  THE LAW REQUIRES US TO ADVISE YOU OF THIS VALUABLE RIGHT FOR THE PROTECTION OF YOU, MEMBERS OF YOUR FAMILY, AND OTHER PEOPLE WHO MAY BE HURT WHILE RIDING IN YOUR INSURED VEHICLE.  YOU SHOULD SERIOUSLY CONSIDER BUYING THIS COVERAGE IN THE SAME AMOUNT AS YOUR LIABILITY INSURANCE COVERAGE LIMIT.").

A-0231

¶ 17 In addition to the statutory protections, we are also guided by the longstanding proposition that "[i]nsurance contracts are contracts of adhesion." *Wilson v. Travelers Ins. Co.*, 1980 OK 9, ¶ 8, 605 P.2d 1327, 1329. As such, they "are interpreted most strongly against the party that prepared the contract." *Porter v. Okla. Farm Bureau Mut. Ins. Co.*, 2014 OK 50, ¶ 13, 330 P.3d 511, 515; *see also Ball*, 2009 OK 38, ¶ 27, 221 P.3d at 726 ("Statutorily mandated automobile insurance policies bear some characteristics of a public-law obligation under Oklahoma law and the full range of traditional freedom-of-contract principles do not apply."). Because insurance policies come on a "'take it or leave it' basis," the prospective insured cannot obtain the insurance without accepting the agreement exactly as written by the insurance company. *Max True Plastering Co. v. U.S. Fid. & Guar. Co.*, 1996 OK 28, ¶ 7, 912 P.2d 861, 864. We will not permit an insurer to inappropriately leverage its uneven bargaining power to contract in a manner that misleads or deceives the policyholder about what he or she is actually buying. *See Bohannan*, 1991 OK 64, ¶ 14, 820 P.2d at 792 ("This Court has consistently protected the strength of our UM statute and the rights of an insured granted thereunder and purchased."). Progressive's UM Exclusion neither protects the policyholder's choice to accept uninsured-motorist coverage, nor represents a validly agreed-upon exclusion from that coverage.

¶ 18 We note that—when faced with the same situation in the Western District of Oklahoma—the Honorable Joe Heaton reached the opposite result of the trial judge in this case, holding that the Progressive UM Exclusion violates

15

A-0232

Oklahoma public policy because it runs afoul of section 3636's coverage mandate.

Judge Heaton's analysis on this point is persuasive:

> [B]ased upon the language of the exclusion, no insured who makes a claim for liability coverage under the Policy would ever be entitled to [UM] coverage under the Policy.  [UM] coverage is only available when an insured's damages are greater than the limits of liability. Therefore, an insured who would be filing a [UM] claim would necessarily be receiving the full limits of the Policy's liability coverage, which would always be an amount equal to or greater than the minimum limits of liability required by Oklahoma's motor vehicle responsibility law, and the insured thus would always fall within the UM Exclusion and would never be entitled to [UM] coverage.

*McKinney v. Progressive Direct Ins. Co.*, No. CIV-18-0767-HE, 2019 WL 11278463, at *4 (W.D. Okla. Apr. 24, 2019), *appeal docketed*, No. 19-6127 (10th Cir. Aug. 29, 2019).  Indeed, the Tenth Circuit has pointedly termed this type of exclusion a "'Catch 22' provision" that "impermissibly limits the operation of § 3636." *Russell*, 813 F.2d at 311; *see also Phillips v. N.H. Ins. Co.*, 263 F.3d 1215, 1220 (10th Cir. 2001) (noting this Court's consistent jurisprudence that "'protect[s] the insured's right to collect from the UM carrier'") (quoting *Burch*, 1998 OK 129, ¶ 8 n.14, 977 P.2d at 1061 n.14)).

¶ 19   It is undisputed that the injured plaintiffs, Lane and Stone, are covered (as vehicle passengers) by the Progressive policy's uninsured-motorist provision. It is likewise uncontested that their damages exceed the policy's $100,000-per-person liability limit.  The vehicle involved in the accident meets the definition of an uninsured motor vehicle under the terms of both the insurance policy and section 3636.  All of this would lead the reasonable Oklahoma policyholder to think—

16

A-0233

having affirmatively selected, and paid a premium for, uninsured-motorist coverage—that this coverage would apply in the event of an automobile accident resulting in serious injuries to their insureds in excess of the policy's liability limits.[12] Yet, the artfully drafted language of the UM Exclusion guarantees that the plaintiffs will be completely denied uninsured-motorist coverage.   To put it bluntly, "[t]his provision is a blatant attempt to limit the effect of [section] 3636." *Greer*, 1989 OK 110, ¶ 9, 777 P.2d at 943.  "As such we must find it to be against public policy and, therefore, void and unenforceable." *Id.*

### Conclusion

¶ 20   Liability coverage is not a substitute for uninsured-motorist coverage. Uninsured-motorist coverage must be conditioned upon the claim's value above available liability coverage, not upon the availability of minimum liability coverage. Progressive drafted the UM Exclusion in a way that ensured its policyholders would not actually get what they paid for.  Guided by the principles underlying 36 O.S. § 3636, we hold that Progressive's UM Exclusion contravenes Oklahoma's strong public policy in favor of broadly available uninsured-motorist coverage.

### CERTIFIED QUESTION ANSWERED.

Darby, C.J., Kauger (**by separate writing**), Edmondson, Combs, Gurich, JJ., concur;
Kane, V.C.J., Winchester, Rowe (**by separate writing**), JJ., dissent.

---

[12] *See Hamilton v. Northfield Ins. Co.*, 2020 OK 28, ¶ 10, 473 P.3d 22, 26 (observing that this Court interprets provisions of the Oklahoma Insurance Code "in their plain and ordinary sense— just as would the layperson who purchases an insurance policy, suffers a covered loss, and submits proof of that loss to the insurer").

A-0234

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| NANCY ANAYA-SMITH, next of kin of MICHAEL BRIAN SMITH, deceased, | |
| Plaintiff, | |
| vs. | Case No. CIV-20-565-D |
| FEDERATED MUTUAL INSURANCE COMPANY, | |
| Defendants. | |

**DEFENDANT FEDERATED'S RESPONSE TO PLAINTIFF'S SUGGESTION OF ADDITIONAL AUTHORITY IN CONNECTION WITH FEDERATED'S MOTION FOR SUMMARY JUDGMENT**

In connection with pending summary judgment motions, plaintiff filed a "Suggestion of Additional Authority" asking this Court to consider the Oklahoma Supreme Court decision in <u>Lane v. Progressive N. Ins. Co.</u> 2021 OK 40, ___ P.3d ___, 2021 WL 2658997 (June 29, 2021). [Doc. No. 25.]  The Court granted Federated leave to submit this response to the suggestion of authority. [Doc. No. 29].

**ARGUMENT**

<u>Lane</u> provides no support for plaintiff's arguments and is of no relevance to the key issue before this Court.  At issue here is whether the Named Insured's rejection of UM coverage was in compliance with Oklahoma law.  <u>Lane</u> does not address this point. Instead, <u>Lane</u> addressed whether a policy exclusion could operate to preclude UM coverage "*for which a premium has been paid*". <u>Lane</u> at ¶ 2 (emphasis in original).  The case before this Court is essentially the opposite of <u>Lane</u> – Plaintiff here seeks UM coverage that the Named Insured did not purchase or pay for.

Lane involved a single-vehicle accident resulting in serious injuries to two passengers. Progressive issued a policy providing liability coverage for the vehicle, subject to a $100,000 per-person limit. The Named Insured had also elected to purchase UM coverage with a $100,000 per-person limit. But a policy provision excluded UM coverage for any injury for which the policy's liability coverage was also available. In effect, this provision precluded UM coverage where the policy's liability coverage was applicable to the same injury. The court ruled that this exclusion was invalid:

> Where a policyholder has chosen to purchase uninsured-motorist coverage and the insurer has included it in the insurance contract in accord with section 3636--as here--our public policy requires protection up to the contracted-for limits. Because of the sweeping nature of the UM Exclusion contained in the insurance policy at issue, Progressive found a way to entirely avoid providing the promised coverage. In other words, Progressive's UM Exclusion violates public policy because an insurer in Oklahoma cannot deprive its policyholder of uninsured-motorist coverage *for which a premium has been paid* through an exclusion that effectively erases its policyholder's choice to purchase that coverage in the first place.

Id. at ¶ 2 (emphasis in original). As the Court in Lane specifically noted, the issue before it was whether coverage that was ***actually paid for*** could be subject to an exclusion that vitiated apparent coverage.

Conversely, in the case before this Court, ***no premium was paid for*** the coverage plaintiff now seeks, because the Named Insured rejected that coverage. The Lane decision is inapposite to the dispute here for the simple reason that this case involves the ***rejection*** of UM coverage, not the ***exclusion*** of UM coverage. If anything, the rationale employed by the Lane court – that UM coverage cannot be excluded where it has been paid for – only reinforces Federated's position that this Court should respect, and give effect to, the Named Insured's knowing rejection of UM coverage as allowed by Oklahoma statute. Here, the Named Insured chose not to purchase UM coverage for persons such as Mr. Smith and did not pay any premium for it.

Plaintiff citation to the Lane decision is not surprising, as she purports to invalidate an "exclusion" to UM coverage. But that is simply not the case. Unlike Lane,

A-0236

this is not a situation where an exclusionary term contravenes 36 O.S. § 3636. Rather, in this case, the Named Insured exercised a right to reject UM coverage – a right that is expressly granted by § 3636. Plaintiff's true argument is that, despite the fact that the Named Insured did not purchase UM coverage for persons such as Mr. Smith, coverage must nevertheless be provided. Plaintiff is attempting to impute UM coverage – not invalidate an exclusion. The <u>Lane</u> decision does not support plaintiff's arguments and is irrelevant to the issue before the Court.

Respectfully submitted,

/s/Eric A. Moen
Bart J. Robey, OBA No. 19926
Eric A. Moen, OBA No. 31155
Chubbuck Duncan & Robey, P.C.
1329 N. Classen Drive
Oklahoma City, Oklahoma 73103
Phone: 405-236-8282
Fax: 405-236-2828
bjrobey@chubbucklaw.com
eamoen@chubbucklaw.com
*Attorneys for Defendant and Counterclaimant*
*Federated Mutual Insurance Company*

A-0237

**<u>CERTIFICATE OF SERVICE</u>**

 I hereby certify that on the 15th day of July 2021, I electronically transmitted the attached documents to the court clerk's office using the CM/ECF system for filing and thereby transmitted a notice of electronic filing to the following CM/ECF registrants:

Chad McLain
Dan Graves
Rachel Gusman
4137 S. Harvard Ave., Suite F
Tulsa, OK  74135
Telephone:  (918) 359-6600
Facsimile: (918) 359-6605

Rex Travis
Margaret Travis
Casey Lawson
info@travislawoffice.com
P.O. Box 1336
Oklahoma City, OK  73101-1336
Telephone:  (405) 236-5400
Facsimile:  (405) 236-5499

/s/Eric A. Moen

A-0238

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

NANCY ANAYA-SMITH, next of kin of )
MICHAEL BRIAN SMITH, deceased, )
                                 )
           Plaintiff, )
                                 )
v.                              )      Case No. CIV-20-565-D
                                 )
FEDERATED MUTUAL INSURANCE )
COMPANY, )
                                 )
           Defendant. )

## ORDER

Before the Court is Plaintiff's Motion for Partial Summary Judgment[1] [Doc. No. 13] and Defendant's combined Response to Plaintiff's Motion for Partial Summary Judgment and Cross-Motion for Summary Judgment [Doc. No. 18]. Plaintiff and Defendant each filed a reply [Doc. Nos. 21, 24]. Plaintiff also filed a suggestion of additional authority [Doc. No. 25] to which Defendant responded [Doc. No. 30]. Accordingly, the briefing is complete with respect to the motions and the matter is now at issue.

## FACTS AND PROCEDURAL BACKGROUND

Michael Brian Smith was killed in a one-vehicle accident on March 24, 2020. Mr. Smith was employed by Fixtures & Drywall Company of Oklahoma ("FADCO") and was

---

[1] Plaintiff's Motion fails to comply with LCvR7.1(e) which requires briefs longer than 15 pages to include an indexed table of contents and an indexed table of authorities. Plaintiff's Motion also fails to include any of the exhibits referenced therein. The Court is nevertheless able to rule on Plaintiff's Motion because the facts are undisputed and Defendant has included a copy of the relevant insurance policy as an exhibit.

1

A-0239

acting in the scope of his employment at the time of the accident. The vehicle involved was owned by FADCO and was being driven by Mr. Smith's co-employee. Plaintiff contends that the co-employee's negligence caused the fatal accident. *See* Pl.'s Mot. ¶¶ 2-3; Def.'s Mot. ¶¶ 2-3.

FADCO maintained an insurance policy for the involved vehicle that identifies FADCO as the named insured and extends liability coverage to "all sums an 'insured' legally must pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies caused by an 'accident' and resulting from the ownership, maintenance or use of a covered auto." An "insured" is defined in the policy as FADCO and "[a]nyone else while using with your permission a covered 'auto' you own, hire or borrow." The policy excludes "[a]ny obligation for which the 'insured' or the 'insured's' insurer may be held liable under any workers' compensation disability benefits." Pl.'s Mot. ¶¶ 3-5; Def.'s Mot. ¶¶ 5-7. The parties agree that the involved vehicle was a covered auto and the driver was an insured for liability purposes. *Id.*

In addition to the liability policy, Federated offered FADCO the option of purchasing uninsured motorist insurance coverage by using the election form required by Okla. Stat. tit. 36 § 3636(H). The election form provides that the insured "may make one of four choices about Uninsured Motorist Coverage by indicating" which option they want: 1) purchase the same amount of UM coverage as its liability coverage, 2) purchase the minimum amount of UM coverage, 3) purchase an amount less than its liability but more than the minimum, or 4) reject UM coverage. *Id.* FADCO checked the selection rejecting UM coverage. Def.'s Mot. ¶¶ 10-11.

A-0240

Using a separate form titled "Oklahoma Commercial Auto Coverage Option," Federated also offered FADCO the option of purchasing UM coverage for its directors, officers, partners, owners, and qualified family members, while rejecting coverage for any other person who qualifies as an insured. Federated checked the selection purchasing $1 million in UM coverage for its directors, officers, partners, owners and qualified family members, and rejecting it for other persons. Pl.'s Mot. ¶¶ 8-9; Def.'s Mot. ¶¶ 12-13. Pursuant to this election, an endorsement form titled "Uninsured and Underinsured Motorists Limits of Insurance" was included in FADCO's insurance policy. The endorsement sets forth the $1 million UM coverage limit for directors, officers, partners, owners and qualified family members, and indicates that no UM coverage is afforded to any other person under the policy. Pl.'s Mot. ¶ 8-9; Def.'s Mot. ¶¶ 14-17.

Following the accident, Plaintiff Nancy Anaya-Smith, as next of kin of Mr. Smith, made a claim under FADCO's insurance policy for UM benefits. Federated denied the claim because Mr. Smith was not a director, officer, partner, owner or qualifying family member of FADCO at the time of the accident. This lawsuit followed. Pl.'s Mot. ¶¶ 11-13; Compl. ¶ 4 [Doc. No. 1].

In her Complaint, Plaintiff asserts that Federated denied her UM claim in bad faith and that its coverage scheme violates Oklahoma law and public policy. Compl. ¶ 4. Federated denies Plaintiff's claims and seeks a declaratory judgment that 1) the involved vehicle was not uninsured at the time of the accident because the driver qualified as an insured for liability coverage and 2) Plaintiff is not entitled to benefits because FADCO's rejection of UM coverage for some insureds and not others was valid. Counterclaim ¶¶ 19-

3

47 [Doc. No. 12]. Plaintiff now seeks partial summary judgment on the coverage issue. Federated moves for summary judgment on the coverage issue, the bad faith claim, and its request for a declaratory judgment.

## STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if the facts and evidence are such that a reasonable juror could return a verdict for either party. *Id.* All facts and reasonable inferences must be viewed in the light most favorable to the nonmovant. *Id.*

"Cross-motions for summary judgment are treated as two individual motions for summary judgment and held to the same standard, with each motion viewed in the light most favorable to its nonmoving party." *Banner Bank v. First Am. Title Ins. Co.*, 916 F.3d 1323, 1326 (10th Cir. 2019). When the parties file cross motions for summary judgment, the Court is entitled to assume "'no evidence needs to be considered other than that filed by the parties.'" *Atlantic Richfield Co. v. Farm Credit Bank of Wichita*, 226 F.3d 1138, 1148 (10th Cir. 2000) (citation omitted).

## DISCUSSION

The coverage requirements and policyholder protections related to uninsured motorist coverage are set forth in Okla. Stat. tit. 36 § 3636. The statute requires every automotive liability policy to provide coverage to an insured who is "legally entitled to

A-0242

recover damages from owners or operators of uninsured motor vehicles." *Id.* at § 3636(A)-

(B). Pertinent to this case, the statute also provides that the insured may reject UM

coverage:

> A named insured or applicant shall have the right to reject uninsured motorist coverage in writing. The form signed by the insured or applicant which initially rejects coverage or selects lower limits shall remain valid for the life of the policy and the completion of a new selection form shall not be required when a renewal, reinstatement, substitute, replacement, or amended policy is issued to the same-named insured by the same insurer or any of its affiliates. Any changes to an existing policy, regardless of whether these changes create new coverage, do not create a new policy and do not require the completion of a new form.

> After selection of limits, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or applicant for insurance, the insurer shall not be required to notify any insured in any renewal, reinstatement, substitute, amended or replacement policy as to the availability of such uninsured motorist coverage or such optional limits. Such selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds under the policy and shall continue until a named insured requests in writing that the uninsured motorist coverage be added to an existing or future policy of insurance.

*Id.* at § 3636(G). In requiring UM coverage but permitting an insured to reject it, this

statutory scheme has been described as making UM coverage "mandatory as an option for

all automotive insurance policies," *Raymond v. Taylor*, 412 P.3d 1141, 1144 (Okla. 2017),

or as "requir[ing] that insurers offer UM coverage for every motor-vehicle liability

insurance policy." *Thurston v. State Farm Mut. Auto. Ins. Co*., 478 P.3d 415, 419 (Okla.

2020).

    With this statute as the starting point, the Court must initially resolve the two issues

raised by the parties: 1) whether the vehicle involved in the accident qualifies as an

A-0243

uninsured vehicle, and 2) whether offering an option to purchase UM coverage for some insureds and not others is contrary to Oklahoma law.

## A. The Status of the Vehicle

As to the first issue, Federated argues that the vehicle involved in the accident had $1 million in liability coverage, and therefore the vehicle is not uninsured or underinsured as a matter of law. Plaintiff counters that the amount of liability coverage is irrelevant because the driver is immune from suit under Oklahoma's Workers' Compensation Act.[2] *See* Okla. Stat. tit. 85A, § 5 (providing that the Act "shall be exclusive of all other rights and remedies of the employee…against the employer, or any…employee."). Because the Workers' Compensation Act precludes her from recovering tort damages against the vehicle driver, Plaintiff argues, the vehicle is effectively uninsured.

The Oklahoma Supreme Court has previously addressed the relationship between UM coverage and the immunity afforded under the Workers' Compensation Act. In *Barfield v. Barfield*, 742 P.2d 1107, 1109 (Okla. 1987), an employee was riding as a passenger in a company vehicle when he was killed in a one vehicle accident. After being awarded workers' compensation benefits, the employee's surviving spouse sought UM benefits under a policy purchased by the employee. *Id.* The insurance company argued that the claimant was not "legally entitled to recover" UM benefits because the Workers' Compensation Act was the exclusive remedy under which an employee could recover damages for an on-the-job injury. *Id.* at 1110-1111.

---

[2] The liability policy also provides an exclusion for any obligation for which the insured may be held liable under a workers' compensation law. *See* Doc. 18-2 at 27.

A-0244

The Oklahoma Supreme Court disagreed. After noting that a claim for UM benefits is a "purely contractual claim," the Court held that "Employer-Employee tort immunity under the Workers' Compensation Act does not preclude recovery under one's own contract of insurance with an insurance carrier unrelated to the employer-employee relationship." *Id.* at 1112. In reaching this conclusion, the court explained that the words "legally entitled to recover" in § 3636 "'simply mean that the insured must be able to establish *fault* on the part of the uninsured motorist.'" *Id.* (quoting *Uptegraft v. Home Insurance Company*, 662 P.2d 681, 685 (Okl.1983)) (emphasis in *Uptegraft*). Under this standard, it is not necessary for an insured to show he can proceed against an uninsured driver in tort in order to claim UM benefits. *Id.* The Oklahoma Supreme Court then reiterated that "[p]rotection under an uninsured motorist policy is a contractual right resting in the insured and thus may be co-existent with the protection under the Workers' Compensation Act." *Id.*

*Torres v. Kansas City Fire & Marine Ins. Co.*, 849 P.2d 407 (Okla. 1993) extended *Barfield's* holding to permit recovery under an employer's UM policy. Like the instant case, *Torres* involved an employee who was killed in a one-vehicle accident while riding as a passenger in a vehicle owned by his employer and driven by a co-employee. *Id.* at 409. The employer's liability policy included UM coverage and the parties agreed that the deceased employee was an insured under the policy. *Id.* After recovering benefits under the Workers' Compensation Act, the plaintiff sued to recover UM benefits from the insurer. *Id.*

A-0245

The Oklahoma Supreme Court once again rejected the insurer's argument that UM coverage did not apply because the co-employee driver was immune from liability under the workers' compensation laws. *Id.* The intention of the parties "was that UM coverage would be available once it was determined the party seeking coverage was an insured under the policy, that the uninsured tortfeasor causing damages was at fault and the extent of those damages was shown." *Id.* at 412. Accordingly, the plaintiff was allowed to recover UM benefits from the employer's policy even though the driver was immune from tort liability. *Id.*

Plaintiff relies on *Barfield* and *Torres* to argue that a tortfeasor who is immune under the workers' compensation scheme can qualify as an uninsured driver for purposes of determining UM coverage. Federated contends these cases do not directly address the status of the vehicle and the applicable policies most likely contained an exclusion that rendered the vehicle uninsured. This same dispute was at issue in *Stand v. Hudson Ins. Co.*, No. 17-CV-0129-CVE-JFJ, 2017 WL 11474147 (N.D. Okla. Nov. 2, 2017). There, the court concluded that

> *Barfield* and *Torres* do not specifically discuss whether an immune tortfeasor is uninsured under § 3636, but in both cases the Oklahoma Supreme Court found that an insured could recover UIM benefits when the insured could not directly collect under an automobile liability insurance policy after receiving workers' compensation benefits. Neither *Torres* nor *Barfield* makes any sense unless it is implied that an immune tortfeasor is treated as an uninsured motorist as a matter of Oklahoma law… .The Oklahoma Supreme Court has not expressly stated that a tortfeasor immune from suit due to the exclusive remedy of workers' compensation is uninsured, but the Court would be ignoring the clear implication of *Barfield* and *Torres* if it were to find to the contrary.

*Id.* at *4.

A-0246

The Court agrees with the analysis in *Stand*. The vehicle involved in the accident was covered by a liability policy, but none of those funds are available to Plaintiff because the co-employee driver is immune from tort liability under the Workers' Compensation Act. Consistent with *Barfield* and *Torres,* this immune tortfeasor is the equivalent of an uninsured driver for the purposes of determining UM benefits. Accordingly, Federated is not entitled to a declaration that the vehicle was not an uninsured vehicle at the time of the accident.

**B.  The Status of the Policy**

Resolving the uninsured status of the involved vehicle is, of course, only the first step. To recover UM benefits and succeed on her claim, Plaintiff must also establish that the decedent was insured under the policy. On this point, Federated notes that FADCO rejected UM coverage by completing the written form required by the § 3636, but then opted to purchase UM coverage for FADCO's directors, officers, partners, owners, and qualified family members. Federated contends that the decedent does not qualify for UM coverage because he falls into none of those categories. Plaintiff counters that a policy which provides UM coverage for one class of insureds but rejects it for others is contrary to Oklahoma law and public policy. She specifically points to a section of the statute which states that "selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds… ." Okla. Stat. tit. 36 § 3636(G).

Although Oklahoma has not directly addressed the precise issue presented here, several other states have had the opportunity to consider UM policies that provide different

9

A-0247

levels of coverage to different insureds. Notably, some states with UM statutes containing similar (although not identical) language about a decision pertaining to "all insureds" have held that limiting UM coverage for certain classes of insureds is against their public policy. *See Balagtas v. Bishop,* 910 N.E.2d 789, 795 (Ind. Ct. App. 2009) (holding that "the election or rejection of coverage must apply to all insureds"); *Varro v. Federated Mut. Ins. Co.,* 854 So. 2d 726, 729 (Fla. Dist. Ct. App. 2003) (finding that there is "an express statutory policy prohibiting this type of discrimination between insureds" because the statute only permits "a written rejection of the coverage on behalf of all insureds.").

But the majority of states that have encountered these types of policies have upheld them. For example, in *Stoms v. Federated Serv. Ins. Co*., 125 A.3d 1102 (Del. 2015), the Delaware Supreme Court addressed the validity of an insurance policy providing different levels of UM coverage where the applicable statute permitted the insured to reject all UM coverage. In upholding the policy, the court explained:

> [o]nce an insured has purchased the statutory minimum, the insured is free as a matter of contract to procure as much or little optional insurance as it wants, and to allocate it among drivers as it chooses… .To hold that any coverage above the statutory minimum—such as uninsured motorists coverage, for which no level of coverage is statutorily mandated—has to be afforded to all who benefit from a policy would dissuade employers from buying anything above the statutory minimum.

*Id.* at 1106-1107. Numerous other courts have espoused similar rationales in upholding such policies. *See Jones v. Federated Mut. Ins. Co.,* 346 Ga. App. 237, 242, 816 S.E.2d 105, 109 (2018) ("[Plaintiffs] have pointed to no language within the UM Statute as imposing an 'all or nothing' restriction upon uninsured motorist coverage; and we find none"); *Jarrell v. Viking Ins. Co. of Wisconsin*, No. 15-CV-02676-RBJ, 2017 WL 1154025,

A-0248

at *3 (D. Colo. Mar. 28, 2017) ("Given a policyholder's right to decline coverage, Colorado law allows automobile liability policyholders to elect to obtain UM/UIM coverage for some 'insureds' but not others"); *Federated Mut. Ins. Co. v. Vaughn*, 961 So. 2d 816, 819 (Ala. 2007) ("…because the greater typically includes the lesser, the right to reject totally UM coverage implies the right to reject it partially"); *Hlasnick v. Federated Mut. Ins. Co.*, 353 N.C. 240, 244, 539 S.E.2d 274, 277 (2000) ("The Financial Responsibility Act nowhere mandates that UIM coverage be equivalent for all persons insured under an automobile insurance policy.").

Although these cases provide context, the Court's decision is ultimately guided by Oklahoma law and policy. In this regard, the Oklahoma Supreme Court has instructed that

> the insurance coverage contract required by the statute is to be liberally construed in favor of the object to be accomplished… .The primary purpose of including uninsured motorist coverage in an insurance policy is to protect the insured from the effects of personal injury resulting from an accident with an uninsured/underinsured motorist.

*State Farm Auto. Ins. Co. v. Greer*, 777 P.2d 941, 942 (Okla. 1989) (internal citations omitted). "However, once it appears that the legislative purpose of § 3636 has been served, the statute's mandate is satisfied." *May v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pennsylvania*, 918 P.2d 43, 48 (Okla. 1996).

Further, "[w]hen interpreting automobile insurance contracts," courts should strive to "strike a balance between freedom of contract principles and the state's interest in protecting the public." *Ball v. Wilshire Ins. Co*., 221 P.3d 717, 726 (Okla. 2009). Thus, "[p]arties to an insurance contract are…free to agree upon such terms as they wish, including whether to limit or restrict the insurer's liability, as long as their agreement does

11

not contravene public policy." *Id.* A contract violates public policy only when it "clearly tends to injure public health." *Shepard v. Farmers Ins. Co.*, 678 P.2d 250, 251 (Okla. 1983). The Oklahoma Supreme Court has instructed that the power to invalidate a contract should be exercised "rarely, with great caution and in cases that are free from doubt." *Id.*

Several cases interpreting § 3636 and the limits of UM coverage have put these guiding principles into practice.[3] In *Shepard*, a response to a certified question, the Oklahoma Supreme Court considered whether a clause in a UM endorsement excluding a relative of the insured living in the same household if the relative owned an automobile violated the public policy expressed in § 3636. *Id.* The court held that the exclusion was "an unambiguous contract provision" that "contravenes neither the express language of the Oklahoma Uninsured Motorist Act nor its underlying policy of providing coverage for tortious conduct which would otherwise go uncompensated." *Id.* at 251-252. In reaching this conclusion, the court distinguished the exclusion from those it had previously invalidated by noting that the plaintiff had not paid a premium for the policy and was not defined as an insured by virtue of the policy terms. *Id.* at 252.

The availability of UM benefits was also at issue in *Graham v. Travelers Ins. Co.*, 61 P.3d 225 (Okla. 2002). There, Graham was driving his personal vehicle while on business for his employer when he was injured by an uninsured driver. *Id.* at 227. The

---

[3] Given the case law discussed herein, the Court declines Plaintiff's invitation, belatedly raised in her response and reply brief, to certify a question to the Oklahoma Supreme Court on this issue. *See Meier v. Chesapeake Operating L.L.C.*, 778 F. App'x 561, 565 (10th Cir. 2019) (unpublished) ("When we see a reasonably clear and principled course, we will seek to follow it ourselves—even if no state supreme court precedent is directly on point.") (internal quotation marks and citation omitted).

12

A-0250

employer maintained an automobile insurance policy that included UM coverage. *Id.* The policy provided liability insurance for employees using personal vehicles on company business but limited UM coverage to only company owned vehicles. *Id.* at 228-229. Because Graham was driving a personal vehicle at the time of the accident, the Court found that "Graham's vehicle clearly was insured for liability and was not insured, under the provisions of the policy, for UM/UIM." *Id.* at 229.

In trying to defeat the unambiguous terms of the policy, Graham argued (much like Plaintiff does here) that

> once an individual is defined as an insured under the contract, as Graham is here by reason of the endorsement to the liability portion of the contract, he is an insured under the UM/UIM portion of the contract. He continues that having chosen to insure Graham and other employees under the liability coverage, § 3636 requires UM/UIM coverage for them. He asserts that this insurance contract is made up of liability and UM/UIM coverages, and that these coverages are not separate contracts.

*Id.* The Oklahoma Supreme Court rejected these arguments. After observing that the employer and the insurer are the parties to the contract and the employer paid the premium, the court explained that

> [s]ection 3636 does not require that every vehicle covered in one policy have a separate document that separately accepts or rejects UM/UIM coverage for that vehicle. [The employer] accepted UM/UIM coverage and limited it to company-owned vehicles. The parties to the contract agreed to those provisions, those provisions are not ambiguous, and there is no public policy in § 3636 that is violated by the agreement of the parties.

*Id.* at 229-230. The court concluded that an employer is "free to exclude employees operating their own vehicles from UM/UIM coverage through the method of limiting UM/UIM coverage to vehicles owned by the company." *Id.* at 230. Important to the court's

A-0251

decision, however, was that Graham owned the vehicle involved and he therefore had "the opportunity to accept or reject UM/UIM coverage for his personal protection." *Id.*

*Ball v. Wilshire Ins. Co.*, 221 P.3d 717, 725 (Okla. 2009), considered whether an insurer who denied UM benefits to a passenger based on an invalid exclusion in a liability policy acted in bad faith. In analyzing the claim, the Oklahoma Supreme Court summarized their prior case law, including *Shepard* and *Graham*, and found that their decisions were "careful to protect the policyholder's choice of self and family protection" but that "[n]o similarly clear expression can be found in our case law obligating the insured and insurer to provide UM protection to persons whose claim to coverage arises solely by reason of their occupancy of a vehicle belonging to the named insured." *Id.* at 729. As the law covering the particular fact pattern involved was unsettled, the court concluded that the insurer had not acted in bad faith. Although *Ball* suggested that the full extent of the protections afforded by § 3636 have not yet been tested, its description of the statute is instructive:

> A salient feature of our UM legislation, distinguishing it from compulsory liability insurance, is the latitude given to the policyholder or applicant to accept or reject UM coverage. Extensive safeguards have been enacted in § 3636 to make certain that the policyholder's choice is knowingly and freely made, but the decision to purchase or decline to purchase UM coverage is left to the policyholder. When a policyholder completely rejects UM coverage, an occupant of a vehicle as to which no UM coverage is available has no independent grounds to claim UM benefits. If the legislative intent with respect to UM coverage is satisfied without any such coverage in a policy, it could arguably be satisfied with the acceptance of UM insurance with agreed-upon exclusions from coverage.

*Id.* at 726-727.

A-0252

Most recently, the Oklahoma Supreme Court was called upon to interpret the scope of § 3636 in *Lane v. Progressive N. Ins. Co*., ___ P.3d ___, 2021 WL 2658997 (Okla. 2021). There, in response to a certified question, the Oklahoma Supreme Court considered whether an exclusion which operates to deny UM coverage to an insured who recovers at least the mandated minimum in the form of liability coverage contravenes § 3636. The Court found the exclusion invalid because it effectively annulled UM coverage for which a premium had been paid:

> …the exclusion does not merely modify the scope of available uninsured-motorist coverage—it outright negates that coverage. While the policyholder holds an option to accept uninsured-motorist coverage, the insurer carries an obligation to provide it. Section 3636 requires uninsured-motorist coverage separate from liability coverage, whether it is provided within or supplemental to the basic liability policy. Progressive's blanket exclusion effectively ensures that only one form of coverage—for motor-vehicle liability—will ever be available, even though its policyholder has paid for both.

*Id.* at *5. The Court further emphasized that the purpose of § 3636 "is to 'assure each [UM insured] person the full contracted coverage' for which a premium has been paid." *Id.* at *6 (quoting *Burch v. Allstate Ins. Co*., 977 P.2d 1057, 1064) (alteration in *Burch*). Because the policyholders paid premiums for UM coverage that expressly included the plaintiff, the insurer's artfully drafted exclusion could not be allowed to dilute that coverage. *Id.* at *6-7.

Section 3636 requires insurers to supply uninsured-motorist coverage in addition to standard liability coverage, but it offers the insured a choice: accept, reject, or select lower limits. Heeding the guidance imparted by Oklahoma's case law, the Court is persuaded that FADCO's choice to select UM coverage for some classes of insureds and reject UM

A-0253

coverage for others does not run afoul of § 3636. There is no dispute that Federated offered FADCO the option of accepting or rejecting UM insurance via the statutorily approved form, and FADCO chose to reject coverage. FADCO then chose to extend UM coverage to directors, officers, and certain others by executing a separate form. Plaintiff argues that this selection must apply to the decedent because the statute provides that "selection, rejection, or exercise of the option not to purchase uninsured motorist coverage by a named insured or an applicant shall be valid for all insureds under the policy." Okla. Stat. tit. 36 § 3636(G). The Court does not agree with Plaintiff's interpretation of this provision. While it plainly indicates that a policyholder's coverage decisions bind all other insureds under the policy, there is nothing in the statutory text requiring a policyholder to make the same decision for each class of persons covered under the liability policy. Had FADCO rejected all UM coverage outright, the policy would be in compliance with the statute although Plaintiff would have no claim to benefits. If an outright rejection for all persons is permissible, it is difficult to see how providing more coverage for at least some persons contravenes the statute's text or purpose.

This reasoning is consistent with *Shepard* and *Graham*, where the Oklahoma Supreme Court upheld UM policies that excluded certain individuals from coverage (relatives who owned a vehicle and employees driving a personal vehicle, respectively). Recognizing that these limitations were unambiguous contract terms agreed to by the parties, the court honored the policyholder's choice as to how to structure their UM coverage. Although the instant case differs from *Shepard* and *Graham* because the decedent was driving a company vehicle rather than a personal vehicle, the Court does not

16

believe that fact is dispositive. As explained in *Ball*, 221 P.3d at 727, "[e]xtensive safeguards have been enacted in § 3636 to make certain that the policyholder's choice is knowingly and freely made, but the decision to purchase or decline to purchase UM coverage is left to the policyholder." Here, the limitation on UM coverage was an unambiguous contract term agreed to by the parties – FADCO and Federated. Pursuant to these terms, Plaintiff's decedent "clearly was insured for liability and was not insured, under the provisions of the policy, for UM/UIM." *Graham*, 61 P.3d at 229. As in *Graham* and *Shepard*, the policyholder's choice to limit UM coverage in this manner, freely and knowingly made, must be protected and enforced.

Indeed, *Lane* makes clear that a priority of Oklahoma's UM statute is to protect the insured's right to coverage for which a premium has been paid. *Lane*, 2021 WL 2658997 at * 6. FADCO paid a premium for UM coverage for directors, officers, and certain others, and had Federated tried to dilute that coverage through artful drafting or exclusions, the Court might take a different view of the policy. But FADCO never paid a premium for UM coverage for other employees, such as Plaintiff. Thus, unlike in *Lane*, there is no risk that denying Plaintiff's claim will deny an insured their "full contracted coverage for which a premium has been paid." *Id.*

Parties to an insurance contract are "free to agree upon such terms as they wish, including whether to limit or restrict the insurer's liability, as long as their agreement does not contravene public policy." *Ball*, 221 P.3d at 726. Allowing a policyholder to extend UM coverage to some classes of insureds, rather than limiting their choices to complete rejection or universal acceptance of UM coverage, will further the goals of § 3636 – to

A-0255

promote and safeguard UM coverage – while still honoring freedom of contract principles. *See id.* Further, the Court is mindful that the power to nullify contracts made in contravention of public policy should be exercised only "rarely, with great caution and in cases that are free from doubt." *Shephard*, 221 P.3d at 726. This is not one of those rare cases.

The policy issued by Federated to FADCO does not contravene Oklahoma law or policy. Because the insurance policy does not provide UM/UIM coverage for Mr. Smith, Federated has no coverage obligations to Plaintiff. Accordingly, Defendant is entitled to summary judgment on Plaintiff's coverage claim and bad faith claim.[4] Additionally, Defendant is entitled to a declaration that FADCO's rejection of UM coverage was valid and Plaintiff is therefore not entitled to UM coverage under the policy.

## CONCLUSION

For the reasons explained above, Plaintiff's Motion for Partial Summary Judgment is DENIED and Defendant's Motion for Summary Judgment is GRANTED in part and DENIED in part, as detailed herein.

IT IS SO ORDERED this 16th day of Sepember, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

---

[4] Even if this were not the Court's ruling, Plaintiff conceded her bad faith claim by failing to respond to Federated's argument that it was entitled to summary judgment on this issue. *See* LCvR7.1(g) ("Any motion that is not opposed within 21 days may, in the discretion of the court, be deemed confessed.").

A-0256

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

NANCY ANAYA-SMITH, next of kin of )
MICHAEL BRIAN SMITH, deceased,   )
                                 )
            Plaintiff,           )
                                 )
v.                               )          Case No. CIV-20-565-D
                                 )
FEDERATED MUTUAL INSURANCE       )
COMPANY,                         )
                                 )
            Defendant.           )

## JUDGMENT

Pursuant to the Order issued this date granting summary judgment to Defendant

Federated Mutual Insurance Company, the Court enters judgment in favor of Defendant

and against Plaintiff.

Entered this 16th day of September, 2021.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge

A-0257

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

NANCY ANAYA-SMITH, next of kin of
MICHAEL BRIAN SMITH, deceased,
     Plaintiff/Counter-Defendant,

vs.

FEDERATED MUTUAL INSURANCE
COMPANY,
     Defendant/Counterclaimant.

Case No. CIV-20-565-D
The Hon. Timothy DeGiusti

## <u>NOTICE OF APPEAL</u>

    Notice is hereby given that the Plaintiff in the above-named case hereby appeals to

the United States Court of Appeals for the Tenth Circuit from the Order denying Plaintiff's

Motion for Partial Summary Judgment and granting in part and denying in part Defendant's

Motion for Summary Judgment [Doc 31] and Judgment in favor of Defendant [Doc 32]

entered in this matter on September 16, 2021.

                         Respectfully submitted,

                         s/Rex Travis
                         REX TRAVIS, OBA #9081
                         info@travislawoffice.com
                         P.O. Box 1336
                         Oklahoma City, OK 73101-1336
                         Telephone: (405) 236-5400
                         Facsimile: (405) 236-5499
                         Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of September 2021, I electronically transmitted the foregoing *Notice of Appeal* to the Clerk of Court using the ECF System for filing. Based on the current records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

s/ Rex Travis
_____

A-0259

**CERTIFICATE OF SERVICE**

I hereby certify that on the 13th day of December 2021, I electronically transmitted the foregoing Joint Appendix to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of the Court will transmit a Notice of Electronic Filing to those registered participants of the Electronic Case Filing System.

s/Rex Travis _____